# EXHIBIT B

# Carrier's Submission

PUBLIC LAW BOARD NO. 7694

File 266286
CSXT File 2014-163289

| | |
|---|---|
| Brotherhood of Locomotive Engineers and Trainmen | ) |
| | ) |
| | ) |
| vs. | ) |
| | ) |
| CSX Transportation, Inc. | ) |

## CARRIERS' SUBMISSION
## CASE NO. 23

### I.     STATEMENT OF CLAIM

*"Claim of Engineer JP Bennett (239613) for full reinstatement to the service of CSXT as Engineer. Such reinstatement to include removal of all record of discipline administered by CSXT in this case from Engineer Bennett's Personal Service Record, full pay for all time lost (including hearing date), cumulative Vacation and Personal Leave rights intact and unreduced and full restoration of all other previously held rights and benefits thereto pertaining to Engineer Bennett's employment with CSX Transportation, Inc."*

### II.     PROCEDURAL HISTORY

CSXT, Inc. ("Carrier") hired JP Bennett (239613) ("Appellant") on September 14, 1998. *See* Employee History attached as Exhibit D. The  investigative  hearing for this incident was scheduled and held on January 23, 2014. *See* Transcript and Exhibits attached as Exhibit A. Following  the  investigative  hearing,  the  Carrier determined Appellant violated CSX Transportation Operating Rule 40 assessing  discipline in the form of dismissal from all service of the Carrier by letter mailed on February 21, 2014. *See* Discipline Correspondence attached as Exhibit B. The Carrier denied Appellant's initial March 28, 2014 appeal on April 28, 2014. *See* On-Property Handling File attached as Exhibit C.

1

### III.     STATEMENT OF FACTS

Road Foreman of Engines Robert Bush testified the Carrier received an ERAD notification alerting it to a potential speeding violation. (Hearing Transcript, pg. 7). Mr. Bush testified the speed limit for the length of track at issue was twenty-five (25) miles per hour and the crew should've known of the slow order from its bulletins. (Hearing Transcript, pg. 7-8). An investigation was initiated and Mr. Bush retrieved data downloaded from Appellant's train along with footage from the train's DVR camera. (Hearing Transcript, pg. 10 and Carrier Exhibits D and F). Mr. Bush provided detailed testimony describing how the download and DVR camera images demonstrate Appellant entered the speed restricted track at thirty-nine (39) miles per hour, thirteen miles faster than the allowable speed. (Hearing Transcript, pp. 10-13 and Carrier Exhibits D and F). Appellant testified he complied with Operating Rule 40, but didn't dispute the evidence presented by Mr. Bush and admitted entering the slow order at thirty-nine (39) miles per hour. (Hearing Transcript, pp. 36-37).

### IV.     POSITION OF THE CARRIER

#### A.  Appellant's admission along with the testimony and evidence submitted by the Carrier overcome the Carrier's burden of proof.

Neutrals conducting public law boards consistently hold that an employee's admission to a rule violation satisfies the employer's burden of substantial evidence. *See* NRAB, First Division, Award No. 26753 (Zimmerman) (2009) and PLB No. 4643, Award No. 42 (VanWart) (1992) attached as <u>Exhibit E</u>. Here, Appellant admitted entering the slow order at a speed of thirty-nine (39) miles per hour. (Hearing Transcript, pp. 36-37). In addition, Mr. Bush testified and produced substantial documentation Appellant violated Operating Rule 40 by exceeding the twenty-five (25) mile per hour slow order. (Hearing Transcript, pp. 10-13 and Carrier Exhibits D and F). As a result, the Carrier satisfied its burden of proof of substantial evidence.

**B.  Dismissal of Appellant is fully justified.**

The Carrier applies the discipline as permitted within the parameters of Carrier's Individual Development and Personal Accountability Policy (IDPAP), revised July 7, 2008. *See* CSXT, Inc. IDPAP policy attached as <u>Exhibit F</u>. Given the substantial weight of evidence and this major violation — the assessed discipline isn't in any way arbitrary or unreasonable. In fact, Appellant's overall safety record includes a previous major violation and leniency reinstatement. Accordingly, the Carrier's decision to dismiss is warranted and fully justified. What is more, leniency requests are neither acceptable nor appropriate on appeal. Indeed, it is well-settled that a decision for leniency is squarely within the prerogative of management. *See* NRAB, Second Division, Award 6715 (Shapiro) (1974) attached as <u>Exhibit G</u>.

**V.     CONCLUSION**

The Organization's appeal is limited to a request for leniency. But, leniency is not an acceptable issue on appeal. Here, substantial evidence exists in the record proving Appellant's violations of Operating Rule 40 and dismissal here is fully justified.  Accordingly, the Carrier respectfully requests the Organization's appeal is denied.

Respectfully submitted,

Melissa L. Wheaton
Director, Labor Relations

## CARRIER'S INDEX OF EXHIBITS

EXHIBIT A                TRANSCRIPTS & EXHIBITS

EXHIBIT B                DISCIPLINE LETTER

EXHIBIT C                ON PROPERTY HANDLING

EXHIBIT D                EMPLOYEE HISTORY

EXHIBIT E                CITED ADMISSION AWARDS

EXHIBIT F                CSXT IDPAP

EXHIBIT G                2ND DIVISION AWARD 6715

THOMAS, P. R., 572454              AUTHENTICATED              266287-2-0123L.14
BENNETT, J. P., 239613                                                    266286
INVESTIGATION

1   *(Beginning of Job # 16434)*
2
3   Brown:              Good morning my name is Rodney Brown.  I hold the position of
4                       Terminal Manager on the Jacksonville Division Savannah Georgia.
5                       I'll be the conducting officer at this investigation which is being
6                       held in the conference room at 1401 Staley Avenue Savannah
7                       Georgia on January 23. 2014.  The time now is 0925.
8
9                       The purpose of this investigation is to hear testimony and develop
10                      the relevant facts in connection with the following notices.
11
12                      *January 13, 2014*
13
14                      *File Number 266286*
15
16                      *EXPRESS MAIL EM 727620007 US*
17
18                      *J P BENNETT*
19                      *ENGINEER ID NO. 239613*
20                      *44 BELLE GROVE CIR*
21                      *RICHMOND HILL, GA   31324-3750*
22
23                              *Arrange to attend a formal investigation to be held in*
24                      *Conference Room at 1401 Staley Avenue, Savannah, Georgia,*
25                      *commencing at 0900 hours (CSX Time), on January 23, 2014.*
26
27                      *The purpose of this investigation is to develop the facts and place*
28                      *your responsibility, if any, in connection with information received*
29                      *that on January 3, 2014, at approximately 0005 hours, while*
30                      *working Q41002, in the vicinity of Milepost AN 584.4 and AN*
31                      *584.5, you operated your train 14 mph over the maximum*
32                      *authorized speed, and all circumstances relating thereto.*
33
34                              *You are being held out of service pending this*
35                      *investigation.*
36
37                              *P. R. Thomas has been charged under a separate letter for*
38                      *same date shown above.*
39
40                              *You must be fully rested under the FRA Hours of Service*
41                      *Law to attend the scheduled investigation.*
42
43                              *You may have representation in accordance with your*
44                      *working agreement and you may have a witness present or*

- 1 -

Carrier's Exhibit A
1

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                        266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | *witnesses present who have knowledge of the matter under* |
| 2 | | *investigation.* |
| 3 | | |
| 4 | | *This will also serve as notification that effective immediately your* |
| 5 | | *FRA Engineer Certification is suspended pursuant to 49 CFR Part* |
| 6 | | *240.307(section b)(item 1) pending a revocation determination in* |
| 7 | | *connection with the incident described above. Your certification* |
| 8 | | *maybe subsequently be revoked for a period specified by 49 CFR* |
| 9 | | *Part 240.117. If you have if you have not already surrendered your* |
| 10 | | *FRA Engineer Cert−Certificate to your Road Foreman, you must* |
| 11 | | *do so immediately upon receipt of this letter.* |
| 12 | | |
| 13 | | *Federal regulations provide that you are entitled to hear to* |
| 14 | | *a hearing on the revocation determination before an officer other* |
| 15 | | *than the field investigating officer. In accordance with the federal* |
| 16 | | *regulations, your revocation hearing will be consolidated with the* |
| 17 | | *formal investigation referenced above.* |
| 18 | | |
| 19 | | *If for some reason you are removed as principal, you are* |
| 20 | | *required to attend as a witness at the investigation if held for other* |
| 21 | | *employee(s) charged.* |
| 22 | | |
| 23 | | *Signed,* |
| 24 | | *Chris Worth* |
| 25 | | *C. Worth* |
| 26 | | |
| 27 | | *cc:   R. R. Bush, Road Foreman of Engines - Arrange to be* |
| 28 | | *present as a witness* |
| 29 | | *P. R. Thomas (572454) – Charged under separate letter* |
| 30 | | *EM 727619998 US* |
| 31 | | |
| 32 | | This will be marked as Carrier's Exhibit A. |
| 33 | | |
| 34 | Harvey: | This is Mr. Harvey, BLE Local Chairman at this time I'm I object |
| 35 | | to this investigation and I hold due to the fact that I did not receive |
| 36 | | this information in a timely manner and I requested for it on the |
| 37 | | 20th of January under system agreement #1-023-07 Article 30 |
| 38 | | paragraph B. |
| 39 | | |
| 40 | Brown: | What information are you referring to Mr. Harvey? |
| 41 | | |
| 42 | Harvey: | I specifically emailed Mr. Bush to furnish me with any and all |
| 43 | | copies of documentation and evidence you intend to present on |
| 44 | | behalf of CSXT at a formal hearing for the engineer Bennett. |
| 45 | | |

Carrier's Exhibit A
2

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                        266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | I need this information in a sufficient time prior to the hearing so |
| 2 | | that I may review such information with Mr. Bennett in accordance |
| 3 | | with CSXT System Agreement. |
| 4 | | |
| 5 | Brown: | And Mr. Harvey did you receive at any time any or part of the |
| 6 | | information requested? |
| 7 | | |
| 8 | Harvey: | I received part of but not all. |
| 9 | | |
| 10 | Brown: | At this time we'll take the necessary time to review the additional |
| 11 | | documents with the charged employee Bennett.  And we will |
| 12 | | continue the investigation after that time has been concluded.  The |
| 13 | | time now is 0931. |
| 14 | | |
| 15 | | The time now is 1015 back on the record.  Mr. Harvey have you |
| 16 | | had ample time to review the, the evidence that will be presented |
| 17 | | by Mr. Bush and are you ready to proceed? |
| 18 | | |
| 19 | Harvey: | Yes. |
| 20 | | |
| 21 | Brown: | Mr. Bennett have you had time to review the documents Mr. Bush |
| 22 | | gave you and are you ready to proceed? |
| 23 | | |
| 24 | Bennett: | Yes sir. |
| 25 | | |
| 26 | Brown: | With that said Carrier's Exhibit B charge letter for Mr. Thomas |
| 27 | | reads as follows: |
| 28 | | |
| 29 | | *January 13, 2014* |
| 30 | | |
| 31 | | *File Number 266287* |
| 32 | | |
| 33 | | *EXPRESS MAIL EM 727619998 US* |
| 34 | | |
| 35 | | *P R THOMAS* |
| 36 | | *CONDUCTOR ID NO. 572454* |
| 37 | | *2075 GROVE POINT RD* |
| 38 | | *SAVANNAH, GA   31419-9753* |
| 39 | | |
| 40 | | *Arrange to attend a formal investigation to be held in* |
| 41 | | *Conference Room, 1401 Staley Avenue, Savannah, Georgia,* |
| 42 | | *commencing at 0900 hours (CSX Time), on January 23, 2014.* |
| 43 | | |
| 44 | | *The purpose of this investigation is to develop the facts and* |
| 45 | | *place your responsibility, if any, in connection with information* |

Carrier's Exhibit A
3

THOMAS, P. R., 572454          AUTHENTICATED                266287-2-0123L.14
BENNETT, J. P., 239613                                      266286
INVESTIGATION

1         *received that on January 3, 2014, at approximately 0005 hours,*
2    *while working Q41002, in the vicinity of Milepost AN 584.4 and*
3    *AN 584.5, you allowed your train to operate 14 mph over the*
4    *maximum authorized speed, and all circumstances relating thereto.*
5
6         *You are being held out, out of service pending this*
7    *investigation.*
8
9         *J. P. Bennett has been charged under separate letter of*
10   *same date shown above.*
11
12        *You must be fully rested under the FRA Hours of Service*
13   *Law to attend the scheduled investigation.*
14
15        *You may have representation in accordance with your*
16   *working agreement and you may have witnesses present who have*
17   *knowledge of the matter under investigation.*
18
19        *This will also serve as notification that effective*
20   *immediately your FRA Conductor Certification is suspended*
21   *pursuant to 49 CFR Part 242.407(Part b)(Section 1) pending a*
22   *revocation determination in connection with the incident described*
23   *above. Your certification may sub–subsequently be revoked for a*
24   *prior specified for a period specified by 49 CFR Part 242.405. If*
25   *you have not already surrendered your FRA Conductor Certificate*
26   *to your supervisor, you must do so immediately upon receipt of this*
27   *letter.*
28
29        *Federal regulations provide that you are entitled to a*
30   *hearing on the revocation determination before any before an*
31   *officer other than the field investigating officer. In accordance with*
32   *the federal regulations, your revocation hearing will be*
33   *consolidated with the formal disciplinary investigation referenced*
34   *above.*
35
36        *If for some reason you are removed as principal, you are*
37   *required to attend as a witness at the investigation if held for other*
38   *employee(s) charged.*
39
40   *Signed,*
41   *Chris Worth,*
42   *C. Worth*
43
44   *cc:   R. R. Bush, Road Foreman of Engines - Arrange to be*
45         *present as a witness*

Carrier's Exhibit A
4

THOMAS, P. R., 572454        AUTHENTICATED        266287-2-0123L.14
BENNETT, J. P., 239613                                        266286
INVESTIGATION

|   |   |
|---|---|
| 1 | *J. P. Bennett (239613) – Charged under separate letter EM* |
| 2 | *727619998 US* |
| 3 | |
| 4 | This will be marked Carrier's Exhibit B. |
| 5 | |
| 6 | I am charged with conducting a fair and impartial investigation. |
| 7 | |
| 8 | • And to that end request that everyone present conduct |
| 9 | themselves properly to allow for orderly introduction of |
| 10 | testimony into the records. |
| 11 | |
| 12 | • The Organization's representatives has the right and will be |
| 13 | afforded the opportunity to present witnesses cross examine all |
| 14 | witnesses  and introduce into the record whatever information |
| 15 | or exhibits are deemed pertinent to the matter being |
| 16 | investigated. |
| 17 | |
| 18 | • These preceding are being recorded and the transcription of |
| 19 | that recording will be the official transcript of the investigation. |
| 20 | |
| 21 | At this time will each person present at investigation please state |
| 22 | your name position and where they work and the purpose of |
| 23 | attending this investigation. |
| 24 | |
| 25 | Harvey:      Michael M. Harvey, CSX ID # 199177 BLE Local Chairman |
| 26 | Representative for charged engineer J. P. Bennett. |
| 27 | |
| 28 | Bennett:      J. P. Bennett, Locomotive Engineer, ID #239613, Savannah |
| 29 | Terminal present to answer charges on speeding with CSX. |
| 30 | |
| 31 | Brown:      Let the record indicate that Mr. Bennett is a principal in |
| 32 | investigation. |
| 33 | |
| 34 | Robertroy:      James D. Robertroy, Jr. Locomotive Engineer for CSX Local |
| 35 | Chairman UTU for principal P. R. Thomas, 5725 or 454. |
| 36 | |
| 37 | Thomas:      P. R. Thomas, ID # 572454 and I say I come here to attend the |
| 38 | investigation. |
| 39 | |
| 40 | Brown:      Let the record indicate that Mr. Thomas is the second principal in |
| 41 | this investigation. |
| 42 | |
| 43 | Bush:      Robert Bush, Road Foreman of Engines (*cough*) excuse me here in |
| 44 | Savannah I'm here as a witness. |
| 45 | |

Carrier's Exhibit A
5

THOMAS, P. R., 572454　　　　　AUTHENTICATED　　　　　266287-2-0123L.14
BENNETT, J. P., 239613　　　　　　　　　　　　　　　　　　　　266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Brown: | Mr. Bennett did you receive the notice to attend investigation dated |
| 2 | | January 13, 2014? |
| 3 | | |
| 4 | Bennett: | Yes sir. |
| 5 | | |
| 6 | Brown: | Mr. Thomas did you receive the notice dated January 13, 2014? |
| 7 | | |
| 8 | Thomas: | Yes I did. |
| 9 | | |
| 10 | Brown: | Mr. Bennett, have you identified as someone to represent you? |
| 11 | | |
| 12 | Bennett: | My local chairman Michael Harvey. |
| 13 | | |
| 14 | Brown: | Mr. Harvey do you represent Mr. Bennett in this investigation? |
| 15 | | |
| 16 | Harvey: | Yes I do. |
| 17 | | |
| 18 | Brown: | Mr. Thomas have you represented somebody to represent you in |
| 19 | | this investigation? |
| 20 | | |
| 21 | Thomas: | Yes Mr. Robertroy. |
| 22 | | |
| 23 | Brown: | Mr. Robertroy do you represent Mr. Thomas in this investigation? |
| 24 | | |
| 25 | Robertroy: | Yes sir I do. |
| 26 | | |
| 27 | Brown: | Mr. Harvey and Mr. Bennett are you prepared to proceed with this |
| 28 | | investigation? |
| 29 | | |
| 30 | Unknown: | Yes we will. |
| 31 | | |
| 32 | Unknown: | Yes. |
| 33 | | |
| 34 | Brown: | Mr. Robertroy and Mr. Thomas are you prepared to proceed with |
| 35 | | this investigation? |
| 36 | | |
| 37 | Unknown: | Yes sir. |
| 38 | | |
| 39 | Unknown: | Yes. |
| 40 | | |
| 41 | Brown: | At this time we'll call the first witness Mr. Bush to testify in the |
| 42 | | investigation. |
| 43 | | |
| 44 | | Mr. Bush please state you name title and years of service for CSX |
| 45 | | Transportation? |

Carrier's Exhibit A

6

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                        266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | |
| 2 | Bush: | Robert R. Bush, Road Foreman of Engines here in Savannah been |
| 3 | | working for CSX for 15 years. |
| 4 | | |
| 5 | Brown: | Mr. Bush, were you present when I read into the record Carrier's |
| 6 | | Exhibit A and Carrier's Exhibit B the charge letters? |
| 7 | | |
| 8 | Bush: | Yes. |
| 9 | | |
| 10 | Brown: | Mr. Bush do you have knowledge of the, of the circumstances |
| 11 | | surrounding this incident on January 3, 2014? |
| 12 | | |
| 13 | Bush: | Yes. |
| 14 | | |
| 15 | Brown: | Please state that knowledge sir. |
| 16 | | |
| 17 | Bush: | I received a ERAD notification of a maximum speed being |
| 18 | | exceeded on the 21402 pm January 3rd this year at approximately |
| 19 | | 0005 hours on January 3rd.  And upon my investigation and |
| 20 | | receiving the download it does show that the train was in prese, |
| 21 | | present, vicinity at the time.  And I contacted all the employees and |
| 22 | | when I received the information and put them out of service |
| 23 | | pending an investigation. |
| 24 | | |
| 25 | Brown: | What is ERAD Mr. Bush? |
| 26 | | |
| 27 | Bush: | It's an event recorder automated download.  The system we use to |
| 28 | | flag different events that may happen on a train the and the |
| 29 | | excessive speed is one of those events. |
| 30 | | |
| 31 | Brown: | Mr. Bush you stated that you had received notice that ERAD had |
| 32 | | downloaded the event of a maximum speed violation. What, what |
| 33 | | is that speed?  What's maximum speed? |
| 34 | | |
| 35 | Bush: | Basically at that point the maximum speed was 25 miles an hour. |
| 36 | | It's a temporary speed reduction temporary slow order and when |
| 37 | | they got to that point in particular the train speed was 39 miles per |
| 38 | | hour. |
| 39 | | |
| 40 | Brown: | So for this particular place or location the maximum train speed |
| 41 | | was 25 miles per hour is that your testimony? |
| 42 | | |
| 43 | Bush: | Yes. |
| 44 | | |

Carrier's Exhibit A

7

THOMAS, P. R., 572454　　　　　AUTHENTICATED　　　　　266287-2-0123L.14
BENNETT, J. P., 239613　　　　　　　　　　　　　　　　　　　266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Brown: | How does the employee know that the speed at this location was |
| 2 | | 25 miles per hour? |
| 3 | | |
| 4 | Bush: | Every crew that goes on duty is issued a dispatcher bulletin and for |
| 5 | | each subdivision that that train is to operate on and those |
| 6 | | dispatcher bulletins of the temporary slow orders are listed for each |
| 7 | | subdivision.  And they receive that upon going on duty at the on |
| 8 | | duty terminal. |
| 9 | | |
| 10 | Brown: | Did Mr. Bennett and Mr. Thomas receive such train orders to when |
| 11 | | they went on duty? |
| 12 | | |
| 13 | Bush: | Yes. |
| 14 | | |
| 15 | Brown: | Did you review these train orders? |
| 16 | | |
| 17 | Bush: | Yes. |
| 18 | | |
| 19 | Brown: | And did these train orders indicate that there's a 25 miles an hour |
| 20 | | speed restriction at this location? |
| 21 | | |
| 22 | Bush: | Yes. |
| 23 | | |
| 24 | Brown: | Are there any CSX rules in effect that govern the use of these train |
| 25 | | orders at the maximum authorized speed at this particular location |
| 26 | | or temporary speed restriction? |
| 27 | | |
| 28 | Bush: | Yes. |
| 29 | | |
| 30 | Brown: | What would that be sir? |
| 31 | | |
| 32 | Bush: | Operating Rule 40. |
| 33 | | |
| 34 | Brown: | Let the record indicate that Mr. Bush has handed me a 2 paged |
| 35 | | document from section 3 movement of train speed, train protection |
| 36 | | rules.  Where speed rules highlighted and Rule 40 highlighted.  Mr. |
| 37 | | Bush you want to explain this? |
| 38 | | |
| 39 | Bush: | Yes the excuse me the page 1 is the speeding rule |
| 40 | | operate−Operating Rule 40.  Operating Rule 40 *says train speeds* |
| 41 | | *must be maintained to the extent feasible consistent with safety.* |
| 42 | | *They must not be exceeded.  Train speeds may be authorized by the* |
| 43 | | *rules, special instructions, dispatcher messages or other means.* |
| 44 | | *When there is a difference in the speeds, the lowest speed will* |
| 45 | | *govern.* |

Carrier's Exhibit A
8

THOMAS, P. R., 572454             AUTHENTICATED             266287-2-0123L.14
BENNETT, J. P., 239613                                                    266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | |
| 2 | Brown: | I'm going to mark this as Carrier's Exhibit C page 1 and page 2. |
| 3 | | And in that rule it's specifies dispatcher messages.  Is that what |
| 4 | | you were referring to earlier? |
| 5 | | |
| 6 | Bush: | Yes. |
| 7 | | |
| 8 | Brown: | That what's page 2 of this document sir? |
| 9 | | |
| 10 | Bush: | Page 2 is the is the we got new rule book that became effective |
| 11 | | January 1, 2014 and this basically shows the new rule number and |
| 12 | | it's *Rule #300.2 Authorized Train Speed and it says Authorized* |
| 13 | | *train speed* |
| 14 | | *Must not be exceeded* |
| 15 | | *2.    Applies to the entire train unless otherwise specified* |
| 16 | | *3.    Must be observed even if wayside signs are not* |
| 17 | | *displayed and* |
| 18 | | *Must be the lowest of the specified speeds if a* |
| 19 | | *conflict exists between authorized speeds.* |
| 20 | | |
| 21 | Robertroy**:** | At this time I'd like to object to the second page 2 of the 2 paged |
| 22 | | document sir. |
| 23 | | |
| 24 | Brown: | State your objection Mr. Robertroy please. |
| 25 | | |
| 26 | Robertroy: | At the time of the incident on 2 February this new rule book was |
| 27 | | not in service at this time due to weather constraints as indicated |
| 28 | | by system bulletin 9 dated 27 December 2013.  Yet at the rule |
| 29 | | book wouldn't go into effect til after the 15th. |
| 30 | | |
| 31 | Brown: | Let the record indicate that Mr. Robertroy has handed me a 2 |
| 32 | | paged document a CSX system bulletin dated December 27, 2013 |
| 33 | | which will be marked Employee's Exhibit A page 1 and page 2. |
| 34 | | |
| 35 | Harvey: | This is Harvey I'd like to object also we just merely ask that this |
| 36 | | new rule be strike from the evidence and it not be admitted due to |
| 37 | | the fact that we already entered Rule 40 from the old rule book |
| 38 | | which was in effect at the time.  Just then the new the new |
| 39 | | consistent rule not be entered. |
| 40 | | |
| 41 | Brown: | Mr. Harvey and Mr. Robertroy if you would agree I'll answer the |
| 42 | | objection at the same time for both organizations.  I agree that the |
| 43 | | rule 40 should be the applicable rule based on the fact that that was |
| 44 | | the rule in effect at the time of the alleged violation dated January |
| 45 | | 3, 2014 based on the Employee's Exhibit A page 1, page 2.  So |

- 9 -

Carrier's Exhibit A
9

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                          266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | we'll eliminate page 2 of Carrier's Exhibit C and only allow page 1 |
| 2 | | into the record. |
| 3 | | |
| 4 | Unknown: | Thank you. |
| 5 | | |
| 6 | Brown: | Mr. Bush in light of, of the objection and the ruling on the |
| 7 | | objection do you have any other information that you'd like to |
| 8 | | present on this Operating Rule 40? |
| 9 | | |
| 10 | Bush: | Yes.  I have a −the graph of the download and a correspondence |
| 11 | | table. |
| 12 | | |
| 13 | Brown: | Let the record indicate that Mr. Bush has handed me a 2 paged |
| 14 | | document which we will mark Carrier's Exhibit E page 1 of 2.  Mr. |
| 15 | | Bush can you can you explain to me what I'm looking at here |
| 16 | | please? |
| 17 | | |
| 18 | Bush: | Yes if you look at the very top where it says Date Viewer the Data |
| 19 | | viewer. |
| 20 | | |
| 21 | Brown: | Okay. |
| 22 | | |
| 23 | Bush: | When you come over about the last third you'll see where it says |
| 24 | | CSXT 005290 that is the batch and engine number of this |
| 25 | | download and there at the top there's a blue line it's got the date |
| 26 | | Latin line and it has the speed. |
| 27 | | |
| 28 | Brown: | Mr. Bush you said Latin line what does that stand for? |
| 29 | | |
| 30 | Bush: | The latitude and longitude of the location of where this snapshot of |
| 31 | | the download took place.  Basically it was 25 miles an hour speed |
| 32 | | restriction.  And it has the speed of at this point that was 39.75 |
| 33 | | miles an hour.  And if you come on down this a little bit on the left |
| 34 | | hand side just under that you'd have a on the graph you have a |
| 35 | | section where it says speed. |
| 36 | | |
| 37 | | And near the red line it goes from left to right and once you get |
| 38 | | over toward the right and there's a pink line a pink vertical line |
| 39 | | where that the red line the ___ red line from left the right in the |
| 40 | | pink vertical line intersect that's the actual speed at that time which |
| 41 | | was January 3rd if you look right under the graphs 2014 at 0005 in |
| 42 | | the morning. And do you see where those 2 lines intersect all that |
| 43 | | straight back across to the left it says where you see it's 40 miles |
| 44 | | an hour or close to it.  The actual speed that was recorded to that |
| 45 | | was 39.75. |

Carrier's Exhibit A
10

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                          266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | |
| 2 | | On page which is the corresponding data table as noted about half |
| 3 | | way down is a solid green line that also corresponds to the time |
| 4 | | and the time of 0005 and the speed of 39.7 miles an hour. |
| 5 | | |
| 6 | Brown: | So it's your testimony that at this time at this location the train was |
| 7 | | operating at 39.75 miles an hour. |
| 8 | | |
| 9 | Bush: | Yes. |
| 10 | | |
| 11 | Brown: | What was the maximum authorized speed for this train at this |
| 12 | | location? |
| 13 | | |
| 14 | Bush: | 25 miles per hour. |
| 15 | | |
| 16 | Brown: | Do you have any other documents Mr. Bush that you would like to |
| 17 | | enter as evidence? |
| 18 | | |
| 19 | Bush: | Yes the next document is, is another snapshot. |
| 20 | | |
| 21 | Brown: | Let the record indicate that Mr. Bush has handed me another |
| 22 | | document.  We'll mark Carrier's Exhibit E page 1 and 2. |
| 23 | | |
| 24 | *(End of Job # 16434)* | |
| 25 | | |
| 26 | *(Beginning of Job # 16435)* | |
| 27 | | |
| 28 | Bush: | Basically this snapshot is for the or this document is to show that at |
| 29 | | the time that this occurred at the, the engineer was not using the |
| 30 | | trip optimizer that's installed on the engine.  If you look at this first |
| 31 | | page and at the top right it's highlighted throttle mode and up |
| 32 | | under that in the blue line is a zero.  So what I'm saying it that the |
| 33 | | throttle mode at this time is zero and page 2 if you could to page it |
| 34 | | has the title ERAD Parameter throttle mode. |
| 35 | | |
| 36 | | And if you over on the top right when you look at the parameter |
| 37 | | value and it has zero and if you go all the way if you go back to the |
| 38 | | left side of the page where it says trip optimizer throttle mode and |
| 39 | | under that it says off.  And the description reads trip optimizer |
| 40 | | system is inactive the trip is not loaded the operator is controlling |
| 41 | | via the master controller.  So this is basically saying the engine had |
| 42 | | control of the train at this time. |
| 43 | | |
| 44 | Brown: | Mr. Bush if trip optimizer what is trip optimizer? |
| 45 | | |

- 11 -

THOMAS, P. R., 572454             AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                              266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Bush: | Trip optimizer is a recently new system that CSX have adopted to |
| 2 | | conserve fuel.  And the trip optimizer is to be used if the engine is |
| 3 | | installed with the trip optimizer system and it's to be used by all |
| 4 | | engineers.  Basically what it does is the engineers have to receive |
| 5 | | training to use the trip optimizer and it's basically a set of steps |
| 6 | | that you have to use to engage in initializing the trip optimizer to |
| 7 | | with the initialize it where you go on duty. |
| 8 | | |
| 9 | | And it, it runs your plan you know you set your trip from you |
| 10 | | know from trip a to trip point a to point b and in this case it would |
| 11 | | be from Waycross to Savannah and trip optimizer will basically |
| 12 | | run the run the engine which it has all the speeds maximize |
| 13 | | authorized speeds uploaded in the system from all the temporary |
| 14 | | slow orders uploaded in the system and the engineer's just to |
| 15 | | monitor they system as it runs. |
| 16 | | |
| 17 | Brown: | So it's a cruise control for lack of a better term like you would see |
| 18 | | in an automobile? |
| 19 | | |
| 20 | Bush: | Basically. |
| 21 | | |
| 22 | Brown: | Mr. Bush you have any other documents you'd like to present |
| 23 | | showing the train exceeding the maximized authorized speed at |
| 24 | | this location? |
| 25 | | |
| 26 | Bush: | Yes. |
| 27 | | |
| 28 | Brown: | Let the record indicate that Mr. Bush has handed me a 1 paged |
| 29 | | document which we will mark as Carrier's Exhibit F. |
| 30 | | |
| 31 | Bush: | Of this document is basically is a is a snapshot of the DVR that's |
| 32 | | on the engine and at the top left you can see the engine number |
| 33 | | CSXT 5290 and on the train Q41002 and it basically shows a |
| 34 | | picture of the temporary reduced speed sign and it's located at |
| 35 | | milepost AN 584.5 and it shows that the train is speeding at this |
| 36 | | point was 39 miles an hour. |
| 37 | | |
| 38 | Brown: | This yellow box that's in the screen what is that arrow pointing at? |
| 39 | | |
| 40 | Bush: | That's actually the, the temporary reduced speed sign or the speed |
| 41 | | restriction they're approaching it heading north bound. |
| 42 | | |
| 43 | Brown: | So this is an indication to the crew of some sort. |
| 44 | | |

Carrier's Exhibit A
12

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                         266286
INVESTIGATION

| 1 | Bush: | Yes all your I haven't say all of them but your anytime your |
| 2 | | temporary speed reduction is put out it's indicated what signs and |
| 3 | | when the crew receives their dispatcher bulletins they will indicate |
| 4 | | their signs are located at that temporary speed restriction or not. |
| 5 | | |
| 6 | Brown: | Is this the only sign that the crew would have encountered as they |
| 7 | | approached this slow order? |
| 8 | | |
| 9 | Bush: | No there's a warning sign usually 2 miles prior to reaching this |
| 10 | | speed reduction. |
| 11 | | |
| 12 | Brown: | And what's the purpose in that sign Mr. Bush? |
| 13 | | |
| 14 | Bush: | The purpose of a warning sign is to provide warning to the crew |
| 15 | | that they are about to approach a temporary speed restriction |
| 16 | | working limits things of that nature.  And it gives them at least a 2 |
| 17 | | mile warning if you would of that condition ahead. |
| 18 | | |
| 19 | Brown: | You have any other documents Mr. Bush you'd like to present? |
| 20 | | |
| 21 | Bush: | Yes I have the decertification report that was … |
| 22 | | |
| 23 | Brown: | Let the record indicated that Mr. Bush has handed me a 1 paged |
| 24 | | document titled Engineer RCO Conductor Decertification Report. |
| 25 | | We'll mark Carrier's Exhibit G.  What, what are we looking at Mr. |
| 26 | | Bush? |
| 27 | | |
| 28 | Bush: | This is a decertification report that's filled out anytime there's a |
| 29 | | possible decertification that CSX has to fill out to present to the |
| 30 | | FRA.  And basically it has the information of the time I mean the |
| 31 | | date the time which was January 3rd of this year at 0005 hours on |
| 32 | | just on Jacksonville Division, Jesup Sub indicates that the weather |
| 33 | | was clear the milepost location was AN 584.5.  The train ID was |
| 34 | | the Q41002 rule violated was Rule 40 it's over speed the over |
| 35 | | speed was detected by ERAD review. |
| 36 | | |
| 37 | | And the violation was verified by ERAD for about the speed that |
| 38 | | was exceeded when his train entered a 25 mile an hour temporary |
| 39 | | speed reduction at 39 miles an hour.  And it names the crew which |
| 40 | | is John P. Bennett the Engineer's id is 239613.   Phil R. Thomas id |
| 41 | | 572454 and hit has the date of birth in it.  And other information |
| 42 | | and it stated there when they got hired it started there _____ |
| 43 | | whenever they promoted.  And a report submitted by Robert Bush |
| 44 | | and Road Foreman of Engines Savannah. |
| 45 | | |

Carrier's Exhibit A

13

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Brown: | Okay.  Mr. Bush we heard testimony about train orders or train |
| 2 | | messages dispatcher messages and then they reference that in the |
| 3 | | operating rule 40 as dispatcher messages.  Do you have a copy or |
| 4 | | do you have access to the dispatcher messages that this crew would |
| 5 | | have had on the Q41002 on January 3, 2014? |
| 6 | | |
| 7 | Bush: | Yes. |
| 8 | | |
| 9 | Brown: | Let the record indicate that Mr. Bush has given me a, 5 paged |
| 10 | | document Carrier's Exhibit H pages 1, 2, 3, 4 and 5. |
| 11 | | |
| 12 | Robertroy: | I believe it's 6 sir. |
| 13 | | |
| 14 | Brown: | Thank you Mr. Robertroy that is correct.  What are we looking at |
| 15 | | Mr. Bush? |
| 16 | | |
| 17 | Bush: | As I mentioned earlier this is the dispatcher bulletin that we talked |
| 18 | | about with each crew receives once they go on duty.  And still is |
| 19 | | the crew room or yard office they receive these prior to doing their |
| 20 | | job briefing.  And this this dispatcher bulletin is bulletin #96680. |
| 21 | | It was issued at Rice Yard Georgia which is Waycross on January |
| 22 | | 2, 2014.  Train id is the Q41002 Engineer J. P. Bennett, id 239613 |
| 23 | | Conductor P. R. Thomas, ID is 572454. |
| 24 | | |
| 25 | | And as mentioned earlier and all the subdivisions that this train |
| 26 | | could possible encounter during the trip and for the specific |
| 27 | | subdivision if you would go to page 3 and make sure−page 3 and |
| 28 | | about half way down you'll see subdivision it says Jesup and |
| 29 | | bulletin #1 on the Jesup Subdivision reads *dispatcher number* |
| 30 | | *16719 do not exceed the following speed 25 over 25 miles an hour* |
| 31 | | *on the main track between milepost NA 584.4 and milepost AN* |
| 32 | | *584.5 and signs yes.* |
| 33 | | |
| 34 | Brown: | What does that 25 over 25?  What does that indicate? |
| 35 | | |
| 36 | Bush: | 25 the first number pertains to passenger speed and the second |
| 37 | | number refers to freight train speed. |
| 38 | | |
| 39 | Brown: | So basically this is telling this crew that they have the 25 mile an |
| 40 | | hour speed restriction at that location and they know in advance of |
| 41 | | getting it? |
| 42 | | |
| 43 | Bush: | Yes. |
| 44 | | |

- 14 -

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                              266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Brown: | Would this have been Mr. Bennett's and Mr. Thomas' first trip |
| 2 | | over this territory? |
| 3 | | |
| 4 | Bush: | No. |
| 5 | | |
| 6 | Brown: | So they, they have made several trips from this territory? |
| 7 | | |
| 8 | Bush: | Yes they have. |
| 9 | | |
| 10 | Brown: | Would you consider the employees Bennett and Thomas qualified |
| 11 | | on this territory? |
| 12 | | |
| 13 | Bush: | Yes. |
| 14 | | |
| 15 | Brown: | Do you have any record or indication that these employees have |
| 16 | | made a trip over this territory? |
| 17 | | |
| 18 | Bush: | Yes I do I have basically both employees work history for |
| 19 | | December 2013 and January 2014 they basically (*paper noise*) the |
| 20 | | timeframe that this slow order was in effect. |
| 21 | | |
| 22 | Harvey: | This is Representative Harvey.  At this time I'd like to protest this |
| 23 | | as being admitted as evidence in investigation. |
| 24 | | |
| 25 | Brown: | What's your reason for your objection Mr. Harvey? |
| 26 | | |
| 27 | Harvey: | Due to the fact this is a partial part of his permanent record. |
| 28 | | Employee's permanent record and single system BLE Agreement |
| 29 | | dated 2007 Article 30, Section 4 and #C says an employee's |
| 30 | | personal record discipline record or employee's history will not be |
| 31 | | included in or referred to in the hearing or in the transcript of the |
| 32 | | proceedings of the hearing.  Employee's personal service record |
| 33 | | maybe taken into consideration in accessing the matter of |
| 34 | | discipline imposed.  So I'd, I'd like to strike that from the |
| 35 | | investigation please. |
| 36 | | |
| 37 | Brown: | The time now is 1055.  We'll go off the record for a short recess. |
| 38 | | |
| 39 | | The time now is 11 a.m.  Mr. Harvey prior to the break raised an |
| 40 | | objection and after having an opportunity to review the, the |
| 41 | | agreement this particular section of the agreement is referring to |
| 42 | | any prior discipline character or history on the employee that may |
| 43 | | prejudice the investigation.  When in fact as a fact finder I'm |
| 44 | | nearly trying to understand if the employee was familiar with the |
| 45 | | territory in which he was operating over.  And which this |

- 15 -

THOMAS, P. R., 572454                AUTHENTICATED                266287-2-0123L.14
BENNETT, J. P., 239613                                                              266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | document appears to establish for that reason Mr. Harvey we'll |
| 2 | | continue. |
| 3 | | |
| 4 | Harvey: | Well I'd still like my objection to be noted on the record because |
| 5 | | we could of _____ his personal work history and chose the train that |
| 6 | | he was on rather than pulling up on dated calendar with when he |
| 7 | | was available and not available.  It's his absentee record is |
| 8 | | admissible in this investigation that _____. |
| 9 | | |
| 10 | Brown: | Your, your objection is noted and understand that we are not here |
| 11 | | today to investigate absenteeism or any other matter other than |
| 12 | | what is stated in the charge letter.  My only concern in this |
| 13 | | document is has the employee operated over a particular piece of |
| 14 | | territory or subdivision in which he knew or should have known |
| 15 | | where he was and about the slow order.  And that's the only |
| 16 | | purpose in this document sir and the only thing that will be |
| 17 | | considered on this document. |
| 18 | | |
| 19 | Brown: | Mr. Bush what please explain what we're looking at here? |
| 20 | | |
| 21 | Bush: | This basically is a calendar of both employees work history. And |
| 22 | | basically I'm submitting this for their the job is that they have |
| 23 | | worked that traversed this territory in question and namely the |
| 24 | | temporary slow order and ... |
| 25 | | |
| 26 | Brown: | Mr. Bush the document I've marked as Carrier's Exhibit I page 1 |
| 27 | | and 2 is for employee P. R. Thomas.  Do you have one also for |
| 28 | | employee Bennett or … |
| 29 | | |
| 30 | Bush: | Yes. |
| 31 | | |
| 32 | Brown: | Let the record indicate that Mr. Bush has handed me a 3 paged |
| 33 | | document that we will mark Carrier's Exhibit J pages 1, 2 and 3. |
| 34 | | In review of Carrier's Exhibit J Mr. Bush and Carrier's Exhibit I |
| 35 | | have both employees have the opportunity or have they made trips |
| 36 | | over the particular territory where this slow order was in effect? |
| 37 | | |
| 38 | Bush: | Yes. |
| 39 | | |
| 40 | Brown: | How long has the speed restriction been in place? |
| 41 | | |
| 42 | Bush: | *(background noise)* The speed reduction's been in place this one |
| 43 | | in question has been in place since December 2, 2013. |
| 44 | | |
| 45 | Brown: | So approximately a month prior to the incident? |

Carrier's Exhibit A

16

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                      266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | |
| 2 | Bush: | Yes. |
| 3 | | |
| 4 | Brown: | Let the record indication that Mr. Bush handed me a 1 paged |
| 5 | | document that will be Carrier's Exhibit K. |
| 6 | | |
| 7 | Bush: | This document is we receive from the Road Master and it's in the |
| 8 | | middle of the page it says effective date December 2, 2013.  It |
| 9 | | begins with milepost with the division Jacksonville Subdivision JS |
| 10 | | which stands for Jesup.  At the AN 584.4 to the 584.5 it shows a |
| 11 | | freight train slow order of 25 miles an hour. |
| 12 | | |
| 13 | Brown: | Mr. Bush do you have any other evidence you'd like to present at |
| 14 | | this time? |
| 15 | | |
| 16 | Bush: | Yes this document is retrieved from the TMC between basically |
| 17 | | shows the with the train id loads and engines with this train the |
| 18 | | tonnage, length the number of engines and the crew which is Mr. |
| 19 | | Bennett and Mr. Thomas on the first page.  The second page if you |
| 20 | | go down about half way at the where it says train position time and |
| 21 | | it basically where it says South Wye it just shows the time that |
| 22 | | they're, they're leaving Rice Yard and it goes on down the next |
| 23 | | signal. |
| 24 | | |
| 25 | | It shows what time it left Rice Yard on 5 p.m. passing that signal |
| 26 | | each one of the signals it shows chronologically how they went by |
| 27 | | their trip and what times they went by each signal.  So they South |
| 28 | | Wye they're leaving Waycross the next signal is Brunswick |
| 29 | | Junction and the next signal which they left South Wye 2354 on |
| 30 | | January 2nd and they were at Homestead on January 3rd at 0013 |
| 31 | | hours.  This basically the slow order was there between these two |
| 32 | | points and it puts the train at, at the location in question. |
| 33 | | |
| 34 | Brown: | It puts the train at the location at the time in question is that what |
| 35 | | you said the time in question yes.  Do you have Carrier's Exhibit |
| 36 | | there? |
| 37 | | |
| 38 | | Do you have any other evidence Mr. Bush that you would like to |
| 39 | | present? |
| 40 | | |
| 41 | Bush: | Yes the last thing I have is basically a camera shot.  It's shows |
| 42 | | exactly how the engines and cars where in order.  And train |
| 43 | | inventory display Q41002 as dated January 2, 2014 at 2324 hours |
| 44 | | and the first engine it shows us CSXT 5290. |
| 45 | | |

- 17 -

Carrier's Exhibit A

17

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                        266286
INVESTIGATION

| 1 | Brown: | So that would be considered the lead engine? |
|---|--------|----------------------------------------------|
| 2 | | |
| 3 | Bush: | Yes. |
| 4 | | |
| 5 | Brown: | Do employees ride the lead engine Mr. Bush? |
| 6 | | |
| 7 | Bush: | Yes. |
| 8 | | |
| 9 | Brown: | Where they riding the lead engine in this case? |
| 10 | | |
| 11 | Bush: | Yes. |
| 12 | | |
| 13 | Brown: | Both employees Mr. Thomas and Mr. Bennett were on the lead |
| 14 | | engine? |
| 15 | | |
| 16 | Bush: | Yes both of (*shuffling noise*) them. |
| 17 | | |
| 18 | Brown: | Mr. Bush is speed rule that you entered Rule 40 Carrier's Exhibit |
| 19 | | C what employee is responsible for ensuring that this rule is |
| 20 | | complied with? |
| 21 | | |
| 22 | Bush: | Basically they are charged with making a train keeping a train safe |
| 23 | | and, and they are restricted by certain speeds depending on what |
| 24 | | type of train they have and the track speed and any temporary and |
| 25 | | permanent speed restrictions.  That's what the crew is charged |
| 26 | | with. |
| 27 | | |
| 28 | Brown: | Which crew members are responsible for the complying with this |
| 29 | | rule? |
| 30 | | |
| 31 | Bush: | All crewmembers. |
| 32 | | |
| 33 | Brown: | Would Mr. Thomas had been responsible for complying with this |
| 34 | | rule? |
| 35 | | |
| 36 | Bush: | Yes. |
| 37 | | |
| 38 | Brown: | Would Mr. Bennett been responsible for complying with this rule? |
| 39 | | |
| 40 | Bush: | Yes. |
| 41 | | |
| 42 | Brown: | In a case such as this Mr. Bush if a train was operating as excess of |
| 43 | | the maximum authorized speed what is the responsibility of the |
| 44 | | Conductor Mr. Thomas? |
| 45 | | |

Carrier's Exhibit A

18

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                        266286
INVESTIGATION

| 1 | Bush: | Is to the conductor responsibility is to warn the engineer and take |
| 2 | | necessary action if needed. |
| 3 | | |
| 4 | Brown: | What would be necessary action? |
| 5 | | |
| 6 | Bush: | He can warn him of you know that he needs to slow down the train |
| 7 | | or tell him to stop the train or he also has the option of placing the |
| 8 | | train in emergency himself to stop the train. |
| 9 | | |
| 10 | Brown: | What would what – at what point would you expect a conductor to |
| 11 | | stop the train if the train was exceeding this Rule 40? |
| 12 | | |
| 13 | Bush: | In my estimation any speed 5 miles an hour or over you know this |
| 14 | | is excessive.  You know if he wants the engineer and the engineer |
| 15 | | is not you know slowing the train down as he warned him to at that |
| 16 | | point he should put the train in emergency. |
| 17 | | |
| 18 | Brown: | So 14 miles an hour over you would expect Mr. Thomas to have |
| 19 | | done something to stop the train? |
| 20 | | |
| 21 | Bush: | Yes. |
| 22 | | |
| 23 | Brown: | What is the Engineers Mr. Bennett's responsibility to comply with |
| 24 | | the Rule 40? |
| 25 | | |
| 26 | *(End of Job # 16435)* | |
| 27 | | |
| 28 | *(Beginning of Job # 16436)* | |
| 29 | | |
| 30 | Bush: | Basically operate the train with good train handling procedures |
| 31 | | where the speed is not exceeded.  And to you know make the train |
| 32 | | as safe as possible. |
| 33 | | |
| 34 | Brown: | What is his responsibility Mr. Bennett's responsibility if he if he |
| 35 | | knows he's exceeding this Rule 40? |
| 36 | | |
| 37 | Bush: | At the same time he has the same responsibility of getting the train |
| 38 | | back under control.  Either using proper train handling techniques |
| 39 | | or if necessary placing the train in emergency also. |
| 40 | | |
| 41 | Brown: | Did either of those events occurred once the Mr. Bennett realized |
| 42 | | what potentially realized he was in violation of this Rule 40? |
| 43 | | |
| 44 | Bush: | No. |
| 45 | | |

Carrier's Exhibit A
19

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Brown: | Is it possible Mr. Bush that Mr. Bennett just didn't realize that he |
| 2 | | was exceeding in violation of the Rule 40? |
| 3 | | |
| 4 | Bush: | It could be a possibility but you know from everything that I |
| 5 | | gathered though it's he did realize that he was over speed. |
| 6 | | |
| 7 | Brown: | Okay.  Did you have a conversation with Mr. Bennett or Mr. |
| 8 | | Thomas at any point during your investigation? |
| 9 | | |
| 10 | Bush: | Yes. |
| 11 | | |
| 12 | Brown: | Did you ask them about the over speed? |
| 13 | | |
| 14 | Bush: | Yes I did. |
| 15 | | |
| 16 | Brown: | What was Mr. Bennett's response? |
| 17 | | |
| 18 | Bush: | He, he basically said he, he thought it was the warning sign what |
| 19 | | we talked about and he noticed that it was actually the actual speed |
| 20 | | restriction itself and he was right there at it when he noticed it. |
| 21 | | |
| 22 | Brown: | What was Mr. Thomas' response when you talked to him in your |
| 23 | | investigation? |
| 24 | | |
| 25 | Bush: | He, I didn't question him as extensively but you know he did |
| 26 | | basically understand what had happened at that point when I talked |
| 27 | | to him and you know I just called him to let him know that you |
| 28 | | know.  He ran and picked up that they were speeding at that |
| 29 | | location. |
| 30 | | |
| 31 | | And you know everything that we were told him everything that I |
| 32 | | was going to do in investigating the matter and you know at that |
| 33 | | point I hadn't really looked into anything.  I had got the ERAD |
| 34 | | exception and called both employees at that time to know to let |
| 35 | | them know that they were going to be pulled out of service |
| 36 | | pending the investigation. |
| 37 | | |
| 38 | Brown: | In that conversation Mr. Bush did Mr. Thomas at any time deny or |
| 39 | | say he wasn't that it couldn't be possible to that that couldn't be |
| 40 | | right or … |
| 41 | | |
| 42 | Bush: | No. |
| 43 | | |
| 44 | Brown: | Okay.  Mr. Harvey do you have any questions of Mr. Bush? |
| 45 | | |

Carrier's Exhibit A

20

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                         266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Harvey: | Yes.  Mr. Bush as you know I represent Mr. Bennett, Locomotive |
| 2 | | Engineer.  Do you deem him as a professional railroader and |
| 3 | | would you consider him a certified locomotive engineer with the |
| 4 | | company? |
| 5 | | |
| 6 | Bush: | Yes. |
| 7 | | |
| 8 | Harvey: | Have you ever −I have no further questions but I would like the |
| 9 | | right to recall him as a witness. |
| 10 | | |
| 11 | Brown: | Noted. |
| 12 | | |
| 13 | | Mr. Bennett do you have any questions of Mr. Bush? |
| 14 | | |
| 15 | Bennett: | My only question is the trip optimizer was brought up and I have |
| 16 | | never to this date received any formal class on the trip optimizer. |
| 17 | | And I think it's a good tool for CSX and I would like to use it but |
| 18 | | I've never been shown how and I've tried on several trains and I |
| 19 | | cannot get it engaged and my name was on the board there last |
| 20 | | year not being one of the people who did not receive the training |
| 21 | | and Mr. bush may or may not remember he said he would get with |
| 22 | | me when he was as soon as he could on that.  And I just wanted to |
| 23 | | address that issue. |
| 24 | | |
| 25 | Brown: | Okay.  Do you have a question for Mr. Bush, Mr. Bennett? |
| 26 | | |
| 27 | Bennett: | No I don't really have a question I'm just stating. |
| 28 | | |
| 29 | Brown: | You'll get an opportunity at the end of this investigation to make |
| 30 | | any statement on your behalf. |
| 31 | | |
| 32 | Bennett: | Okay. |
| 33 | | |
| 34 | Brown: | Mr. Robertroy do you have any questions for Mr. Bush. |
| 35 | | |
| 36 | Robertroy: | I'd like to pause for the one brief moment. |
| 37 | | |
| 38 | Brown: | The time now is 1118 we'll take a short brake. |
| 39 | | |
| 40 | | The time now is 1121 back on the record.  Mr. Robertroy do you |
| 41 | | have any questions for Mr. Bush? |
| 42 | | |
| 43 | Robertroy: | Yes I do sir.  Mr. Bush you stated that the in accordance with the |
| 44 | | Carrier's Exhibit E you were talking about the trip optimizer.  You |
| 45 | | mentioned the trip optimizer runs the train.  Is this a fuel |

Carrier's Exhibit A
21

THOMAS, P. R., 572454              AUTHENTICATED              266287-2-0123L.14
BENNETT, J. P., 239613                                                        266286
INVESTIGATION

|  |  |  |
|---|---|---|
| 1 |  | management tool or is it in fact as the investigating officer said a |
| 2 |  | cruise control for the engines? |
| 3 |  |  |
| 4 | Bush: | Its main purpose is to conserve fuel but the way that it's used the |
| 5 |  | trip optimizer for it to conserve fuel actually runs the train. |
| 6 |  |  |
| 7 | Robertroy: | So it's not a mechanism that put on put on the engine and it |
| 8 |  | restricts the use of fuel.  The way that it saves fuel is actually by |
| 9 |  | operating the train. |
| 10 |  |  |
| 11 | Robertroy: | But it is a fuel management tool not a cruise control? |
| 12 |  |  |
| 13 | Bush: | Right that's its main purpose is fuel conservation. |
| 14 |  |  |
| 15 | Robertroy: | Also are in −a what Exhibit F which is the picture from the loco |
| 16 |  | CAM in Carrier's Exhibit D page 1 the 2 the latitude is 312, |
| 17 |  | 31.23785 and it's different on the on the camera itself.  It's saying |
| 18 |  | it's 31 degrees 14 minutes and 12 seconds. |
| 19 |  |  |
| 20 | Bush: | That actually the difference is the download which is Exhibit D is |
| 21 |  | the actual location of the temporary speed reduction and as you can |
| 22 |  | see from the camera shot (*cough*) this one has not reached at this |
| 23 |  | point yet so that's probably where your difference is. |
| 24 |  |  |
| 25 | Robertroy: | But as you look at page 2 the latitude and longitude of the actual |
| 26 |  | incident is significantly – you see where I guess it's line at the |
| 27 |  | beginning of the download latitudes it's before Mr., Mr. Bennett |
| 28 |  | actually applied his full service at 31.23, 23 minutes and 6.6 |
| 29 |  | seconds. |
| 30 |  |  |
| 31 |  | How are we to determine which is the actual latitude and longitude |
| 32 |  | because the latitude on the picture is different from even prior to |
| 33 |  | that? |
| 34 |  |  |
| 35 | Bush: | Well the, the, the actual latitude and longitude on the download is |
| 36 |  | as been introduced as that's the location where it occurred.  The |
| 37 |  | camera picture is just to, to have a visual of the location in |
| 38 |  | questions. |
| 39 |  |  |
| 40 | Robertroy: | Alright with the clarity of this picture can you determine what we |
| 41 |  | are looking at I see a looks like a florescent sign. |
| 42 |  |  |
| 43 | Bush: | Yes it does but this is basically you know from the DVR that we |
| 44 |  | use and at this time in question with the you know the shot being |
| 45 |  | blown up and different stuff it does loose it's resolution. |

THOMAS, P. R., 572454         AUTHENTICATED         266287-2-0123L.14
BENNETT, J. P., 239613                                      266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | |
| 2 | Robertroy: | So in Part this Carrier's Exhibit F should actually be stricken |
| 3 | | because we really can't see anything from this. |
| 4 | | |
| 5 | Brown: | Are you raising an objection there Mr. Robertroy? |
| 6 | | |
| 7 | Robertroy: | Yes sir I'm objecting to CSX Exhibit F. |
| 8 | | |
| 9 | Brown: | Your objection is noted and Mr. Bush testified that this is strictly a |
| 10 | | visual reference to the location of the speed restriction as noted in |
| 11 | | prior testimony.  Yes it will continue. |
| 12 | | |
| 13 | Robertroy: | On the railroad do we use latitudes or longitudes we use mileposts |
| 14 | | or we use GPS locations. |
| 15 | | |
| 16 | Bush: | Actually as the train crew yes we do we use mileposts.  But as a |
| 17 | | company as we do our investigations we actually have the |
| 18 | | technology to use that longitude to pinpoint exact locations. |
| 19 | | |
| 20 | Robertroy: | And my last set of questions referring to Exhibit I and Exhibit K. |
| 21 | | Exhibit I being the work history of Mr. Thomas.  As you go |
| 22 | | through this from December 2nd when this slow order was put on |
| 23 | | through the second of January which is actually the first time Mr. |
| 24 | | Thomas has seen this slow order going in the direction that he was |
| 25 | | going the night involving the picture of CSX Exhibit F. |
| 26 | | |
| 27 | | My question is, is this the first time he's been over that territory? |
| 28 | | |
| 29 | Bush: | No it's not. |
| 30 | | |
| 31 | Robertroy: | What other time he's been over that territory? |
| 32 | | |
| 33 | Bush: | Looks like on Wednesday January 1st he worked on Q69101. |
| 34 | | |
| 35 | Robertroy: | That would be going in the opposite direction.  That would be in |
| 36 | | the southern direction not a north… |
| 37 | | |
| 38 | Bush: | But your question that the first time over that particular territory or |
| 39 | | the question of the direction he travels? |
| 40 | | |
| 41 | Robertroy: | The direction of travel and the first time he'd seen that slow order |
| 42 | | from that direction sir. |
| 43 | | |
| 44 | Bush: | Based on the date that the, the 25 miles an hour was issued it |
| 45 | | would be his first time going in and looking at his work record it |

- 23 -

Carrier's Exhibit A
23

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                      266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | would be his first time traversing that going in a north bound |
| 2 | | direction. |
| 3 | | |
| 4 | Robertroy: | Thank you sir.  I've no further questions. |
| 5 | | |
| 6 | Brown: | Mr. Thomas do you have any questions of Mr. Bush? |
| 7 | | |
| 8 | Thomas: | No sir not at this time. |
| 9 | | |
| 10 | Brown: | Mr. Bush, are employees required to qualify on a particular |
| 11 | | segment of track or territory that they operate on? |
| 12 | | |
| 13 | Bush: | Yes. |
| 14 | | |
| 15 | Brown: | And in that qualification what is required of the employee? |
| 16 | | |
| 17 | Bush: | That the employee basically has to learn the territory that that they |
| 18 | | are to work and during their training basically their field training |
| 19 | | they had they work as conductor trainees with the actual conductor |
| 20 | | with a set number of weeks to get qualified on, on the territory. |
| 21 | | |
| 22 | Brown: | And this is done by making trips both north and south of a |
| 23 | | particular territory? |
| 24 | | |
| 25 | Bush: | Yes. |
| 26 | | |
| 27 | Brown: | Does an employee take any type of examine or test to test their |
| 28 | | knowledge on a particular territory? |
| 29 | | |
| 30 | Bush: | Yes. |
| 31 | | |
| 32 | Brown: | How often is this done? |
| 33 | | |
| 34 | Bush: | During the conductor training period it's usually every two weeks |
| 35 | | and they take a rules examine along with a physical… physical |
| 36 | | characteristics (*noise*) _____. |
| 37 | | |
| 38 | Brown: | Is Mr. Thomas a conductor trainee? |
| 39 | | |
| 40 | Bush: | No. |
| 41 | | |
| 42 | Brown: | Is has he received this examine? |
| 43 | | |
| 44 | Bush: | Yes. |
| 45 | | |

Carrier's Exhibit A
24

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                          266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Brown: | Has Mr. Bennett had a territory examine? |
| 2 | | |
| 3 | Bush: | Yes. |
| 4 | | |
| 5 | Harvey: | I object Mr. Bennett has not been a conductor trainee since he was |
| 6 | | hired out in 98. |
| 7 | | |
| 8 | Brown: | Your objection is noted.  Mr. Bush as a locomotive engineer would |
| 9 | | Mr. Bennett have received training on a territory in which he is |
| 10 | | required to operate on? |
| 11 | | |
| 12 | Bush: | Yes sir. |
| 13 | | |
| 14 | Brown: | And as an engineer Mr. Bush did Mr. Bennett take a territory |
| 15 | | qualification examine? |
| 16 | | |
| 17 | Bush: | Yes. |
| 18 | | |
| 19 | Brown: | How often would an engineer be required to have such an |
| 20 | | examine? |
| 21 | | |
| 22 | Bush: | Once promoted the, the locomotive engineer we take a −we have to |
| 23 | | complete our PODS every year so he gets a test on the PODS |
| 24 | | every year.  Every 3 years they're required to be recertified which |
| 25 | | includes a physical characteristics test over different subdivisions. |
| 26 | | |
| 27 | Brown: | Does CSX consider Mr. Bennett and Mr. Thomas qualified on this |
| 28 | | particular territory? |
| 29 | | |
| 30 | Bush: | Yes. |
| 31 | | |
| 32 | Brown: | Mr. Harvey do you have any further questions for Mr. Bush? |
| 33 | | |
| 34 | Harvey: | Yes.  Mr. Bush was there a manual download done on this engine |
| 35 | | or was it just the −from the ERAD and the DVR? |
| 36 | | |
| 37 | Bush: | The ERAD. |
| 38 | | |
| 39 | Harvey: | So there was no manual download performed or … |
| 40 | | |
| 41 | Bush: | … download wasn't needed. |
| 42 | | |
| 43 | Harvey: | Are y'all required or you required as a Road Foreman to do a |
| 44 | | manual download to match it up against ERAD? |
| 45 | | |

Carrier's Exhibit A
25

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                          266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Bush: | No. |
| 2 | | |
| 3 | Harvey: | Okay no further questions at this time but I would like the right to |
| 4 | | re… call him as a witness. |
| 5 | | |
| 6 | Brown: | Yes sir.  Mr. Bennett do you have any questions for Mr. Bush? |
| 7 | | |
| 8 | Bennett: | No questions at this time sir. |
| 9 | | |
| 10 | Brown: | Mr. Robertroy do you have any further questions for Mr. Bush? |
| 11 | | |
| 12 | Robertroy: | Yes sir.  During the qualification process at any time does any test |
| 13 | | you involve the actual knowledge of a temporary speed |
| 14 | | restrictions? |
| 15 | | |
| 16 | Bush: | The they are tests that questions that you know the, the to know |
| 17 | | questions on the way side signs that they learn as in their training |
| 18 | | and also that's why the part of the training is basically on the job |
| 19 | | training that they receive so while they ride trains they do |
| 20 | | encounter a temporary and permanent speed restriction. |
| 21 | | |
| 22 | Robertroy: | Now was this temporary speed restriction involved during that |
| 23 | | period of time when Mr. Thomas was a trainee? |
| 24 | | |
| 25 | Bush: | I don't know. |
| 26 | | |
| 27 | Robertroy: | Was when was Mr. Thomas last trained or tested on this territory? |
| 28 | | |
| 29 | Bush: | One second.  I don't have that information. |
| 30 | | |
| 31 | Robertroy: | Alright thank you sir.  I have no further questions. |
| 32 | | |
| 33 | Brown: | Mr. Thomas do you have any questions for Mr. Bush? |
| 34 | | |
| 35 | Thomas: | Not at this time sir. |
| 36 | | |
| 37 | Brown: | Mr. Bush again do employees both engineer and conductor are |
| 38 | | they required to take operating rules test? |
| 39 | | |
| 40 | Bush: | Yes. |
| 41 | | |
| 42 | Brown: | How often? |
| 43 | | |
| 44 | Bush: | Yearly. |
| 45 | | |

Carrier's Exhibit A

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                      266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Brown: | And in that operating rules test is these temporary speed |
| 2 | | restrictions signs and Rule 40 included? |
| 3 | | |
| 4 | Bush: | Yes. |
| 5 | | |
| 6 | Brown: | Mr. Bush that all I have for you we will excuse you at this time |
| 7 | | with potential of being recall as a witness. |
| 8 | | |
| 9 | Bush: | Okay. |
| 10 | | |
| 11 | Brown: | At this time we'll take a short break.  The time now is 1135. |
| 12 | | |
| 13 | | The time now is 1144.  We're back on the record.  Mr. Harvey you |
| 14 | | have brought up previously an objection on Mr. Bennett's calendar |
| 15 | | work history.  After further consideration we will eliminate the |
| 16 | | page 1 of this of this document this 2 paged, 3 paged document.  It |
| 17 | | will now become a 2 paged document Carrier's Exhibit J page 1 |
| 18 | | and page 2. |
| 19 | | |
| 20 | Harvey: | BLE understands we eliminated page 1 of the 3 paged document |
| 21 | | have it as Exhibit J for Mr. Bennett.  And we appreciate your |
| 22 | | concern with this matter in eliminating this document. |
| 23 | | |
| 24 | Brown: | Mr. Thomas. |
| 25 | | |
| 26 | Thomas: | Yes. |
| 27 | | |
| 28 | Brown: | Were you the conductor on Q41002 on January 2, 2000 excuse me |
| 29 | | January 3, 2014? |
| 30 | | |
| 31 | Thomas: | Yes sir. |
| 32 | | |
| 33 | Brown: | Mr. Thomas when you went on duty did you receive a train |
| 34 | | bulletin presented as Carrier's Exhibit H? |
| 35 | | |
| 36 | Thomas: | Yes sir. |
| 37 | | |
| 38 | Brown: | Are you familiar with these documents Mr. Thomas? |
| 39 | | |
| 40 | Thomas: | Yes I am. |
| 41 | | |
| 42 | Brown: | If you turn to page 3 of this document in about half way down the |
| 43 | | page is the Jesup Subdivision.  Did you operate on the Jesup |
| 44 | | subdivision on January 3, 2010? |
| 45 | | |

- 27 -

THOMAS, P. R., 572454            AUTHENTICATED            266287-2-0123L.14
BENNETT, J. P., 239613                                                      266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Thomas: | Yes sir. |
| 2 | | |
| 3 | Brown: | As a conductor of Q41002? |
| 4 | | |
| 5 | Thomas: | Yes sir. |
| 6 | | |
| 7 | Brown: | And on this day January 3rd of 2014while working as conductor on |
| 8 | | Q41002 did you encounter a slow order at milepost AN 584.4 and |
| 9 | | milepost AN 584.5? |
| 10 | | |
| 11 | Thomas: | Yes sir. |
| 12 | | |
| 13 | Brown: | What was that speed sir? |
| 14 | | |
| 15 | Thomas: | At 25 miles per hour. |
| 16 | | |
| 17 | Brown: | Is that what I see here Carrier's Exhibit H page 3 item 1 under |
| 18 | | Jesup Subdivision? |
| 19 | | |
| 20 | Thomas: | Yes sir. |
| 21 | | |
| 22 | Brown: | Was this slow order covered in your job briefing when you went |
| 23 | | on duty? |
| 24 | | |
| 25 | Thomas: | Yes sir it was. |
| 26 | | |
| 27 | Brown: | And after departing Waycross Mr. Thomas did you encounter |
| 28 | | advance warning signs? |
| 29 | | |
| 30 | Thomas: | I did I didn't see it what, what? |
| 31 | | |
| 32 | Brown: | Mr. Harvey you want to take a short brake? |
| 33 | | |
| 34 | Harvey: | Yeah I'd like to if possible. |
| 35 | | |
| 36 | Brown: | The time now is 1147 we'll go off the record. |
| 37 | | |
| 38 | | The time now is 1147 we're back on the record.  Mr. Thomas as |
| 39 | | stated before the question is after leaving Waycross did you |
| 40 | | encounter a temporary speed restriction at this location? |
| 41 | | |
| 42 | Thomas: | Yes I'd say kind of did.  (**Mr. Brown starts to interrupt**) |
| 43 | | |

Carrier's Exhibit A
28

THOMAS, P. R., 572454            AUTHENTICATED            266287-2-0123L.14
BENNETT, J. P., 239613                                              266286
INVESTIGATION

| 1  | Brown:  | Okay let me rephrase that question back to the original question. I |
| 2  |         | apologize did you encounter an advanced warning sign after |
| 3  |         | leaving Waycross? |
| 4  |         | |
| 5  | Thomas: | I've got the memory of a _____ I didn't really see any ... |
| 6  |         | |
| 7  | Brown:  | Mr. Thomas can you speak up into the microphone? |
| 8  |         | |
| 9  | Thomas: | Yes I do not remember seeing the advanced warning board the |
| 10 |         | advanced warning board I should say. |
| 11 |         | |
| 12 | Brown:  | Mr. Thomas what is required of you as a conductor on the Q41002 |
| 13 |         | prior to reaching any slow order as stated on these train bulletins if |
| 14 |         | anything? |
| 15 |         | |
| 16 | Thomas: | Prior to prior to speed restriction? |
| 17 |         | |
| 18 | Brown:  | Yes sir. |
| 19 |         | |
| 20 | Thomas: | We notify the engineer of upcoming temporary speed restriction. |
| 21 |         | Is that what you're asking? |
| 22 |         | |
| 23 | Brown:  | Yes it is. Is that your responsibility as a conductor? |
| 24 |         | |
| 25 | Thomas: | Yes that is. |
| 26 |         | |
| 27 | Brown:  | Did you comply with that responsibility? |
| 28 |         | |
| 29 | Thomas: | No sir I did not. |
| 30 |         | |
| 31 | Brown:  | Did you then proceed to this location at milepost AN 584.4 and |
| 32 |         | AN 584.5 exceeding the 25 miles an hour? |
| 33 |         | |
| 34 | Thomas: | What why what is the question is what were the speed when we |
| 35 |         | approached it? |
| 36 |         | |
| 37 | Brown:  | Yes sir. |
| 38 |         | |
| 39 | Thomas: | I don't know what speed we were going at as we hit the slow |
| 40 |         | exactly when we hit the 25 temporary speed restriction; but |
| 41 |         | approaching it we were going obviously greater than 25 as we |
| 42 |         | were approaching it and we began to slow down. |
| 43 |         | |
| 44 | Brown:  | Mr. Thomas as a conductor Q41002, are you responsible for train |
| 45 |         | speed? |

Carrier's Exhibit A
29

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                          266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | |
| 2 | Thomas: | Yes sir. |
| 3 | | |
| 4 | Brown: | Are you responsible for safe operation of a freight train as a |
| 5 | | conductor of Q41002? |
| 6 | | |
| 7 | Thomas: | Yes sir. |
| 8 | | |
| 9 | Brown: | As you entered the slow order at the AN 584.4 through the AN |
| 10 | | 584.5 were you exceeding the 25 miles an hour? |
| 11 | | |
| 12 | Harvey: | I object you've already answered that question to the best of his |
| 13 | | ability.  I move that we proceed. |
| 14 | | |
| 15 | Brown: | Your objection is noted Mr. Harvey and again I ask the principal as |
| 16 | | his responsibility is to ensure the safe operation of the train and his |
| 17 | | responsibility is the train speed.  I reiterate the question of Mr. |
| 18 | | Thomas were you exceeding the maximum authorized speed at this |
| 19 | | location? |
| 20 | | |
| 21 | Thomas: | I don't recall the exact speed at that location sir. |
| 22 | | |
| 23 | Brown: | At this location on January 3rd of 2014 did Mr. Bennett stop the |
| 24 | | train at any time? |
| 25 | | |
| 26 | Thomas: | He, he didn't stop the train that's … |
| 27 | | |
| 28 | Brown: | Did he make any significant brake application on the train? |
| 29 | | |
| 30 | Thomas: | No brake appli… application. |
| 31 | | |
| 32 | Brown: | Would you consider a significant brake application? |
| 33 | | |
| 34 | Robertroy: | I object the principal has no idea what the in fact the engineer's |
| 35 | | doing on the other side of the stand with stop. |
| 36 | | |
| 37 | Brown: | Okay.  I understand that Mr. Robertroy I'll ask a different question. |
| 38 | | At any time at this location or immediately beyond this location |
| 39 | | did you and Mr. Bennett have an updated job briefing? |
| 40 | | |
| 41 | Thomas: | Updated since the one in the initial one the crew? |
| 42 | | |
| 43 | Brown: | Yes sir. |
| 44 | | |
| 45 | *(End of Job # 16436)* | |

- 30 -

THOMAS, P. R., 572454                AUTHENTICATED                266287-2-0123L.14
BENNETT, J. P., 239613                                                              266286
INVESTIGATION

1
2     *(Beginning of Job #16437)*
3
4     Thomas:          I don't think it was another that what we update when we got on
5                           the train.  When we got on the train before we were getting ready
6                           to go to the yard cause I just ….. No we did not, no we did not, no
7                           I guess other than updating that the train let's we go you know all
8                           the brakes were off and all that but that understand it.
9
10    Brown:           As a crew member on a CSX train and as a crew member on the
11                           Q41002 who's in charge of that train?
12
13    Thomas:          The conductor is in charge of that train.
14
15    Brown:           So the conductor would be the ranking crew member?
16
17    Thomas:          Yes that's correct sir.
18
19    Brown:           So as the ranking crew member on the Q41002 is it your testimony
20                           that you had no further job briefing from the time you left
21                           Waycross to the time you arrived at Savannah?
22
23    Thomas:          Could you repeat the question again I want make sure I heard you
24                           right?
25
26    Brown:           As the ranking crew member on Q41002 is it your testimony that
27                           you had no further job briefing the time you left Waycross to
28                           the time you left Savannah?
29
30    Thomas:          Yes sir yes.
31
32    Brown:           Is that in compliance with CSX Operating job briefing rules?
33
34    Harvey:          This is Harvey I'd like to object I, I think Mr. Thomas is feeling
35                           find of confused about the way the questions have the last two
36                           questions have been phrased.  It there's some way you can
37                           rephrase the questions … understand them.
38
39    Brown:           I will attempt to rephrase the question Mr. Harvey.  Mr., Mr.
40                           Thomas when is it when is a job briefing required on CSX as a
41                           crew member of, of a train?
42
43    Thomas:          We go on duty there's a job briefing we need to know when the job
44                           conditions change.
45

- 31 -

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                        266286
INVESTIGATION

| 1 | Brown: | What would be considered a change in work conditions? |
| 2 | | |
| 3 | Thomas: | Encounter some kind of change something happen to your train or |
| 4 | | something occurred that's not included in your original job |
| 5 | | briefing? |
| 6 | | |
| 7 | Brown: | Okay.  Would a temporary speed restriction be considered a |
| 8 | | change in work? |
| 9 | | |
| 10 | Thomas: | You mean a −I need an unlisted one? |
| 11 | | |
| 12 | Brown: | Or for example Mr. Thomas on Carrier's Exhibit H page 3 the |
| 13 | | slow order that you encountered on January 3rd at the milepost AN |
| 14 | | 584.4 and milepost AN 584.5 is this something that the crew |
| 15 | | would be required to job brief about? |
| 16 | | |
| 17 | Thomas: | Yes sir. |
| 18 | | |
| 19 | Brown: | And as you approach a particular location like this would this type |
| 20 | | of restriction would you be required to job brief about it again? |
| 21 | | |
| 22 | Thomas: | Yes sir if you mean by job briefing that mean should I announce |
| 23 | | there's one upcoming? |
| 24 | | |
| 25 | Brown: | Yes. |
| 26 | | |
| 27 | Thomas: | Yes sir that's right. |
| 28 | | |
| 29 | Brown: | And did that happen on in this case on Q41002? |
| 30 | | |
| 31 | Robertroy: | This is Robertroy I object on the grounds that Mr. Thomas' answer |
| 32 | | that he had an initial job briefing with Mr. Bennett and they |
| 33 | | discussed that there was a slow order at this point. |
| 34 | | |
| 35 | Brown: | Your objection is noted Mr. Robertroy.  I'm trying to establish and |
| 36 | | understand as a fact finder did the crew by train message have an |
| 37 | | additional job briefing as they approached the location as required |
| 38 | | by the rule.  Mr. Thomas did you have an additional job briefing as |
| 39 | | you approached the 584.4 and the AN 584.5 as required by the |
| 40 | | rule? |
| 41 | | |
| 42 | Robertroy: | This is Robertroy again I, I object to the line of questioning. |
| 43 | | Having an additional job briefing has nothing to do with the −upon |
| 44 | | each slower you encounter along the trip you have here the |
| 45 | | primary job briefing when they went on duty nothing had |

Carrier's Exhibit A
32

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | significantly changed from their initial job briefing.  So in fact it |
| 2 | | would not be required to have another job briefing after each slow |
| 3 | | order.  He was required to announce this slow order but not to have |
| 4 | | an additional job briefing. |
| 5 | | |
| 6 | Thomas: | You objection is noted we'll move on to *(noise)* ___. |
| 7 | | |
| 8 | Robertroy: | Thank you sir. |
| 9 | | |
| 10 | Brown: | Mr. Thomas so just so I understand is it your testimony that at no |
| 11 | | time did you realize that you were speeding as you entered this |
| 12 | | slow order? |
| 13 | | |
| 14 | Thomas: | As I entered the slow order I don't know I don't know what the |
| 15 | | speed was. I don't know exactly what the speed was. |
| 16 | | |
| 17 | Brown: | The question is whether you understand that you were speeding |
| 18 | | when you entered the slow order? |
| 19 | | |
| 20 | Thomas: | Yes. |
| 21 | | |
| 22 | Brown: | At that time Mr. Thomas did you or any time before that did you |
| 23 | | warn Mr. Bennett of the train speed and that you were exceeding |
| 24 | | the maximum authorized speed? |
| 25 | | |
| 26 | Thomas: | No. |
| 27 | | |
| 28 | Brown: | At any time prior to enter this slow order or during the time which |
| 29 | | you realized you were speeding did you take any action to slow or |
| 30 | | stop the train? |
| 31 | | |
| 32 | Thomas: | Yes. |
| 33 | | |
| 34 | Brown: | Mr. Thomas did you comply with the Operating Rule 40 on |
| 35 | | January 3, 2014 on the Q41002 at milepost AN 584.4 and milepost |
| 36 | | AN 584.5? |
| 37 | | |
| 38 | Thomas: | No sir. |
| 39 | | |
| 40 | Brown: | Mr. Harvey do you have any questions for Mr. Thomas at this |
| 41 | | time? |
| 42 | | |
| 43 | Harvey: | Not at this time I'd like the right to recall him as a witness. |
| 44 | | |

- 33 -

Carrier's Exhibit A
33

THOMAS, P. R., 572454       AUTHENTICATED       266287-2-0123L.14
BENNETT, J. P., 239613                               266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Brown: | Mr. Bennett do you have any questions of Mr. Thomas at this time? |
| 4 | Bennett: | No questions sir at this time. |
| 6 | Brown: | Mr. Robertroy do you have any questions for Mr. Thomas at this time? |
| 9 | Robertroy: | Yes sir.  Mr. Thomas what other duties do you have as a conductor besides monitoring the speed of the locomotive? |
| 12 | Robertroy: | I have _____ bulletin and update my conductor trip log as _____ to the territory. |
| 15 | Robertroy: | Was there a signal in the vicinity of this slow board? |
| 17 | Thomas: | Yes sir. |
| 19 | Robertroy: | Yet at any time did you see the warning board for this slow order? |
| 21 | Thomas: | No sir I didn't. |
| 23 | Robertroy: | Do you know what it had caused you to miss this warning board? |
| 25 | Thomas: | I don't have a sorry as to why I didn't' see it but I didn't see it when I was there.  Well I could my trip log I was looking at my work order and but I did not see the warning board I did not sir. |
| 29 | Robertroy: | So you may have been distracted by other your other duties as the conductor which would keep you from identifying where this slow order was? |
| 33 | Thomas: | Yes sir. |
| 35 | Robertroy: | I've no further questions sir. |
| 37 | Brown: | Mr. Thomas while performing other duties does that relieved you of the responsibilities for a safe operation of the train? |
| 40 | Thomas: | No sir. |
| 42 | Brown: | Mr. Thomas, have you made trips over this particular territory prior to this day? |
| 45 | Thomas: | Yes sir *(clearing throat)* _____. |

- 34 -

THOMAS, P. R., 572454            AUTHENTICATED            266287-2-0123L.14
BENNETT, J. P., 239613                                            266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | |
| 2 | Brown: | How many days weeks months or years would you consider your |
| 3 | | experience level at this on this territory? |
| 4 | | |
| 5 | Thomas: | It is total about 2 and ½ years. |
| 6 | | |
| 7 | Brown: | Have you encountered this particular slow order at this particular |
| 8 | | location prior to this day? |
| 9 | | |
| 10 | Thomas: | Yeah while going in the opposite direction. |
| 11 | | |
| 12 | Brown: | Mr. Harvey do you have any questions for Mr. Thomas? |
| 13 | | |
| 14 | Harvey: | No sir. |
| 15 | | |
| 16 | Brown: | Mr. Bennett do you have any questions for Mr. Thomas? |
| 17 | | |
| 18 | Bennett: | No sir. |
| 19 | | |
| 20 | Brown: | Mr. Robertroy anything further? |
| 21 | | |
| 22 | Robertroy: | No sir. |
| 23 | | |
| 24 | Brown: | Mr. Bennett, were you the locomotive engineer on Q41002 on |
| 25 | | January 3 of 2014 at 0005 hours? |
| 26 | | |
| 27 | Bennett: | Yes sir. |
| 28 | | |
| 29 | Brown: | Are either locomotive engineer on CSX Mr. Bennett what is your |
| 30 | | primary responsibility? |
| 31 | | |
| 32 | Bennett: | By safely operating the train abiding by all the rules and speed |
| 33 | | restrictions etc. |
| 34 | | |
| 35 | Brown: | Mr. Bennett Q41002 on January 3rd was Mr. Thomas your |
| 36 | | conductor? |
| 37 | | |
| 38 | Bennett: | Yes he was. |
| 39 | | |
| 40 | Brown: | And did you and Mr. Thomas when you went on duty have a job |
| 41 | | briefing? |
| 42 | | |
| 43 | Bennett: | Yes we did. |
| 44 | | |

Carrier's Exhibit A
35

THOMAS, P. R., 572454            AUTHENTICATED            266287-2-0123L.14
BENNETT, J. P., 239613                                   266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Brown: | And in that job briefing did it include Carrier's Exhibit H the train |
| 2 | | bulletin specifically page 3 of the Jesup Subdivision… |
| 3 | | |
| 4 | Bennett: | Yes sir. |
| 5 | | |
| 6 | Brown: | … item #1? |
| 7 | | |
| 8 | Bennett: | Yes sir. |
| 9 | | |
| 10 | Brown: | Did you understand during that job briefing the maximum |
| 11 | | authorized speed for you train at this location? |
| 12 | | |
| 13 | Bennett: | Yes sir. |
| 14 | | |
| 15 | Brown: | Did you encounter after leaving Waycross an advance warning |
| 16 | | sign that would have warned you of this milepost AN 584.4 and |
| 17 | | milepost AN 584.5's, 25 miles an hour speed restriction? |
| 18 | | |
| 19 | Bennett: | I did not encounter advanced warning or have no recollection of |
| 20 | | one which I actually spoke with Mr. Thomas about after because |
| 21 | | when I got to the actual slow order I'd mentioned where was the |
| 22 | | advanced warning so no I did not. |
| 23 | | |
| 24 | Brown: | Were you surprised when you saw the, the temporary speed |
| 25 | | restriction sign? |
| 26 | | |
| 27 | Bennett: | It was night time and night time makes it a little hard but I I said |
| 28 | | like when Mr. Bush's conversation over the phone that I'd notice |
| 29 | | that and applied some brakes so I can get the train speed down for |
| 30 | | the safety of the crew and you know for the equipment to make |
| 31 | | cause we knew it was there so. |
| 32 | | |
| 33 | Brown: | Did you operate into this slow order exceeding the maximum |
| 34 | | authorized speed? |
| 35 | | |
| 36 | Bennett: | Not to my knowledge. |
| 37 | | |
| 38 | Brown: | Why then did you apply the brake that you just testified? |
| 39 | | |
| 40 | Bennett: | Because I just stated I knew the speed order was there and I did not |
| 41 | | want to exceed the speed that I was going at I knew I needed to do |
| 42 | | something you know quickly because the train speed down for the |
| 43 | | safety of the crew? |
| 44 | | |
| 45 | Brown: | How fast were you operating? |

Carrier's Exhibit A
36

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | |
| 2 | Bennett: | I, I don't know.  We have everything here tells me how fast we |
| 3 | | were operating so whatever this says when we got there is was 39 |
| 4 | | miles an hour then that's what we have to go by.  Just knew I knew |
| 5 | | we needed to get the train speed down to get to the 25 mile an hour |
| 6 | | on the slow order. |
| 7 | | |
| 8 | Brown: | The time now is 1208.  We're going to take a short recess. |
| 9 | | |
| 10 | | The time now is 1215 we're back on the record.  Mr. Bennett you |
| 11 | | testified that you saw the temporary reduced speed sign and began |
| 12 | | to slow your train for the safety of the crew.  How fast were you |
| 13 | | going at that time sir? |
| 14 | | |
| 15 | Bennett: | I did not see the temporary … you mean the actual you said I did |
| 16 | | not see the temporary.  I did …you said I saw the temporary I did |
| 17 | | not see the temporary.  Now, now you're asking me how fast was I |
| 18 | | going at the actual. |
| 19 | | |
| 20 | Brown: | Well let's back up to make sure I understand so … |
| 21 | | |
| 22 | Bennett: | Okay. |
| 23 | | |
| 24 | Brown: | … I get this right in my mind. |
| 25 | | |
| 26 | Bennett: | Sure. |
| 27 | | |
| 28 | Brown: | So when you left Waycross you didn't see any advance warning |
| 29 | | signs? |
| 30 | | |
| 31 | Bennett: | No sir I did not. |
| 32 | | |
| 33 | Brown: | And then is that your testimony that you didn't see any temporary |
| 34 | | speed restrictions sign? |
| 35 | | |
| 36 | Bennett: | Oh yes I saw the actual temporary yes sir. |
| 37 | | |
| 38 | Brown: | And what and what distance were you from this temporary that |
| 39 | | you saw? |
| 40 | | |
| 41 | Bennett: | I can't recall it's been night time I don't recall the distance.  I do |
| 42 | | not know.  I just know that I saw the actual sign and I knew I had |
| 43 | | to get the train down for the safety of the crew. |
| 44 | | |
| 45 | Brown: | How fast were you going that time? |

Carrier's Exhibit A
37

THOMAS, P. R., 572454  AUTHENTICATED  266287-2-0123L.14
BENNETT, J. P., 239613           266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | |
| 2 | Bennett: | I don't know the …download and all this information that was |
| 3 | | going 39 so I don't' know what speed I was going and I don't see |
| 4 | | how the conductor could have known either but, but at that time I |
| 5 | | didn't know.  My main objective was to get the train speed down. |
| 6 | | |
| 7 | Brown: | What steps would you take at that time to get the train speed |
| 8 | | down? |
| 9 | | |
| 10 | Bennett: | At that time I went ahead and give full service brake reduction |
| 11 | | cause I figured that would be the best way to get the train down. |
| 12 | | |
| 13 | Brown: | What does that mean when you say full service brake reduction? |
| 14 | | What does that mean? |
| 15 | | |
| 16 | Bennett: | The complete 26 pound reduction that's allowable on the on the |
| 17 | | brake cylinder there. |
| 18 | | |
| 19 | Brown: | So is that all the brakes other than an emergency brake application |
| 20 | | that you're capable of applying? |
| 21 | | |
| 22 | Bennett: | Yes sir that's how I didn't get rid of me an emergency wouldn't |
| 23 | | have been the smart thing to do there. |
| 24 | | |
| 25 | Brown: | I'm just asking is that the maximum amount of braking you …. |
| 26 | | |
| 27 | Bennett: | Yes sir. |
| 28 | | |
| 29 | Brown: | … effort that could apply? |
| 30 | | |
| 31 | Bennett: | Yes sir that's it. |
| 32 | | |
| 33 | Brown: | Let me finish the question and you can answer it. |
| 34 | | |
| 35 | Bennett: | Sure. |
| 36 | | |
| 37 | Brown: | Is that the maximum braking effort that you can apply without |
| 38 | | putting the train in into emergency brake application? |
| 39 | | |
| 40 | Bennett: | Yes sir. |
| 41 | | |
| 42 | Brown: | CSX Train Handling Rules do they allow for immediate full |
| 43 | | service brake application to be considered good train handling |
| 44 | | techniques? |
| 45 | | |

Carrier's Exhibit A
38

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                          266286
INVESTIGATION

| 1 | Bennett: | Yes some at the instances yes. |
| 2 | | |
| 3 | Brown: | What would they be? |
| 4 | | |
| 5 | Bennett: | Emergency situations. |
| 6 | | |
| 7 | Brown: | Would this considered emergency situation? |
| 8 | | |
| 9 | Harvey: | I object I believe Mr. Bennett made a judgment call in this |
| 10 | | situation.  And the rules do allow for us to make a judgment call. |
| 11 | | |
| 12 | Brown: | Do you have a rule you want to enter Mr. Harvey? |
| 13 | | |
| 14 | Harvey: | No sir. |
| 15 | | |
| 16 | Brown: | What rule would you be referring to? |
| 17 | | |
| 18 | Harvey: | I have to look up. |
| 19 | | |
| 20 | Brown: | The time now is 1220 we'll take a short recess. |
| 21 | | |
| 22 | | The time now is 1222 we're back on the record.  Mr. Harvey do |
| 23 | | you have a rule that you would like to submit or employee's |
| 24 | | exhibit? |
| 25 | | |
| 26 | Harvey: | No sir I'll strike, strike the objection that there's a rule that covers |
| 27 | | empowerment and judgment but I will let it be known that we have |
| 28 | | always been taught in our safety meetings and our briefings with |
| 29 | | company managers that we are to use the judgment and we have |
| 30 | | the empowerment to do so. |
| 31 | | |
| 32 | | But it is nowhere it's nowhere to be found in writing.  And I |
| 33 | | believe that Mr. Bennett at this time in situations is here to |
| 34 | | judgment call if he needed a full service brake application. |
| 35 | | |
| 36 | Brown: | Your objection's noted.  Mr. Bennett on January 3, 2014 at 0005 |
| 37 | | hours while working the Q41002 you were the locomotive |
| 38 | | engineer at AN 584.4 and AN 584.5 were you in compliance with |
| 39 | | Rule 40 sir? |
| 40 | | |
| 41 | Bennett: | Yes sir to the best of my understanding and to the best of my |
| 42 | | knowledge I was. |
| 43 | | |

Carrier's Exhibit A
39

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                      266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Brown: | Mr. Bennett you've heard the testimony here today and you've |
| 2 | | seen the evidence presented how do you answer the question with |
| 3 | | yes when and when asked Rule 40 were you in compliance. |
| 4 | | |
| 5 | Bennett: | And state that I slowed the train down for the safety of the crew |
| 6 | | and abide by the rule to the best of my understanding and to the |
| 7 | | best of my knowledge. |
| 8 | | |
| 9 | Brown: | Mr. Harvey do you have any questions for Mr. Bennett? |
| 10 | | |
| 11 | Harvey: | Not at this time. |
| 12 | | |
| 13 | Brown: | Mr. Robertroy do you have any questions of Mr. Bennett? |
| 14 | | |
| 15 | Robertroy: | No sir. |
| 16 | | |
| 17 | Brown: | Mr. Thomas do you have any questions of Mr. Bennett? |
| 18 | | |
| 19 | Thomas: | No sir. |
| 20 | | |
| 21 | Harvey: | This is Harvey I would like to enter in as representative's exhibit |
| 22 | | the email that I forwarded to Mr. Bush I received all |
| 23 | | documentation we'll make it Exhibit B, B Employee's Exhibit B. |
| 24 | | That the only the only exhibit that I did receive was an ERAD |
| 25 | | download and the trip optimizer form which was …. |
| 26 | | |
| 27 | Brown: | Mr. Harvey at the beginning of this investigation you raised an |
| 28 | | objection on this issue and we paused the investigation for the time |
| 29 | | needed by you and principal Bennett and you determined that you |
| 30 | | after receiving the documents you were ready to proceed and that |
| 31 | | you had had enough and ample time to proceed. |
| 32 | | |
| 33 | | I'll enter this as an Employee Exhibit B but just for the record we |
| 34 | | did address this objection at the beginning of the hearing and you |
| 35 | | and the principal indicated that you were ready to proceed and had |
| 36 | | the proper amount of time to prepare. |
| 37 | | |
| 38 | Harvey: | That's correct. |
| 39 | | |
| 40 | Brown: | Mr. Bennett do you and your represent, representation have any |
| 41 | | further evidence you wish to present? |
| 42 | | |
| 43 | Bennett: | No sir not at this time.  No sir. |
| 44 | | |

Carrier's Exhibit A
40

THOMAS, P. R., 572454           AUTHENTICATED           266287-2-0123L.14
BENNETT, J. P., 239613                                                    266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Brown: | Mr. Thomas, do you and your representation have any additional |
| 2 | | information or evidence that you wish to present? |
| 3 | | |
| 4 | Thomas: | No sir. Not that I'm aware at this time. |
| 5 | | |
| 6 | Brown: | Mr. Bennett would you care to make a statement on your behalf? |
| 7 | | |
| 8 | Bennett: | Yes I would just like to for whatever it's worth I'm 15 ½ years |
| 9 | | with CSX injury free years and in a big part of the inclusion |
| 10 | | counsel here in Savannah and have to do with the Christmas |
| 11 | | outreach program for underprivileged children and many other |
| 12 | | things that we do in that nature to show in good light of CSX. |
| 13 | | |
| 14 | | I'd like to note that from morel I'm one of the best people for this |
| 15 | | company because I always when I ride with everyone that I work |
| 16 | | with I promote a positive attitude and then I'd like to also note that |
| 17 | | I'm very proud to be part of CSX.  I'm proud to be in the Marine |
| 18 | | Corp and CSX is right there up there with that.  And I'd just like to |
| 19 | | note I'm appreciative of my job and take it very seriously and |
| 20 | | thank you for letting me speak. |
| 21 | | |
| 22 | Brown: | Mr. Thomas would you care to make a statement on your own |
| 23 | | behalf? |
| 24 | | |
| 25 | Thomas: | Yes I would.  As conductor it is my job as chief engineer informed |
| 26 | | of all issues coming up while we're on the move and before _____ |
| 27 | | on January 3rd I failed to do my job to the ….it's like should have |
| 28 | | and I was working job through that and I apologize primarily to |
| 29 | | John because I let him down that day. |
| 30 | | |
| 31 | | To my___ that warning board for that temporary speed restriction |
| 32 | | which is in question but considering the incident you would have |
| 33 | | to be there today.  I do regret like I said the incident  and now an |
| 34 | | hour and a half we get to making myself to maintaining the proper |
| 35 | | focus and _____ I can do my job and of course again I apologize to |
| 36 | | John and the rest of you for being here today. |
| 37 | | |
| 38 | Brown: | Mr. Harvey if you want to make closing statement on behalf of Mr. |
| 39 | | Bennett. |
| 40 | | |
| 41 | Harvey: | Yes I would.  I've see this incident as a minor oversight on Mr. |
| 42 | | Bennett's behalf.  And I don't feel like it was an action of gross |
| 43 | | negligence in his behalf.  I would like to point out as he has |
| 44 | | already that he is a member of inclusion counsel here in Savannah. |
| 45 | | He's worked 15 ½ years injury free and t the ones that review the |

THOMAS, P. R., 572454　　　　　AUTHENTICATED　　　　　266287-2-0123L.14
BENNETT, J. P., 239613　　　　　　　　　　　　　　　　　　　266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | | transcripts of this investigation I would ask for you leniency on |
| 2 | | Mr. Bennett's behalf.  Thank you for your time. |
| 3 | | |
| 4 | Brown: | Mr. Robertroy would you wish to make a statement on Mr. |
| 5 | | Thomas' behalf? |
| 6 | | |
| 7 | Robertroy: | Yes sir I would.  Mr. Thomas is even though he's not actually the |
| 8 | | one controlling the locomotive engine he does recognize that he is |
| 9 | | partially at fault for this need for this investigation.  And he has |
| 10 | | apologized and dedicated his, his further career to keep from |
| 11 | | having to come before you again. |
| 12 | | |
| 13 | Brown: | Mr. Bennett, were you present during the entire course of this |
| 14 | | investigation and heard all the testimony given? |
| 15 | | |
| 16 | Bennett: | Yes sir. |
| 17 | | |
| 18 | Brown: | Mr. Thomas, were you present for the entire course of this |
| 19 | | investigation and heard all testimony given? |
| 20 | | |
| 21 | Thomas: | Yes I was. |
| 22 | | |
| 23 | Brown: | Mr. Harvey, were you present here this entire investigation and |
| 24 | | heard all testimony given? |
| 25 | | |
| 26 | Harvey: | Yes sir I was. |
| 27 | | |
| 28 | Brown: | Mr. Robertroy, were you present and heard all testimony given? |
| 29 | | |
| 30 | Robertroy: | Yes sir. |
| 31 | | |
| 32 | Brown: | Mr. Bennett, were you and your representative allowed to present |
| 33 | | witnesses and evidence on your behalf? |
| 34 | | |
| 35 | Bennett: | Yes sir. |
| 36 | | |
| 37 | Brown: | Mr. Thomas, were you and your representative allowed to present |
| 38 | | witnesses and evidence on your behalf? |
| 39 | | |
| 40 | Thomas: | Yes sir. |
| 41 | | |
| 42 | Brown: | Mr. Harvey were you allowed to present witnesses and evidence |
| 43 | | on Mr. Bennett's behalf and examine all witnesses who have |
| 44 | | testified here today? |
| 45 | | |

Carrier's Exhibit A
42

THOMAS, P. R., 572454          AUTHENTICATED          266287-2-0123L.14
BENNETT, J. P., 239613                                        266286
INVESTIGATION

| | | |
|---|---|---|
| 1 | Harvey: | Yes sir I was. |
| 2 | | |
| 3 | Brown: | Mr. Robertroy were you allowed to present witnesses and evidence |
| 4 | | on Mr. Thomas' behalf and cross examine all witnesses who have |
| 5 | | testified today? |
| 6 | | |
| 7 | Robertroy: | Yes sir. |
| 8 | | |
| 9 | Brown: | Mr. Harvey, were you granted all requests to recesses to confer |
| 10 | | with Mr. Bennett and make statements on his behalf? |
| 11 | | |
| 12 | Harvey: | Yes I was. |
| 13 | | |
| 14 | Brown: | Mr. Robertroy, were you granted requests recesses to confer with |
| 15 | | Mr. Thomas and make statements on his behalf? |
| 16 | | |
| 17 | Robertroy: | Yes sir. |
| 18 | | |
| 19 | Brown: | Mr. Bennett has this investigation been conducted in a fair and |
| 20 | | impartial manner? |
| 21 | | |
| 22 | Bennett: | No sir. |
| 23 | | |
| 24 | Brown: | Mr. Bennett could you please specify the reason why you feel this |
| 25 | | investigation was not *(sidebar discussion)* conducted in a fair and |
| 26 | | impartial manner? |
| 27 | | |
| 28 | Bennett: | I'll let the record stand for itself sir. |
| 29 | | |
| 30 | Brown: | Mr. Thomas has this investigation been conducted in a fair and |
| 31 | | impartial manner? |
| 32 | | |
| 33 | Thomas: | Yes sir. |
| 34 | | |
| 35 | Brown: | Mr. Harvey has this investigation been conducted in a fair and |
| 36 | | impartial manner? |
| 37 | | |
| 38 | Harvey: | I'll let the record speak for itself. |
| 39 | | |
| 40 | Brown: | Mr. Robertroy has this investigation been conducted in a fair and |
| 41 | | impartial manner? |
| 42 | | |
| 43 | Robertroy: | I'll let the record speak for itself sir. |
| 44 | | |

Carrier's Exhibit A
43

THOMAS, P. R., 572454        AUTHENTICATED        266287-2-0123L.14
BENNETT, J. P., 239613                                                266286
INVESTIGATION

1   Brown:            This investigation has been held for the purpose of gathering the
2                          relevant facts.  The official transcript will be carefully reviewed
3                          and all facts considered before any decision is rendered.
4
5                          If there is no further statements this investigation is concluded.
6                          The time now is 1233, January 23, 2014.  This concludes the
7                          Bennett and Thomas investigation.
8
9   *(End of Job # 16437 - end of investigation)*
10
11                                    ***CERTIFICATION***
12
13   *This is to certify this transcript (statement) was typed to the best of my ability from*
14   *recording and it is true and accurate.*
15

16
17                               _____
18                               *Transcriber: Pam Reid*
19                               *ID No: 374541*
20                               *Location: Jacksonville, Florida*
21                               *Date:  February 11, 2014*
22

23
24                               _____
25                               *Correct by: Pam Reid, on behalf of*
26                               *R. E. Brown*
27                               *ID No: 374541*
28                               *Location: Jacksonville, Florida*
29                               *Date:  February 14, 2014*

Carrier's Exhibit A
44

CARRIER   A



C. G. Worth
Assistant Division Manager
Jacksonville Division

West Jacksonville Offices
3019 Warrington Street
Jacksonville, FL 32254

January 13, 2014
File Number 266286

**EXPRESS MAIL EM 727620007 US**

J P BENNETT
ENGINEER ID NO. 239613
44 BELLE GROVE CIR
RICHMOND HILL, GA  31324-3750

Arrange to attend a formal investigation to be held in Conference Room, 1401 Staley Avenue, Savannah, Georgia, commencing at 0900 hours (CSX Time), on January 23, 2014.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received that on January 3, 2014, at approximately 0005 hours, while working Q41002, in the vicinity of Milepost AN 584.4 and AN 584.5, you operated your train 14 mph over the maximum authorized speed, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

**P. R. Thomas has been charged under separate letter for same date shown above.**

You must be fully rested under the FRA Hours of Service Law to attend the scheduled investigation.

You may have representation in accordance with your working agreement and you may have witnesses present who have knowledge of the matter under investigation.

This will also serve as notification that effective immediately your FRA Engineer Certification is suspended pursuant to 49 CFR Part 240.307(b)(1) pending a revocation determination in connection with the incident described above. Your certification may subsequently be revoked for a period specified by 49 CFR Part 240.117. If you have not already surrendered your FRA Engineer Certificate to your Road Foreman, you must do so immediately upon receipt of this letter.

Federal regulations provide that you are entitled to a hearing on the revocation determination before an officer other than the field investigating officer. In accordance with the federal regulations, your revocation hearing will be consolidated with the formal investigation referenced above.

**If for some reason you are removed as principal, you are required to attend as a witness at the investigation if held for other employee(s) charged.**

*C. Worth* (signature)

C. Worth

mdm

cc:     R. R. Bush, Road Foreman of Engines - Arrange to be present as a witness
        P. R. Thomas (572454) – Charged under separate letter EM 727619998 US

**Where Safety is First**

Carrier's Exhibit A
45

CHAPTER B



West Jacksonville Offices
3019 Warrington Street
Jacksonville, FL 32254

C. G. Worth
Assistant Division Manager
Jacksonville Division

January 13, 2014
File Number 266287

**EXPRESS MAIL EM 727619998 US**

P R THOMAS
CONDUCTOR ID NO. 572454
2075 GROVE POINT RD
SAVANNAH, GA   31419-9753

Arrange to attend a formal investigation to be held in Conference Room, 1401 Staley Avenue, Savannah, Georgia, commencing at 0900 hours (CSX Time), on January 23, 2014.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received that on January 3, 2014, at approximately 0005 hours, while working Q41002, in the vicinity of Milepost AN 584.4 and AN 584.5, you allowed your train to operate 14 mph over the maximum authorized speed, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

**J. P. Bennett has been charged under separate letter of same date shown above.**

You must be fully rested under the FRA Hours of Service Law to attend the scheduled investigation.

You may have representation in accordance with your working agreement and you may have witnesses present who have knowledge of the matter under investigation.

This will also serve as notification that effective immediately your FRA Conductor Certification is suspended pursuant to 49 CFR Part 242.407(b)(1) pending a revocation determination in connection with the incident described above. Your certification may subsequently be revoked for a period specified by 49 CFR Part 242.405. If you have not already surrendered your FRA Conductor Certificate to your supervisor, you must do so immediately upon receipt of this letter.

Federal regulations provide that you are entitled to a hearing on the revocation determination before an officer other than the field investigating officer. In accordance with the federal regulations, your revocation hearing will be consolidated with the formal disciplinary investigation referenced above.

**If for some reason you are removed as principal, you are required to attend as a witness at the investigation if held for other employee(s) charged.**

C. Worth

mdm

cc:     R. R. Bush, Road Foreman of Engines - Arrange to be present as a witness
        J. P. Bennett (239613) – Charged under separate letter EM 727619998 US

**Where Safety is First**

Carrier's Exhibit A

46

Train Bulletins

```
***************************************************************
DISPATCHER'S BULLETIN    CSX  TRANSPORTATION    DISPATCHER'S BULLETIN
                                                      NO. 96680
STATION RICE YARD GA                            JANUARY 02 2014

TO C&E TRAIN ID Q41002
ENGINEER:  JP BENNETT        1239613
CONDUCTOR: PR THOMAS         1572454
================================================================
LATEST CSX TRANSPORTATION SYSTEM BULLETIN ISSUED:     NO.  001
================================================================
YOU MUST CARRY
QUALIFIERS #(S)
================================================================

SUBDIVISION - THOMASVILLE           ***********************************
LATEST GENERAL BULLETIN ISSUED:           JACKSONVILLE DISTRICT NO.   600

001 - DISPATCHER MESSAGE NUMBER 23627
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 684.2 AND MP AN 684.3 SIGNS-YES
        ( 02 LINE(S) )

002 - DISPATCHER MESSAGE NUMBER 23625
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 681.0 AND MP AN 681.1 SIGNS-YES
        ( 02 LINE(S) )

003 - DISPATCHER MESSAGE NUMBER 23621
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 677.1 AND MP AN 677.2 SIGNS-YES
        ( 02 LINE(S) )

004 - DISPATCHER MESSAGE NUMBER 45067
    WATCH OUT FOR CLOSE CLEARENCE MP AN 676.8 ACCOUNT OF LARGE TREE NEAR
    TRACK
        ( 02 LINE(S) )

005 - DISPATCHER MESSAGE NUMBER 39391
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 673.0 AND MP AN 673.1 SIGNS-YES
        ( 02 LINE(S) )

006 - DISPATCHER MESSAGE NUMBER 42405
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 670.7 AND MP AN 670.8 SIGNS-YES
        ( 02 LINE(S) )
```

Carrier's Exhibit A

47

```
007 - DISPATCHER MESSAGE NUMBER 46109
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 668.8 AND MP AN 668.9 SIGNS-YES
        ( 02 LINE(S) )

008 - DISPATCHER MESSAGE NUMBER 29645
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 667.0 AND MP AN 667.1 SIGNS-YES
        ( 02 LINE(S) )

009 - DISPATCHER MESSAGE NUMBER 13879
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 662.9 AND MP AN 663.0 SIGNS-YES
        ( 02 LINE(S) )

010 - DISPATCHER MESSAGE NUMBER 39604
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 645.1 AND MP AN 645.2 SIGNS-YES
        ( 02 LINE(S) )

011 - DISPATCHER MESSAGE NUMBER 25197
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 643.9 AND MP AN 644.0 SIGNS-YES
        ( 02 LINE(S) )

012 - DISPATCHER MESSAGE NUMBER 45186
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 631.9 AND MP AN 632.0 SIGNS-YES
        ( 02 LINE(S) )

013 - DISPATCHER MESSAGE NUMBER 41708
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 628.0 AND MP AN 628.1 SIGNS-YES
        ( 02 LINE(S) )

014 - DISPATCHER MESSAGE NUMBER 16601
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP AN 620.1 AND MP AN 620.2 SIGNS-YES
        ( 02 LINE(S) )

015 - DISPATCHER MESSAGE NUMBER 17118
    ON JAN 03, 2014
    WORKING LIMITS ARE DESIGNATED WITHIN THE FOLLOWING LIMIT(S)
        MP TO MP     FROM UNTIL TRACKS              EMPLOYEE IN CHARGE
    AN 620.1  AN 620.2  0830 1500  ALL TRACKS        JT MORGAN
        ( 04 LINE(S) )

    AUTHORITY NO.: _____  OK DISP INL: ____  TIME: ____
```

Carrier's Exhibit A
48

```
016 - DISPATCHER MESSAGE NUMBER 18666
     DO NOT EXCEED THE FOLLOWING SPEED
     25/25 MPH ON MAIN TRACK BETWEEN MP AN 616.7 AND MP AN 616.8 SIGNS-YES
          ( 02 LINE(S) )

017 - DISPATCHER MESSAGE NUMBER 37640
     DO NOT EXCEED THE FOLLOWING SPEED
     25/25 MPH ON MAIN TRACK BETWEEN MP AN 611.0 AND MP AN 611.2 SIGNS-YES
          ( 02 LINE(S) )

018 - DISPATCHER MESSAGE NUMBER 49524
     DO NOT EXCEED THE FOLLOWING SPEED
     25/25 MPH ON MAIN TRACK BETWEEN MP AN 610.2 AND MP AN 610.3 SIGNS-YES
          ( 02 LINE(S) )

019 - DISPATCHER MESSAGE NUMBER 34054
     DO NOT EXCEED THE FOLLOWING SPEED
     25/25 MPH ON NO 2 TRACK BETWEEN MP AN 592.9 AND MP AN 593.0 SIGNS-YES
          ( 02 LINE(S) )

020 - DISPATCHER MESSAGE NUMBER 45865
     DO NOT EXCEED 10 MPH BETWEEN THE FOLLOWING LOCATION
     ANK 693.8 AND ANK 705.6
          ( 02 LINE(S) )


SUBDIVISION - JESUP                   ************************************
LATEST GENERAL BULLETIN ISSUED:            JACKSONVILLE DISTRICT NO.   600

001 - DISPATCHER MESSAGE NUMBER 16719
     DO NOT EXCEED THE FOLLOWING SPEED
     25/25 MPH ON MAIN TRACK BETWEEN MP AN 584.4 AND MP AN 584.5 SIGNS-YES
          ( 02 LINE(S) )

002 - DISPATCHER MESSAGE NUMBER 14630
     DO NOT EXCEED THE FOLLOWING SPEED
     25/25 MPH ON MAIN TRACK BETWEEN MP AN 576.5 AND MP AN 576.6 SIGNS-YES
          ( 02 LINE(S) )

003 - DISPATCHER MESSAGE NUMBER 45420
     WALKWAY AN576.6 OUT OF SERVICE
          ( 01 LINE(S) )


SUBDIVISION - NAHUNTA                  ************************************
LATEST GENERAL BULLETIN ISSUED:            JACKSONVILLE DISTRICT NO.   600
```

Carrier's Exhibit A

```
001 - DISPATCHER MESSAGE NUMBER 27202
     DO NOT EXCEED 25 MPH MAKING A DIVERGING MOVEMENT THROUGH THE
     SOUTH CROSSOVER CALLAHAN
           ( 02 LINE(S) )

002 - DISPATCHER MESSAGE NUMBER 32001
     NORTH STORAGE SWITCH A602.8 FOLKSTON OUT OF SERVICE
           ( 01 LINE(S) )

003 - DISPATCHER MESSAGE NUMBER 14785
     DO NOT EXCEED 25 MPH MAKING A DIVERGING MOVEMENT THROUGH THE
     NORTH CROSSOVER FOLKSTON
           ( 02 LINE(S) )

004 - DISPATCHER MESSAGE NUMBER 43764
     DO NOT EXCEED THE FOLLOWING SPEED
     40/40 MPH ON NO 2 TRACK BETWEEN MP A  602.3 AND MP A  602.4 SIGNS-YES
           ( 02 LINE(S) )

005 - DISPATCHER MESSAGE NUMBER 27602
     DO NOT EXCEED THE FOLLOWING SPEED
     60/40 MPH ON NO 2 TRACK BETWEEN MP A  539.6 AND MP A  539.7 SIGNS-YES
           ( 02 LINE(S) )

006 - DISPATCHER MESSAGE NUMBER 35463
     DO NOT EXCEED THE FOLLOWING SPEED
     30/25 MPH ON NO 1 TRACK BETWEEN MP A  521.7 AND MP A  521.8 SIGNS-YES
           ( 02 LINE(S) )

007 - DISPATCHER MESSAGE NUMBER 26744
     DO NOT EXCEED THE FOLLOWING SPEED
     30/25 MPH ON NO 1 TRACK BETWEEN MP A  518.4 AND MP A  518.5 SIGNS-YES
           ( 02 LINE(S) )

008 - DISPATCHER MESSAGE NUMBER 27649
     DO NOT EXCEED THE FOLLOWING SPEED
     60/40 MPH ON MAIN TRACK BETWEEN MP A  509.9 AND MP A  510.0 SIGNS-YES
           ( 02 LINE(S) )

009 - DISPATCHER MESSAGE NUMBER 10442
     DO NOT EXCEED 25 MPH MAKING A DIVERGING MOVEMENT THROUGH THE
     SOUTH CROSSOVER FOLKSTON
           ( 02 LINE(S) )

010 - DISPATCHER MESSAGE NUMBER 26412
     THE REFUGE BAY ON THE BRIDGE AT MILEPOST A540.1 IS OUT OF SERVICE DUE
     TO NO HAND RAIL.
           ( 02 LINE(S) )
```

Carrier's Exhibit A

50

```
SUBDIVISION - SAVANNAH              ************************************
LATEST GENERAL BULLETIN ISSUED:              JACKSONVILLE DISTRICT NO.   600

001 - DISPATCHER MESSAGE NUMBER 18490
    WALKWAY OUT SERVICE OGEECHEE RIVER BRIDGE A505.5 DUE TO LOOSE HAND RAIL
         ( 01 LINE(S) )

002 - DISPATCHER MESSAGE NUMBER 16021
    DO NOT EXCEED THE FOLLOWING SPEED
    60/40 MPH ON MAIN TRACK BETWEEN MP S  507.2 AND MP S  507.3 SIGNS-YES
         ( 02 LINE(S) )


SUBDIVISION - FITZGERALD            ************************************
LATEST GENERAL BULLETIN ISSUED:              JACKSONVILLE DISTRICT NO.   600

001 - DISPATCHER MESSAGE NUMBER 42384
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP ANB744.4 AND MP ANB744.5 SIGNS-YES
         ( 02 LINE(S) )

002 - DISPATCHER MESSAGE NUMBER 48364
    DO NOT EXCEED THE FOLLOWING SPEED
    40/40 MPH ON MAIN TRACK BETWEEN MP ANB733.9 AND MP ANB734.0 SIGNS-YES
         ( 02 LINE(S) )

003 - DISPATCHER MESSAGE NUMBER 14051
    SWITCH AT ALLEN FRONZEN FOOD IS OUT OF SERVICE RED TAGGED AND
    SPIKED AT MP ANB 724.5
         ( 02 LINE(S) )

004 - DISPATCHER MESSAGE NUMBER 10254
    DO NOT EXCEED THE FOLLOWING SPEED
    10/10 MPH ON SDG TRACK BETWEEN MP ANB682.8 AND MP ANB682.9 SIGNS-YES
         ( 02 LINE(S) )

005 - DISPATCHER MESSAGE NUMBER 13755
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP ANB647.7 AND MP ANB647.8 SIGNS-YES
         ( 02 LINE(S) )

006 - DISPATCHER MESSAGE NUMBER 46746
    DO NOT EXCEED THE FOLLOWING SPEED
    25/25 MPH ON MAIN TRACK BETWEEN MP ANB626.6 AND MP ANB626.7 SIGNS-YES
         ( 02 LINE(S) )
```

Carrier's Exhibit A

51

```
007 - DISPATCHER MESSAGE NUMBER 37523
   DO NOT EXCEED THE FOLLOWING SPEED
   25/25 MPH ON MAIN TRACK BETWEEN MP ANB612.6 AND MP ANB612.7 SIGNS-YES
        ( 02 LINE(S) )

008 - DISPATCHER MESSAGE NUMBER 17069
   ON JAN 03, 2014
   WORKING LIMITS ARE DESIGNATED WITHIN THE FOLLOWING LIMIT(S)
        MP TO MP      FROM UNTIL TRACKS             EMPLOYEE IN CHARGE
   ANB606.0  ANB606.7  0800 1830  ALL TRACKS        AC YORK
        ( 04 LINE(S) )

   AUTHORITY NO.: _____  OK DISP INL: _____  TIME: _____

009 - DISPATCHER MESSAGE NUMBER 47686
   BE AWARE OF HAZARDOUS WALKING CONDITIONS ALONG TRACKS BETWEEN
   MP ANB606.3 AND MP ANB606.7.
        ( 02 LINE(S) )

010 - DISPATCHER MESSAGE NUMBER 49380
   DO NOT EXCEED THE FOLLOWING SPEED
   25/25 MPH ON MAIN TRACK BETWEEN MP ANB606.4 AND MP ANB606.7 SIGNS-YES
        ( 02 LINE(S) )

011 - DISPATCHER MESSAGE NUMBER 14922
   DO NOT EXCEED THE FOLLOWING SPEED
   25/25 MPH ON MAIN TRACK BETWEEN MP ANB590.7 AND MP ANB590.8 SIGNS-YES
        ( 02 LINE(S) )

===============================================================================
TIME ISSUED: 01021908   A  046 TOTAL MESSAGES   INITIALS EMT   CONSOLE JC

*******************************************************************************
```

Carrier's Exhibit A

52

## Section 3
## Movement of Trains, Speeds and Train Protection Rules
1 of 9

### Speed Rules

**40.** Train speeds must be maintained to the extent feasible, consistent with safety. They must not be exceeded. Train speeds may be authorized by the rules, special instructions, signal indications, dispatcher messages or other means. When there is a difference in the speeds, the lowest speed will govern.

**41.** Unless otherwise specified, speed restrictions apply to the entire train. If a crewmember is on the rear of the train, he must notify the engine crew, if feasible, when the rear of the train has passed through each speed restriction.

**42.** The locations of permanent speed restrictions are identified in special instructions and are indicated by:

1. A Permanent Reduce Speed Sign located at the beginning of the restriction. This sign must be placed to the right of the affected tracks, if feasible, and

2. A Permanent End Restriction Sign located at the end of the restriction. This sign must be placed to the left of the affected tracks, if feasible.

**Note:** Placement of these signs is not required for:

a. City ordinance speed restrictions; and

b. Permanent speed restrictions on other than main or signaled tracks.

**42-A.** When one speed is shown on a Permanent Reduce Speed sign it indicates the speed permitted for all trains.

When two speeds are shown, the higher speed indicates the speed permitted for passenger trains. The lower speed indicates the speed permitted for other trains.

**42-B.** If the same speed restriction applies to all tracks, only one Permanent Reduce Speed Sign need be used. If the speed restriction differs for any track, additional signs may be used. Also, when speed restrictions differ for any track, one sign with no speed shown may be used. In the latter case, trains must not exceed the speed indicated by special instructions for the track on which the train is operating.

**43.** On main tracks, signaled tracks, or sidings the locations of temporary speed restrictions and work force limits are designated by dispatcher message, and are indicated by the following sign placement:

1. **Temporary Speed Restriction:**

a. A Warning Sign, located at least two miles before the restriction. This sign must be placed to the right of the track, if feasible;

b. A Temporary Reduce Speed Sign located at the beginning of the restriction. This sign must be placed to the right of the track, if feasible; and

c. A Temporary End Restriction Sign located at the end of the restriction. This sign must be placed to the left of the track, if feasible.

When conditions do not permit the placement of the Warning Sign(s), or do not permit the placement of any Temporary Reduce Speed Sign(s) in connection with a temporary speed restriction, the train dispatcher must be notified. A dispatcher message must indicate that the sign(s) is not displayed.

2. **Work Force Limits;**

On controlled tracks, the location of work force limits per Rule 89 are designated by dispatcher message and are indicated by the following sign placement:

a. Sign Placement

(1) Signs may be placed up to 30 minutes before the working limits become effective, providing the employee in charge is available to communicate with any train or equipment that may be approaching the working limits.

(2) To the right of the affected track, or in accordance with the instructions in the dispatcher message,

(3) When track center spacing does not allow placement of a standard sign in the center ditch, signs may be posted to the field side of the affected track, facing the direction from which trains could approach the working limits, and

(4) When the limits of both a work force and a temporary speed restriction are the same, only one set of warning signs must be displayed at each end.

Note: The receipt of oral permission to enter the limits of a Form W conveys no authority to exceed any temporary speed restriction within those limits.

b. Warning Signs and Conditional Stop Signs

(1) Unless otherwise specified, a warning sign will be displayed at least two (2) but not more than two and one-half (2 ½) miles from the beginning of the working limits on each end.

(2) Unless otherwise specified, a conditional stop sign will be displayed,

(a) On each end of the working limits, and

(b) At the clearance point of each junction point of a subdivision.

**44.** If a train encounters an Warning Sign that is not covered by instructions, the train must proceed prepared to stop in two miles. If no conditional stop sign or temporary reduce speed sign is encountered in two miles, the train will proceed at controlled speed for an additional mile, unless otherwise restricted. If no conditional stop sign or temporary reduce speed sign is encountered the train may proceed at authorized speed, unless otherwise restricted. The occurrence must be reported promptly to the train dispatcher.

**44-A.** The train dispatcher must be notified if a conditional stop sign is not found at the point designated.

If a conditional stop sign is observed that is not covered by a dispatcher message, or EC-1, at a location designated by an expired or annulled dispatcher message or EC-1 Instruction the train must,

1. Stop immediately

2. Notify the dispatcher and

3. Be governed by their instructions.

© Copyright 2004

Carrier's Exhibit A

53

# Chapter 3 - Movement of Trains

## 300 - Authorized Train Speed

**300.1**  Train speeds are authorized by:

<div style="text-align: right">Not Used Per Objection</div>

a. Rules, or

b. Special instructions, or

c. Train documents, or

d. Dispatcher messages, or

e. Form EC-1, or

f. Signal indications.

**300.2**   Authorized train speed:

1. Must not be exceeded,

2. Applies to the entire train unless otherwise specified,

3. Must be observed even if wayside signs are not displayed, and

4. Must be the lowest of the specified speeds if a conflict exists between authorized speeds.

**300.3**  The following terms apply when used to authorize train speed:

a. Limited Speed: A speed not exceeding 45 MPH.

b. Medium Speed: A speed not exceeding 30 MPH.

c. Slow Speed: A speed not exceeding 15 MPH.

d. Restricted Speed: A speed that permits stopping within one-half the range of vision. It also permits stopping short of a train, a car, on-track equipment, an obstruction, a Stop signal, a derail, or an improperly lined switch. It permits looking out for broken rail. It is not to exceed 15 MPH.

**300.4**  Trains using other than main or signaled tracks must move at a speed that permits stopping within one-half the range of vision, short of a train, a car, on-track equipment, an obstruction, a Stop signal, a derail, or an improperly lined switch and must not exceed:

a. 25 MPH on non-signaled sidings; or

b. 15 MPH when moving to and from the main track, operating through hand-operated switches not equipped with a signal; or

c. 10 MPH when not moving to or from the main track, operating through hand-operated switches; or

d. 10 MPH on other than main tracks or signaled tracks; or

e. 5 MPH within designated locomotive service track or car shop repair track areas.

Carrier's Exhibit A
54



Carrier's Exhibit A

CARRIER D                                                    PAGE 1

LDVR | DATA

| DATE | CMU_LAT | CMU_LONG | SPEED | THROTTLE_NOTCH | DYN_BRAKE | AB | IB | ER | EOT |
|------|---------|----------|-------|----------------|-----------|-----|-----|-----|-----|
| 2014-1-3 0:5.22 | 31.23785 | -82.32297 | 39.56 | 0 | 6 | 78 | 0 | 64 | 85 |
| 2014-1-3 0:5.23 | 31.23796 | -82.32283 | 39.72 | 0 | 6 | 78 | 0 | 64 | 83 |
| 2014-1-3 0:5.24 | 31.23806 | -82.32271 | 39.75 | 0 | 6 | 77 | 0 | 64 | 83 |
| 2014-1-3 0:5.25 | 31.23818 | -82.32257 | 39.61 | 0 | 6 | 76 | 0 | 64 | 83 |
| 2014-1-3 0:5.26 | 31.23829 | -82.32244 | 39.61 | 0 | 6 | 76 | 0 | 64 | 83 |
| 2014-1-3 0:5.27 | 31.23839 | -82.32230 | 39.75 | 0 | 6 | 75 | 0 | 64 | 81 |
| 2014-1-3 0:5.28 | 31.23851 | -82.32215 | 39.36 | 0 | 6 | 75 | 0 | 64 | 81 |
| 2014-1-3 0:5.29 | 31.23860 | -82.32202 | 39.26 | 0 | 6 | 74 | 0 | 64 | 81 |
| 2014-1-3 0:5.30 | 31.23871 | -82.32189 | 39.1 | 0 | 6 | 74 | 0 | 64 | 81 |
| 2014-1-3 0:5.31 | 31.23883 | -82.32176 | 38.94 | 0 | 6 | 73 | 0 | 64 | 79 |
| 2014-1-3 0:5.32 | 31.23893 | -82.32161 | 38.71 | 0 | 6 | 73 | 0 | 64 | 79 |
| 2014-1-3 0:5.33 | 31.23904 | -82.32148 | 38.31 | 0 | 6 | 72 | 0 | 64 | 79 |
| 2014-1-3 0:5.34 | 31.23914 | -82.32135 | 38.04 | 0 | 7 | 72 | 0 | 64 | 79 |
| 2014-1-3 0:5.35 | 31.23925 | -82.32121 | 37.74 | 0 | 6 | 71 | 0 | 64 | 77 |
| 2014-1-3 0:5.36 | 31.23936 | -82.32109 | 37.35 | 0 | 6 | 71 | 0 | 64 | 77 |
| 2014-1-3 0:5.37 | 31.23945 | -82.32096 | 36.94 | 0 | 6 | 70 | 0 | 64 | 77 |
| 2014-1-3 0:5.38 | 31.23955 | -82.32083 | 36.47 | 0 | 6 | 70 | 0 | 64 | 77 |
| 2014-1-3 0:5.39 | 31.23966 | -82.32070 | 36.23 | 0 | 6 | 69 | 0 | 64 | 77 |
| 2014-1-3 0:5.40 | 31.23975 | -82.32057 | 35.79 | 0 | 6 | 69 | 0 | 64 | 75 |
| 2014-1-3 0:5.41 | 31.23986 | -82.32046 | 35.2 | 0 | 6 | 68 | 0 | 64 | 75 |
| 2014-1-3 0:5.42 | 31.23995 | -82.32033 | 34.67 | 0 | 6 | 68 | 0 | 64 | 75 |
| 2014-1-3 0:5.43 | 31.24006 | -82.32020 | 34.17 | 0 | 6 | 67 | 0 | 64 | 73 |
| 2014-1-3 0:5.44 | 31.24015 | -82.32009 | 33.54 | 0 | 6 | 67 | 0 | 63 | 73 |
| 2014-1-3 0:5.45 | 31.24024 | -82.31998 | 32.98 | 0 | 6 | 67 | 0 | 64 | 73 |
| 2014-1-3 0:5.46 | 31.24033 | -82.31985 | 32.35 | 0 | 6 | 67 | 0 | 64 | 73 |
| 2014-1-3 0:5.47 | 31.24043 | -82.31975 | 31.75 | 0 | 6 | 67 | 0 | 64 | 71 |
| 2014-1-3 0:5.48 | 31.24051 | -82.31964 | 31.07 | 0 | 6 | 67 | 0 | 64 | 71 |
| 2014-1-3 0:5.49 | 31.24060 | -82.31952 | 30.37 | 0 | 6 | 66 | 0 | 64 | 71 |

Carrier's Exhibit A   56

PAGE 6



Carrier's Exhibit A
57

CARRIER E

PAGE ①

# ERAD Parameter—Throttle Mode

Carrier's Exhibit A

58

| Trip Optimizer Throttle Mode | Description | Parameter Value (float) |
|---|---|---|
| OFF (no details) | • TO System Is INACTIVE<br>• Trip IS NOT Loaded<br>• Operator is controlling via Master Controller | 0 |
| OFF SYS RESTRICT | • TO System Is INACTIVE<br>• New Trip Initialization PROHIBITED by TO System/Locomotive Health | 20 |
| OFF TRIP INIT PENDING | • TO System Is INACTIVE<br>• Trip Init Speed OK, Brake Setup Lead/Cut In, 6 Digit Train ID is Programmed<br>• New Trip Key Pressed<br>• Trip Initialization Data Request IN PROGRESS | 21 |
| MANUAL (no details) | • TO System is ACTIVE, and in MANUAL<br>• Trip IS Loaded<br>• Operator is controlling via Master Controller | 1 |
| MANUAL AUTO AVAILABLE | • TO System can transition to AUTO | 30 |
| MANUAL OFF ROUTE | • TO System Location Determination Prohibits AUTO | 31 |
| MANUAL/BRAKE ZONE | • TO System Manual Track Zone Prohibits AUTO | 32 |
| MANUAL OPERATIONAL CONDITIONS | • TO System Prohibit AUTO due to Operational Conditions such as:<br> • Current Speed Out of AUTO allow range<br> • Current Notch/Brake/DP Application Out of AUTO allow range<br> • Trip Replan In Progress<br> • Poor Speed Regulation | 33 |
| FULL AUTO | • TO System is ACTIVE, and in AUTOMATIC<br>• Trip IS Loaded<br>• TO controls Throttle AND Dynamic Braking | 2 |
| SEMI AUTO | • TO System is ACTIVE, and in AUTOMATIC<br>• Trip IS Loaded<br>• TO control limited to Throttle | 3 |
| FORCED IDLE | TO reducing consist to IDLE during transition to manual due to Operator inaction or System Restriction | 4 |
| HOLDING NOTCH | TO transition to MANUAL, waiting for Operator match notch | 5 |





**Session Details**

**Current File:** CSXT5290_Q41002_52C64500 V4   **GMT:** 2014/01/03, 05:05:15     **Wheel Diameter:** N/A

**Road#:** CSX # 5290          **LST:** 2014/01/03, 00:05:15



Temporary 25 MPH
Speed Restriction
AN 584.4
Speed 39 MPH

Carrier's Exhibit A
59

**Video Length:** 00:06:12     **GPS Lat:** 31°14'12"
**Position:** 00:01:23       **GPS Lon:** 82°19'27"

**Monitor Parameters (00000000G.ini) :**

Horn: Off

Bell: Off

Speed: 39 mph

Reverser Position: Frwd

page 32 Power Cutoff Switch: closed

CARRIER F

## Engineer/RCO/Conductor Decertification Report
### Engineer and Conductor on same crew may be reported on one form

Date:  1/03/14          Time:  0005          Weather:  Clear

Division: Jacksonville          Sub Division: Jesup

Mile Post Location: AN 584.5      Train ID: Q410-02

De-certification: SI, TS, OS, TB, SD, SM, EF, CS, MTS, BAC, FD    Overspeed 10 MPH over

Rule Violated:  40          If Overspeed:    By By ERAD review

Nature of Violation (Short but clear account of event).  Crew flagged by ERAD for maximum speed exceeded when his train entered a 25 mph temporary speed reduction at 39 mph..

If event is a SI or TS indicate distance (if any) to opposing equipment: N/A
Train ID:        was              distance from violating train:

Employee Subject to Decertification
Status at time of incident:  Train service engineer

Employee Subject to Decertification
Status at time of incident: Conductor

Name:  John P Bennett
ID #: 239613
Date of Birth: 2/13/61
Hire Date: 9/14/98
Last Certification Date: 12/31/13
Date of last Rules Exam: 4/12/13
Engine Service Date: 1/22/01
Years of Engine Service (Yrs/Mo): 12yrs/11mos.
Last Ride & Evaluation: 8/27/13
E-Test History (12 mos.): 30

Name: Phil R. Thomas
ID #: 572454
Date of Birth: 12/30/1958
Hire Date: 4/04/04
Last Certification date: 4/30/12
Date of Last Rules Exam: 04/09/2013
Conductor Service Date: 4/04/04
Years of Conductor Service: 9yrs/9 mths
E-Test History (12 mos.): 37

Train Service Date:
Years of Train Service (Yrs/Mo):

Train Service Date:        4/04/04
Years of Train Service (Yrs/Mo): 9yrs/9 mths

Years of Service as RCO:
RCL Qualification Date:
Last Ride & Evaluation:
E-Test History (last 12 mos.):

Other Employees Involved (trainee, utility,
Conductor, brakeman, switchman)

Name:
ID#:
Hire Date:
Promotion Date (if applicable):
E-test History (last 12 mos.):

Was Toxicological testing administered to
employee(s) ?   Yes / No  no
If No, Explain:  N/A

Report Submitted by: Name:  Robert Bush
Title:   Road Foreman Location: Savannah

Updated 1-17-2013                    Office of the CSXT System Road Foreman of Engines



Carrier's Exhibit A

# December 2013

Carrier's Exhibit A
61

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| **1**<br>Rest Day | **2**<br>Available | **3**<br>Available | **4**<br>Available | **5**<br>G43003<br>0115-1455 | **6**<br>DH Q650<br>2100-2315 | **7**<br>Q65007<br>1400-2140 |
| **8**<br>Rest Day | **9**<br>Available | **10**<br>Available | **11**<br>G53112<br>1622- | **12**<br>G53112<br>-0005 | **13**<br>Available | **14**<br>Q68114<br>0800-1710 |
| **15**<br>K50214<br>0600-1751 | **16**<br>Available | **17**<br>Available | **18**<br>Available | **19**<br>Available | **20**<br>Available | **21**<br>Q68121<br>0800-1810 |
| **22**<br>Q65022<br>1615- | **23**<br>Q65022<br>-0145 | **24**<br>Personal Leave | **25**<br>Vacation | **26**<br>Vacation | **27**<br>Available | **28**<br>Rest Day |
| **29**<br>Available | **30**<br>DH Q69030<br>1830-2130 | **31**<br>DH 201<br>1100-1335 | | | | |
| | | | | | | |

P.R. Thomas 572454

CARRIER   I

PCC  1

# January 2014

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | 1<br>Q69101<br>2015- | 2<br>Q69101<br>-0425<br>Q41002<br>1930- | 3<br>Q41002<br>-0305 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |
| | | | | | | |

P.R. Thomas 572454

Page 2

page 29

# December 2013

Carrier's Exhibit A

63

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| **1**<br>Q141-27 | **2**<br>FMLA | **3**<br>FMLA | **4**<br>Q691-04 | **5**<br>Q410-05 | **6**<br>FMLA | **7**<br>Q609-07 |
| **8**<br>Q475-07 | **9**<br>F794-09 | **10**<br>Rest Day | **11**<br>Rest Day | **12**<br>Q103-12 | **13**<br>G793-11 | **14**<br>A768-14 |
| **15**<br>Y150-15 | **16**<br>Layoff Sick | **17**<br>Available | **18**<br>N115-06 | **19**<br>N123-16 | **20**<br>A768-20 | **21**<br>Q609-21 |
| **22**<br>Q208-21 | **23**<br>FMLA | **24**<br>Rest Day | **25**<br>Rest Day | **26**<br>Q475-26 | **27**<br>FMLA | **28**<br>FMLA |
| **29**<br>A963-29 | **30**<br>Available | **31**<br>F957-31 | | | | |
| | | | | | | |

CARRIER J

PAGE 2 

# January 2014

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | 1<br>Q691-01 | 2<br>Q410-02 | 3<br>Q410-02<br>Drop Turn | 4<br>Rest Day |
| 5<br>Rest Day<br>Out of Service | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |
| | | | | | | |

Carrier's Exhibit A
64

Page 2



Carrier's Exhibit A

65

**Speed Restrictions Open on 03-Dec-2013**

**Export to Excel**

| Eff Date | Exp Date | Div | Subdiv | Prefix | Begin Mp | End Mp | Track | Pass TT | Frt TT | PassSO | Frt SO | Distance | Pass RTL | Frt RTL | Age | Sig |
|----------|----------|-----|--------|--------|----------|--------|-------|---------|--------|--------|--------|----------|----------|---------|-----|-----|
| 10/14/13 |          | JX  | JS     | AN     | 576.5    | 576.6  | SG    | 0       | 60     | 25     | 25     | 0.1      | 0        | 4       | 100 | Y   |
| 12/2/13  | 1/7/14   | JX  | JS     | AN     | 584.4    | 584.5  | SG    | 0       | 60     | 25     | 25     | 0.1      | 0        | 4       | 36  | Y   |

**Number of Speed Restrictions: 2**

Carrel  K

2

```
-ADM- *A1   HDC000001HDC                    14/008010728
TMCD.TMXX            CTDS TRAIN SHEET REVIEW      DATE 01080107
OPT: PRNT  TRAIN ID: Q41002 ORIGIN: WAYCRO            PRT: HDC _
TRAIN ID   ORIGIN   DESTIN   ADJ DEPT   ACT DEPT  ACT ARRV
Q41002    WAYCRO   ESAVAN   01021930 E 01022324 01030245
SD JS TY TF       PROFILE SCH: 01022200        01030130
             VARI: 0230 A    0124 L   0115 L
```

PTC STATUS _

```
                 MAX    OP   BRAKE     SPEED
STATISTICS LDS MTY TONS TOTES LNGTH SPD AXLE BRK -FORCE-- ------CLASS-------
DEPARTURE: 029 033 04692 000 03975 050 0248 062 01069285 1 - FREIGHT
LAST RPRTD: 029 033 04692 000 03975 050 0248 062 01069285 1 - FREIGHT
ARRIVAL:  029 033 04692 000 03975
```

```
EOT: _          EOT: _        TRCE: _
UTD: _                        TL#: _
JF#: _    JF2: _    ROAD: _    FTX: _
```

( TMC ) TRAIN SHEET COMPLETION     ( _ ) TRAIN SHEET DELETION

```
  --LOCOMOTIVE-- TRN  LOCO  FAC     HORSE TRACTIVE WORK -----PTC-----
  #   ID  POS -STATUS- DIR- TON LNG POWER EFFORT  HP EQUIP STATUS-
  001 CSXT 7728 _  UNKNOWN BACK 198 071 04000 0108600  N   N _
  002 CSXT 7346 _  RUNNING FWRD 197 071 04000 0108600  Y   N _
  003 CSXT 6092 _  UNKNOWN BACK 139 060 03000 0054750  N   N _
  004 CSXT 5290 _  RUNNING FWRD 216 074 04000 0108600  Y   N _
```

```
CREW 1   NAME     ON DUTY LOCATI TIM RELV LOCATI EXPR ID NUMBER
 ENGR: JP BENNETT    01021930 WAYCRO 01030305 ESAVAN 0730  1239613
 COND: PR THOMAS     01021930 WAYCRO 01030305 ESAVAN 0730  1572454
```

```
 _  _ _    _   _   _   _   _ _
 _  _ _    _   _   _   _   _ _
 P:  HANDLED: 029 LOADS 033 EMPTIES 04692 TONS   TRAIN BULLETIN: 96680
```

```
CREW 2   NAME     ON DUTY LOCATI TIM RELV LOCATI EXPR ID NUMBER
```

```
 _  _ _    _   _   _   _   _ _
 _  _ _    _   _   _   _   _ _
 _  _ _    _   _   _   _   _ _
 P: HANDLED:  LOADS   EMPTIES   TONS  TRAIN BULLETIN:
```

```
CREW 3   NAME     ON DUTY LOCATI TIM RELV LOCATI EXPR ID NUMBER
```

```
 _  _ _    _   _   _   _   _ _
 _  _ _    _   _   _   _   _ _
 _  _ _    _   _   _   _   _ _
 P: HANDLED:  LOADS   EMPTIES   TONS  TRAIN BULLETIN:
```

CREW 5   NAME     ON DUTY LOCATI TIM RELV LOCATI EXPR ID NUMBER

_   _ _     _   _   _   _   _   _
_   _ _     _   _   _   _   _   _
_   _ _     _   _   _   _   _   _
_   _ _     _   _   _   _   _   _
P:  HANDLED:   LOADS   EMPTIES    TONS   TRAIN BULLETIN:


** ENCOUNTERED OPERATIONAL DELAYS **
HHMM LOCATI R DV SD C RS REASON DATA REMARKS
0015 HOMSTD S JX JS E MW AN 584.4 - SPEED RESTRICTION ENCOUNTERED
0000 WJESUP S JX JS S DD MP: AN 553. DD - CARS LOCATED WITH DEFECT
0008 NORLUD S JX NH E MW A 539.6 - SPEED RESTRICTION ENCOUNTERED
0010 SOUOGE S JX NH T OH     ENROUTE TRAIN DELAY
0000 BURROU S JX B0 T HO      HELD OUT OF TERMINAL
0001 FORRIV S JX B0 T HO     HELD OUT OF TERMINAL
0014 DAGA  S JX B0 T OH      ENROUTE TRAIN DELAY
0005 DAGA  S JX B0 T HO      HELD OUT OF TERMINAL


**  ENCOUNTERED FAILURE DELAYS   **
HHMM LOCATI R DV SD C RS REASON DATA REMARKS


** TRAIN REMARKS/COMMENTS **
NO REMARKS OR COMMENTS HAVE BEEN REPORTED.....


** TRAIN POSITION TIME **  * MET/PASSED *  M A
STATION MILES  D  ON   OUT  TRN ID TIME   P D ETA INTM ETA DEST
SOUWYE 00.02  N  2354 2354               ESA 0213
BRUJCT 00.61  N  2358                ESA 0213
HOMSTD 07.02  N  0013 0016               ESA 0216
OFFERM 13.52  N  0035 0037 Q69102 01030035 S      ESA 0208
SCREVE 07.58  N  0045 0047              ESA 0208
WJESUP 08.50  N  0059               ESA 0208
JSUPCP 01.48  N  0101               ESA 0208
DCTRTN 04.90  N  0108               ESA 0208
BACKSW 03.69  N  0113               ESA 0207
NORLUD 06.79  N  0122               ESA 0207
MCINTO 10.44  N  0136               ESA 0208
LODGE 04.87  N  0142               ESA 0208
SOUOGE 08.09  N  0152               ESA 0207
OGEECH 04.23  N  0158               ESA 0208
BURROU 02.50  N  0202               ESA 0208
FORRIV 03.70  N  0209               ESA 0209
DAGA   02.00  N  0226               ESA 0226


** TRAIN SHEET SETOUTS/PICKUPS **
                WORK            WORK
        SETOUTS      DONE    PICKUPS     DONE
STATION  LDS MTY TONS TOTE FEET Y/N LDS MTY TONS  TOTE FEET Y/N
NO SETOUTS / PICKUPS HAVE BEEN REPORTED.....

Carrier's Exhibit A
67

CICS046  YDI                    01/08/14 01:16:30
                               PAGE 001

          TRAIN INVENTORY DISPLAY

TRAIN: Q41002 STATION: AN 587 IB/OB FROM STATION: O
Departure Date/Time: 01/02/14 23:24

CAR  EQUIPMENT  L/ CAR  BLOCK  SCH/RPT  PICKUP
SEQ  INIT NUMBER E TYPE  CODE  VERIFIED STATION
--- ---- ------ - ---- ---- -------- -------
001 CSXT  5290 L  D   ENG   VERIFIED
002 CSXT  7346 L  D   ENG   VERIFIED
003 CSXT  7728 L  D   ENG   VERIFIED
004 CSXT  6092 L  D   ENG   VERIFIED
005 EEC   1346 E  A   FLO  VERIFIED
006 RBOX 38302 E  B   FLO  VERIFIED
007 NS  411008 E  A   FLO  VERIFIED
008 CSXT 136089 E  A   FLO   VERIFIED
009 NYC 487479 E  H   FLO  VERIFIED
010 TOFX 887038 E  A   FLO   VERIFIED
011 FBOX 502750 E  A   FLO   VERIFIED
012 NYC 484238 E  H   FLO  VERIFIED
013 CSXT 485366 E  E   FLO  VERIFIED
014 FPAX 972038 L  T   FLO   VERIFIED
015 ACFX 38409 E  C   FLO  VERIFIED
016 CSXT 914571 E  M   FLO   VERIFIED
017 RBOX 20563 E  B   FLO  VERIFIED
018 RBOX 32619 E  B   FLO   VERIFIED
019 RBOX 40003 E  B   FLO   VERIFIED
020 ASPX  141 E  E   RMT   VERIFIED
021 ASPX  167 E  E   RMT   VERIFIED
022 CSXT 250666 E  C   RMT   VERIFIED
023 SHPX 206891 L  T   RMT   VERIFIED
024 KCS 606723 E  F   RMT   VERIFIED
025 PTLX 14682 E  C   RMT   VERIFIED
026 CSXT 260713 L  C   RMT   VERIFIED
027 ATGX 90115 L  C   RMT   VERIFIED
028 ASPX  170 E  E   RMT   VERIFIED
029 RBOX 34739 E  B   RMT   VERIFIED
030 YKR 20119 E  A   SEL   VERIFIED
031 GMRC 78175 E  A   SEL   VERIFIED
032 GMRC 23068 E  A   SEL   VERIFIED
033 CNA 409367 E  A   SEL   VERIFIED
034 CN  405896 E  A   SEL   VERIFIED
035 CNA 409180 E  A   SEL   VERIFIED
036 CN  407713 E  A   SEL   VERIFIED
037 CSXT 259517 L  C   SEL   VERIFIED
038 NOKL 822842 L  C   SEL   VERIFIED
039 CSXT 247609 L  C   SEL   VERIFIED

2       Parcel  M          Carrier's Exhibit A
                                      68

```
040 SMW 830114 L  C  SEL  VERIFIED
041 NYC 889474 L  C  SEL  VERIFIED
042 CSXT 260061 L  C  SEL  VERIFIED
043 CSXT 255184 L  C  SEL  VERIFIED
044 CSXT 260675 L  C  SEL  VERIFIED
045 CSXT 251020 L  C  SEL  VERIFIED
046 CSXT 250648 L  C  SEL  VERIFIED
047 CSXT 250618 L  C  SEL  VERIFIED
048 NOKL 832184 L  C  SEL  VERIFIED
049 SCL 242503 L  C  SEL  VERIFIED
050 CSXT 260803 L  C  SEL  VERIFIED
```

* PRINT CONTINUES *

-WBS- *A1  HDC

Carrier's Exhibit A
69

CICS046  YDI                    01/08/14  01:16:30
                               PAGE 002

              TRAIN INVENTORY DISPLAY

TRAIN: Q41002 STATION: AN 587 IB/OB FROM STATION: O
Departure Date/Time: 01/02/14 23:24

CAR  EQUIPMENT  L/ CAR  BLOCK  SCH/RPT  PICKUP
SEQ INIT NUMBER E TYPE  CODE   VERIFIED STATION
--- ---- ------ - ---- ----  -------- -------
051 CSXT 251669 L  C   SEL   VERIFIED
052 NAHX 466916 E  C   SEL   VERIFIED
053 TR   110085 E  A   SEL   VERIFIED
054 TILX 110366 L  T   SEL   VERIFIED
055 CBRY 2160   E  F   SEL   VERIFIED
056 PMRX 8753   L  C   SEL   VERIFIED
057 CRDX 14133  L  C   SEL   VERIFIED
058 INTX 23305  L  C   SEL   VERIFIED
059 WC   37464  E  F   SEL   VERIFIED
060 UCRY 873069 E  F   SEL   VERIFIED
061 TTPX 806176 L  F   SEL   VERIFIED
062 TTPX 80802  L  F   SEL   VERIFIED
063 MB   5238   L  B   SEL   VERIFIED
064 MB   5242   L  B   SEL   VERIFIED
065 LRS  9215   L  A   SEL   VERIFIED
066 MB   5010   L  A   SEL   VERIFIED
067 CSXE 48329  L  M   CAB   VERIFIED

4

Carrier's Exhibit A
70

CICS046  YDI                          01/08/14  01:16:30
                                      PAGE 004

            TRAIN INVENTORY DISPLAY

TRAIN: Q41002 STATION: AN 587 IB/OB FROM STATION: O
Departure Date/Time: 01/02/14 23:24

CAR   EQUIPMENT  L/ CAR  BLOCK  SCH/RPT  PICKUP
SEQ  INIT NUMBER E TYPE  CODE   VERIFIED STATION
---  ---- ------ - ---- ----   -------- -------
            Station Statistics

Station AN 587   Total    Pig  Auto  Tons  Length
         L  29 E  33          4692  3975

Carrier's Exhibit A
71

Employee   A

Page

```
          C S X   T R A N S P O R T A T I O N
                      CSXT SYSTEM
                  DECEMBER 27, 2013

        BULLETINS & NOTICES    SYSTEM BULLETIN      009

TO:          T&E CREWS AND ALL CONCERNED
SUBJECT:     NEW RULE BOOK, DV TT & BULLETINS/NOTICES
EFFECTIVE:   1330HRS, DECEMBER 27, 2013
```

ITEM 1 - SYSTEM BULLETIN CANCELED

   SYSTEM BULLETIN NUMBER 005, SUBJECT NEW CSX OPERATING RULE BOOK AND DV
   TTSI, EFFECTIVE 0200 HRS, DECEMBER 12, 2013 IS CANCELED AND REPLACED
   WITH THIS SYSTEM BULLETIN.

ITEM 2 - PURPOSE OF THIS SYSTEM BULLETIN

   A. THIS SYSTEM BULLETIN IS ISSUED TO NOTIFY EMPLOYEES OF EFFECTIVE TIME
      AND DATE OF THE NEW OPERATING RULE BOOK, DIVISION TIMETABLES AND
      SYSTEM/GENERAL BULLETINS AND NOTICES.

   B. IF YOU HAVE ANY QUESTIONS NOTIFY YOUR SUPERVISOR IMMEDIATELY.

ITEM 3 - NEW OPERATING RULE BOOK AND DIVISION TIMETABLES

   A. DUE TO WEATHER CONDITIONS AND RELATED ISSUES CONCERNING SHIPPING AND
      DISTRIBUTION, THE NEW OPERATING RULE BOOK AND DIVISION TIMETABLES,
      ARE IN EFFECT 0001 HOURS, WEDNESDAY, JANUARY 15, 2014.

   B. THE CURRENT OPERATING RULE BOOK EFFECTIVE JANUARY 1, 2010 AND ALL
      CURRENT DIVISION TIMETABLES WILL REMAIN IN EFFECT UNTIL 0001 HOURS
      WEDNESDAY, JANUARY 15, 2014.

ITEM 4 - SYSTEM/GENERAL BULLETINS AND NOTICES

   A. FOURTH QUARTER 2013 SYSTEM/GENERAL BULLETINS AND NOTICES -

      ALL FOURTH QUARTER 2013 SYSTEM/GENERAL REISSUE BULLETINS AND NOTICES
      AND ALL BULLETINS/NOTICES ISSUED DURING THE FOURTH QUARTER 2013
      REMAIN IN EFFECT UNTIL 0001 HOURS, WEDNESDAY, JANUARY 15, 2014.

B. FIRST QUARTER 2014 SYSTEM/GENERAL BULLETINS AND NOTICES -

   ALL FIRST QUARTER 2014 REISSUE BULLETINS/NOTICES ARE IN EFFECT 0001
   HOURS, WEDNESDAY, JANUARY 15, 2014.

   BULLETINS/NOTICES ISSUED AFTER 0001 HOURS, WEDNESDAY JANUARY 1, 2014
   WILL BE IN EFFECT AS IDENTIFIED ON THE BULLETIN/NOTICE.


ISSUED BY OPERATING RULES DEPARTMENT

From: **Michael Harvey** mmharvey711@gmail.com
Subject: 239613 JP Bennett
Date: January 20, 2014, 10:45 AM
To: **Robert Bush** Robert_Bush@CSX.com, **Lamar Boyette** Lamar_Boyette@csx.com, **Rodney Brown** Rodney_Brown@CSX.com

Gentlemen,

 Please accept this as request that I be furnished any and all copies of documentation and evidence that you intend to present on behalf of CSXT at the formal hearing of engineer JP Bennett 239613 on 1/23/14. I will need this information in sufficient time prior to the hearing so that I may review such with Mr.Bennett. This is in accordance with System agreement CSXT no. 1-023-07 article 30,paragraph B

Thanks

1331 Woods Bridge Rd
Jesup ,Ga 31545

M.M.Harvey
CSX Transportation
LC BLET 803
O-912-427-0420
C-912-270-3874



Carrier's Exhibit A
74



West Jacksonville Offices
3019 Warrington Street
Jacksonville, FL  32254

D. K. Jones
Division Manager
Jacksonville Division

February 21, 2014
File Number 266286 - Discipline

## EXPRESS MAIL EM 728445848 US

J P BENNETT
ENGINEER ID NO. 239613
44 BELLE GROVE CIR
RICHMOND HILL, GA   31324-3750

Reference the formal investigation conducted on January 23, 2014, commencing at 0925 hours, held in the Conference Room, 1401 Staley Avenue, Savannah, Georgia, in connection with information received that on January 3, 2014, at approximately 0005 hours, while working Q41002, in the vicinity of Milepost AN 584.4 and AN 584.5, you operated your train 14 mph over the maximum authorized speed, and all circumstances relating thereto.

As a result of the testimony and other evidence presented in this investigation, it has been determined that you did indeed violate CSX Transportation Operating Rule 40. For your violation of the above incident and due to the serious nature of the infraction, you are hereby dismissed in all capacities from the service of CSX Transportation effective immediately.

Additionally, you were informed in writing by letter dated January 13, 2014 that you were entitled to a hearing with respect to the revocation of your FRA Engineer Certificate and that such hearing would be consolidated with the formal investigation referenced above. Based on the facts as developed during the investigation, I find that your conduct not only violated the above-referenced rules, but also that a revocable event under the applicable subsection of 49 CFR part 240.117(e) occurred. Consequently, CSXT is revoking your FRA Engineer Certificate for thirty (30) days, from January 5, 2014 through February 3, 2014, pursuant to 49 CFR Part 240.117(g).

Arrange to return any company materials in your possession to the nearest CSX Location.

The importance of working safely and strict adherence to the operating rules cannot be emphasized too strongly.

D. K. Jones

Enclosure:  Transcript with exhibits (1)

/hml

cc:     DL Crew Management
        M. H. Harvey, Local Chairman- One (1) copy of transcript w/exhibits enclosed.
            EM 728445851 US

**Where Safety is First**

CARRIER'S EXHIBIT B

1



Labor Relations; J-455
6735 Southpoint Drive South
Jacksonville, FL 32216

**H. Joseph Garcia**
**Director Labor Relations**

April 28, 2014

Mr. Michael M. Harvey
BLET
Local Chairman Division – 803
1331 Woods Bridge Road
Jesup, GA 31545

Re:    J. P. Bennett - 239613
        CSXT File No. 266286
        LCAT File No. 2014-163289

Dear Mr. Harvey:

This refers to your appeal, dated March 10, 2014, appealing the Carrier's decision to assess dismissal to Engineer J. P. Bennett (239613) for his violation of CSX Transportation Operating Rules 40.  Below is the Carrier's response.

## STATEMENT OF CLAIM:

Claim of Engineer J.P. Bennett, ID# 239613 for full reinstatement to the service of CSXT as Locomotive Engineer.  Such reinstatement to include removal of all record of discipline administered by CSXT in this case from Engineer J.P.Bennett's  Personal Service Record, full pay for all lost time, (including hearing date), cumulative vacation and personal leave day rights undisturbed, seniority standing and progression unimpaired, all Health and Welfare benefits intact and unreduced, and full restoration of all other previously held rights and benefits thereto pertaining to Engineer J.P.Bennett's employment with CSX Transportation, Inc.

## CARRIER'S STATEMENT OF FACTS:

This case involves the appeal of dismissal assessed to Engineer J. P. Bennett (Claimant) for operating his train *"…14 mph over the maximum authorized speed…"*

On January 3, 2014, Claimant was working the Q41002 in the vicinity of milepost AN 584.4 and AN 584.5.  At approximately 0005 hours, Claimant and his Conductor allowed their train speed to operate 14 mph over the maximum authorized speed, a de-certifiable event.

As a result of the incident, by letter dated January 13, 2014, Claimant was instructed to attend a formal hearing on January 23, 2014, in connection with the aforementioned charge.  Due to the serious nature of the Rule infraction, and consistent with Company Policy, all crew members of the Q41002 were removed from covered service, pending the result of an investigation.  The hearing scheduled and held on January 23, 2014, with Claimant and his representative in attendance.  Based on the evidence and testimony presented during the hearing, the Carrier determined Claimant had violated CSXT Operating Rule 40.  The Claimant was apprised of the findings and dismissed for a major rule violation and his FRA Engineer Certificate was revoked for thirty (30) days.

**CARRIER'S POSITION:**

1.    ***The Claimant was afforded a fair and impartial investigation under the provisions of the Agreement.***

The transcript of the investigation clearly demonstrates that all of the Claimant's "*due process*" rights, as provided for under applicable rules of the Agreement, were fully protected and the hearing was conducted in a fair and impartial manner.  Claimant was given proper notice of the charges, sufficient time to prepare a defense, the opportunity to produce and examine evidence, and the opportunity to present and cross-examine witnesses.  Such handling was clearly in accordance with the procedural standards accepted in this industry.

The Organization did not take any exception to the charge or the investigation.  The Organization requested in their appeal for the Claimant to be returned to service due to his years of employment and his community service.

The Carrier has provided the Claimant a fair and impartial investigation in accordance with the collective bargaining agreement.

2.    ***Carrier has fulfilled its burden of producing substantial evidence of the Claimant's guilt.***

Carrier produced substantial, probative evidence that established Claimant's negligence in this matter and supports that Claimant violated CSXT Operating Rule 40 The applicable rules read in pertinent part, the following:

***Speed Rules 40***

*Train speeds must be maintained to the extent feasible consistent with safety and they must not be exceeded.  Train speeds may be authorized by the rules, special instructions, signal indications, dispatcher messages or other means.  When there is a difference in speeds, the lowest speed will govern.* (Emphasis added)

2

In this case, the evidence produced during the hearing and the testimony of Carrier Witness Robert Bush, Road Foreman of Engines (RFE) testified he received an ERAD notification of the Q41002 exceeding the speed **(Tr. p 7)**. The crew should have been operating at a temporary speed reduction, temporary slow order which was 25 mph ; however, the crew operated their train at 39 mph **(Tr. p 7)**. The crew was made aware of the temporary speed restriction through a dispatcher bulletin **(Tr. p 8)**.

The evidence presented during the investigation, including the ERAD report and the download of the locomotive, clearly demonstrates a violation of CSXT Rule 40. The evidence proves beyond a doubt that the train was operating in **excess** of **10 mph** over the 25 mph maximum authorized limit per the restricted speed zone

Claimant admitted to knowing about the Dispatchers Bulletin and having a job briefing **(Tr. p 36)**. Appellant testified he knew of the speed order and that applied the brake **(Tr. p 36)**. Appellant also testified he saw the actual temporary speed restrictions sign **(Tr. p 37)** but does not recall at what speed he was traveling in **(Tr. p 38)**. He did not dispute the Carrier's findings.

All of the testimony and corroborating evidence supports the Carrier's position that Claimant's guilt was established with substantial evidence. Consequently, the Carrier has met its burden of proof and the Organization is void of any probative evidence to the contrary. Lacking such evidence, the appeal must be denied.

### 3.  *The discipline assessed in this case was fully justified.*

The discipline was assessed in accordance with Carrier's long standing Individual Development and Personal Accountability Policy (IDPAP). The Rule infraction committed by Claimant is appropriately contained in Part III as a Major Offense (speeding), for which a single infraction, if proven guilty, can result in dismissal:

*PART III:* Major Offenses Warranting Removal From Service Prior to Hearing

> *Major Offenses are those that warrant removal from service pending a formal hearing and possible dismissal from service for a single occurrence if proven responsible. Examples of such offenses include: altercation, dishonesty, concealing material information or providing false material information about matters under investigation, theft, insubordination, Rule G, weapons on the property, excessive speeding (speed at or above FRA levels for decertification under 49 CFR Part 240), passing stop signals without authority, failure of stop tests using simulated obstruction devise or other similar operation tests, occupying track without authority, blue flag violations, major accidents, other acts of blatant disregard for the rights of*

CARRIER'S EXHIBIT C
3

*employees or the company, and <u>acts that cause harm to other persons or recklessly endanger the safety of employees or the public</u>.*

Excessive speeding on a locomotive recklessly endangers the safety of employees and the public.  Permitting a train to operate at excessive speed, is an egregious event, and should result in severe admonishment.

The Carrier instituted IDPAP in response to the large number of violations of these rules, violations that could potentially result in serious injury or death to its employees or the public.  Numerous Awards have upheld the Carrier's IDPAP Policy for major rule violations on all of its properties.  Furthermore, a single Part III infraction can garner discipline up to dismissal even if the violation represents the employee's first major rule infraction.  In <u>Award No. 4</u> of <u>Public Law Board No. 7263</u> (Wallin) the Board supported this position holding:

> *Given the content of the record, we must find that the Carrier's disciplinary decision is supported by substantial evidence.  Claimant's Rule violations are categorized to be a Major Offense under the Carrier's disciplinary policy.  The policy provides for dismissal upon finding of guilt for a single offense.*

> *Our further review of the on-property record does not reveal a proper basis for disturbing the Carrier's disciplinary decision.  Accordingly, the claim must be denied.*

Additional authority for the one and done principle is also found in <u>PLB 6936, Awards 2</u> and <u>5</u> (Goldstein); <u>PLB 6879, Award 40</u> (Ross) and <u>PLB 6957, Award 68</u> (Parker) and <u>PLB, 6957, Award 13</u> (Domzalski):

Furthermore, discipline should not be overturned or reduced unless the penalty was unduly harsh or mitigating circumstances are found to apply.  In the instant case, dismissal is within policy guidelines.  In <u>Award No. 36</u> of <u>Public Law Board No. 7040</u> (Wallin)), the Referee noted the Board is an appellate review body and does not possess the jurisdiction or authority to offer leniency which is in the sole preview of the Carrier:

> *It is well settled by many awards of Pubic Law Boards and the National Railroad Adjustment Board that the mission of this Board is a limited one of appellate review.  As a result, our role is essentially confined to reviewing the evidence to determine if the Carrier's disciplinary decision is supported by substantial evidence in the record developed on the property.  If such substantial evidence is present, the Carrier's decision must be generally accepted by us.  <u>This is so even though we may have a different disciplinary decision if that decision had been ours to make at the outset</u>.* (emphasis added)

The penalty of dismissal assessed Claimant was in accordance with IDPAP and cannot be considered harsh or arbitrary.  Carrier also took into consideration Claimant's

discipline record.  Moreover, employees who fail to heed the Carrier's Operating Rules imperil their relationship with their employer.   The action taken in correcting unsafe actions is intended to reform the behavior of such employees to ensure they remain with CSXT.

This is not Appellant's first Major offense when he went through a red signal.  In 2006, Claimant was offered a leniency reinstatement by the Division Manager. In addition, Appellant has numerous coaching and counseling and serious offenses on his disciplinary file.

In the instant case, Claimant failed to abide by Carrier's operating and safety standards and his excessive speeding is considered an egregious offense; therefore, the discipline imposed was warranted.  Therefore, the case at bar should be <u>denied.</u>

**<u>SUMMARY</u>**:

The Carrier has demonstrated that Claimant was afforded a fair and impartial investigation in accordance with the applicable Agreement.  Moreover, evidence and the testimony submitted at the hearing, established his guilt.  The discipline of a dismissal was justified in accordance with the revised IDPAP.   Under such circumstances, Claimant's dismissal was appropriate and the appeal is <u>denied</u> in its entirety.

Respectfully submitted,

H. Joseph Garcia
Director Labor Relations

CARRIER'S EXHIBIT C
5

March 10, 2014

**Certified Mail**

LABOR RELATIONS

MAR 3 1 2014

Director—CSXT Labor Relations
6737 Southpoint Drive South  J-455
Jacksonville, FL 32216-6177

        RE:    Discipline of Engineer:  J.P. Bennett

                 CSXT ID# 239613

                 CSXT Discipline File #266286-Discipline

Dear Mr. Garcia,

      This to you in reference to the above captioned item and formal investigation held on January 23 ,2014 at Conference Room 1401 Staley Avenue, Savannah, Georgia which resulted in the dismissal of Engineer J.P.Bennett for alleged violation of CSX Transportation Operating Rule 40.

      Be advised that said assessment of discipline in unacceptable to this Committee. Accordingly; **appeal  is made** as per Article 30, Paragraph F. 1. of the current SSA.

**Employee's Statement of Claim**

     Claim of Engineer J.P. Bennett, ID# 239613 for full reinstatement to the service of CSXT as Locomotive Engineer.  Such reinstatement to include removal of all record of discipline administered by CSXT in this case from Engineer J.P.Bennett's  Personal Service Record, full pay for all lost time, (including hearing date), cumulative vacation and personal leave day rights undisturbed, seniority standing and progression unimpaired, all Health and Welfare benefits intact and unreduced, and full restoration of all other previously held rights and benefits thereto pertaining to Engineer J.P.Bennett's employment with CSX Transportation, Inc.

**Local Committee's Position**

     This Committee feels that this incident was a minor oversight and a professional judgment call on Mr.Bennett's behalf.  The Committee feels this was not an act of gross negligence.  Also, to point out, Mr. Bennett donates a major part of his free time to serving the community.  He has served in the mission fields of Haiti and has worked diligently while contributing countless hours to the underprivileged that CSX inclusion counsel serves.  He has also served CSX with 15 years injury free. Given his tenure of service with this company, if this dismissal holds true, this would be a devastating change of life for Mr. Bennett and his family.  We ask that the CSX handle this by returning  Mr. Bennett back to service on a lenience basis.

CARRIER'S EXHIBIT C

Mr. H.Joseph Garcia

March 10, 2014

 

Accordingly,and as per the foregoing, this Committee requests that Engineer J.P.Bennett be reinstated in accordance with the Statement of Claim herein. Please advise me of your decision in this matter at your earliest opportunity.

Sincerely,

Michael M. Harvey

Local Chairman BLET Division 803



$4.28    US POSTAGE
FIRST CLASS
Mar 28 2014
Mailed from ZIP 31545



endicia.com

071V00557474

## USPS FIRST CLASS

BLET Div 803
Michael Harvey
1331 WOODS BRIDGE RD
JESUP GA 31545

Shipped using PostalMate®
Pkg:66483

SHIP CSXT Labor Relations
TO: H Joseph Garcia
    6737 SOUTHPOINT DR S
    J-455
    JACKSONVILLE FL 32216-6177

LABOR RELATIONS
MAR 3 1 2014



### USPS CERTIFIED MAIL

9407 1102 0083 0205 9731 39



SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.

CARRIER'S EXHIBIT C
8

## Employee History

### Employee Information

| | | | | | |
|---|---|---|---|---|---|
| **Employee:** | John P. Bennett | **ID:** | 239613 | **Occupation:** | EN |
| **Address:** | 44 Belle Grove Cir | **Home Terminal:** | A 496 | **Union/Agreement:** | BLE / SC |
| | Richmond Hill, GA 31324-3750 | **Emp Title:** | Engineer | | |
| **Hire Date:** | 09/14/1998 | **Emp Mgr:** | Brown,Rodney E | **Medical Availability** | Radio S/N |
| | | | | **Medical Qualification** | |

### IDPAP Incidents

| | | | | | | |
|---|---|---|---|---|---|---|
| **Incident Date** 01/03/2014 | **First Knowledge:** | 01/05/2014 | **Incident Type:** | Speed - 10 MPH Over (40) | **Job/Payroll No:** | Q41002 |
| | **Notice Mailed:** | 01/13/2014 | **Doc. Type:** | Charge Major / Decert | **Service Category:** | 15-20 yrs |
| | **Hearing Date:** | 01/23/2014 | **Disp. Result:** | Dismissed | **Ref. Mgr:** | R. R. Bush |
| **File: 266286** | **Discipline Letter Mailed:** | 02/21/2014 | **Waiver:** | | **Prepared By:** | MDM |
| | **Decertification, if found guilty:** | 30 Days | **Date Surrendered:** | 01/05/2014 | **Date Returned:** | 02/04/2014 |
| Employee Details | Employee flagged by ERAD for maximum speed exceeded when he allowed his train speed to reach 39 mph after entering a 25 mph temporary speed restriction between mileposts AN 584.4 and AN 584.5. This is 14 mph over the maximum authorized speed at this location. | | | | | |
| | **OCRB Ruling:** | | | **Last Date to File:** 02/21/2014 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Incident Date** 11/09/2013 | **First Knowledge:** | 11/10/2013 | **Incident Type:** | OTest Failure | **Job/Payroll No:** | A77408 |
| | **Notice Mailed:** | | **Doc. Type:** | ICI | **Service Category:** | 15-20 yrs |
| | **Hearing Date:** | | **Disp. Result:** | ICI | **Ref. Mgr:** | T. M. DeAngelo |
| **File: 264077** | **Discipline Letter Mailed** | | **Waiver:** | N | **Prepared By:** | |
| | While working A77408 employee failed to properly report automatic grade crossing malfunction at Glendale drive located at milepost AOB 540.4 | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Incident Date** 10/01/2013 | **First Knowledge:** | 10/01/2013 | **Incident Type:** | HF Derail/Damage | **Job/Payroll No:** | Y25001 |
| | **Notice Mailed:** | 10/07/2013 | **Doc. Type:** | Charge Sr2 | **Service Category:** | 15-20 yrs |
| | **Hearing Date:** | | **Disp. Result:** | 15 Days AS | **Ref. Mgr:** | J. L. Mosley |
| **File: 261594** | **Discipline Letter Mailed:** | | **Waiver:** | | **Prepared By:** | MDM |
| | Engineer Bennett operated through the A01 switch that was lined against him. Upon making a reverse movement four cars derailed. | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Incident Date** 05/29/2013 | **First Knowledge:** | 05/29/2013 | **Incident Type:** | OTest Failure | **Job/Payroll No:** | K79028 |
| | **Notice Mailed:** | | **Doc. Type:** | ICI | **Service Category:** | 10-15 yrs |
| | **Hearing Date:** | | **Disp. Result:** | ICI | **Ref. Mgr:** | R. R. Bush |
| **File: 255376** | **Discipline Letter Mailed:** | | **Waiver:** | N | **Prepared By:** | |
| | Employee failed to sound the proper horn sequence when approaching a standing train and approaching public highway grade crossings. | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Incident Date** 02/17/2013 | **First Knowledge:** | 02/17/2013 | **Incident Type:** | HF Run Thru Swt/No Derail | **Job/Payroll No:** | Q12516 |
| | **Notice Mailed:** | 02/20/2013 | **Doc. Type:** | Charge SR1 No Time Out Option | **Service Category:** | 10-15 yrs |
| | **Hearing Date:** | 02/27/2013 | **Disp. Result:** | 5 Days AS | **Ref. Mgr:** | J. L. Mosley |
| **File: 249866** | **Discipline Letter Mailed:** | | **Waiver:** | | **Prepared By:** | ALE |
| | Engineer Bennett failed to stop short of the North End switch of the North Crossover at Savannah Yard while swinging out of track S26, resulting in a run-through switch. | | | | | |

**Removed - 12/11/2012 - Removed from consideration due to Policy removal provisions**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Incident Date** 06/14/2012 | **First Knowledge:** | 06/18/2012 | **Incident Type:** | Other | **Job/Payroll No:** | Q60713 |
| | **Notice Mailed:** | | **Doc. Type:** | ICI | **Service Category:** | 10-15 yrs |
| | **Hearing Date:** | | **Disp. Result:** | ICI | **Ref. Mgr:** | R. R. Bush |
| **File: 234826** | **Discipline Letter Mailed:** | | **Waiver:** | | **Prepared By:** | |
| | Employee was flagged by ERAD for throttle stripping when he throttled up 3 positions then throttled down 4 positions. ERAD also flagged employee for having two locomotives on line when his train's tonnage shows only one locomotive was needed. | | | | | |

**Removed - 06/09/2011 - Removed from consideration due to Policy removal provisions**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Incident Date** 12/10/2010 | **First Knowledge:** | 12/11/2010 | **Incident Type:** | Other Incident | **Job/Payroll No:** | Q49210 |
| | **Notice Mailed:** | | **Doc. Type:** | ICI | **Service Category:** | 10-15 yrs |
| | **Hearing Date:** | | **Disp. Result:** | ICI | **Ref. Mgr:** | J. L. Mosley |
| **File: 201236** | **Discipline Letter Mailed:** | | **Waiver:** | | **Prepared By:** | |
| | Engineer Bennet failed to ensure the Southover Yardmaster was informed of the clearance implicated shipment in their train prior to entering Southover Yard | | | | | |

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Incident Date** 05/06/2008 | **First Knowledge:** | 05/11/2008 | **Incident Type:** | Other Incident | **Job/Payroll No:** | X17606 |
| | **Notice Mailed:** | | **Doc. Type:** | ICI | **Service Category:** | 5-10 yrs |
| | **Hearing Date:** | | **Disp. Result:** | ICI | **Ref. Mgr:** | E. L. Boyette |
| **File: 152829** | **Discipline Letter Mailed:** | | **Waiver:** | | **Prepared By:** | |
| | Flagged by ERAD for Power Braking | | | | | |

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Incident Date** 03/23/2006 | **First Knowledge:** | 03/23/2006 | **Incident Type:** | Other Incident | **Job/Payroll No:** | Q60122 |
| | **Notice Mailed:** | 03/30/2006 | **Doc. Type:** | Charge Major / Decert | **Service Category:** | 5-10 yrs |
| | **Hearing Date:** | 04/05/2006 | **Disp. Result:** | Reinstatement | **Ref. Mgr:** | R. K. Regulus |
| **File: 102387** | **Discipline Letter Mailed:** | | **Waiver:** | N | **Prepared By:** | WTB |
| | q60122 crew got by red signal | | | | | |
| | **Arbitration Appeal:** | | | | | |
| | **Date of Appeal:** | | **Final Result:** Withdrawn. | | **Settlement Requirement:** Leniency Reinstatement | |
| | **Arb. Board:** | | **Docket #:** | | **Award #:** | |
| | **Note:** | | | | | |

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Incident Date** 12/16/2005 | **First Knowledge:** | 12/16/2005 | **Incident Type:** | OTest Failure | **Job/Payroll No:** | E10913 |
| | **Notice Mailed:** | 12/22/2005 | **Doc. Type:** | Charge | **Service Category:** | 5-10 yrs |
| | **Hearing Date:** | 01/10/2006 | **Disp. Result:** | 5 Days Overhead | **Ref. Mgr:** | C. N. Cody |
| **File: 96589** | **Discipline Letter Mailed:** | | **Waiver:** | | **Prepared By:** | WTB |
| | EMPLOYEE FAILED TO MAINTAIN THREE POINT OF CONTACT WHILE GETTING OFF HIS ENGINE WITH HIS GRIP AND COFFEE CUP AND FAILED TO USE BUDDY STSTEM WHILE GETTING OFF ENGINE. | | | | | |

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Incident Date** | **First Knowledge:** | 04/24/2005 | **Incident Type:** | HF Derail/Damage | **Job/Payroll No:** | N01423 |

CARRIER'S EXHIBIT D

1

| | First Knowledge: | 04/24/2005 | Doc. Type: | Charge | Service Category: | 5-10 yrs |
|---|---|---|---|---|---|---|
| | Notice Mailed: | 05/02/2005 | | | | J. H. Barton |
| | Hearing Date: | 05/17/2005 | Disp. Result: | 5 Days Overhead | Ref. Mgr: | |
| File: 73370 | Discipline Letter Mailed: | | Waiver: | Y | Prepared By: | FHS |

WHILE OPERATING TRAIN N01423 AT THE NORTH END OF THE CONNECTION TRACK AT FAIRFAX,S.C.RUNNING AT RESTRICTED SPEED. ENGINEER BENNETT FAILED TO SEE THAT THE POWER OPERATED SWITCH AT MP AMH 472 , AT FAIRFAX WAS LINED AGAINST HIS MOVEMENT. TRAIN N01423 COULD NOT RESULTING IN A RUN THROUGH SWITCH.

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| Incident Date | First Knowledge: | 02/23/2005 | Incident Type: | OTest Failure | Job/Payroll No: | n11623 |
|---|---|---|---|---|---|---|
| 02/23/2005 | Notice Mailed: | 03/03/2005 | Doc. Type: | IRC | Service Category: | 5-10 yrs |
| | Hearing Date: | 03/09/2005 | Disp. Result: | IRC | Ref. Mgr: | T. E. McCorvey |
| File: 71044 | Discipline Letter Mailed: | | Waiver: | N | Prepared By: | MLY |

Fail to properly blow crossing according to rule 14 (l) in operating rules.

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| Incident Date | First Knowledge: | 01/12/2005 | Incident Type: | OTest Failure | Job/Payroll No: | N10010 |
|---|---|---|---|---|---|---|
| 01/12/2005 | Notice Mailed: | 01/13/2005 | Doc. Type: | ICI | Service Category: | 5-10 yrs |
| | Hearing Date: | | Disp. Result: | ICI | Ref. Mgr: | W. M. Bacon |
| File: 68863 | Discipline Letter Mailed: | | Waiver: | N | Prepared By: | DAP |

Employee did not have proper bulletins.

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| Incident Date | First Knowledge: | 01/12/2005 | Incident Type: | OTest Failure | Job/Payroll No: | N10010 |
|---|---|---|---|---|---|---|
| 01/12/2005 | Notice Mailed: | 01/13/2005 | Doc. Type: | ICI | Service Category: | 5-10 yrs |
| | Hearing Date: | | Disp. Result: | ICI | Ref. Mgr: | W. M. Bacon |
| File: 68861 | Discipline Letter Mailed: | | Waiver: | N | Prepared By: | DAP |

Employee failed to condition brakes while stopped in siding.

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| Incident Date | First Knowledge: | 05/27/2003 | Incident Type: | OTest Failure | Job/Payroll No: | Q60327 |
|---|---|---|---|---|---|---|
| 05/27/2003 | Notice Mailed: | 05/29/2003 | Doc. Type: | ICI | Service Category: | 2-5 yrs |
| | Hearing Date: | | Disp. Result: | ICI | Ref. Mgr: | BRANNEN, C. S. |
| File: 16990 | Discipline Letter Mailed: | | Waiver: | N | Prepared By: | |

DID NOT FILL OUT LOCOMOTIVE INSPECTION WORK REPORT.

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| Incident Date | First Knowledge: | 11/29/2000 | Incident Type: | OTest Failure | Job/Payroll No: | Q12628 |
|---|---|---|---|---|---|---|
| 11/29/2000 | Notice Mailed: | | Doc. Type: | | Service Category: | 2-5 yrs |
| | Hearing Date: | 12/07/2000 | Disp. Result: | 10 DAYS OH | Ref. Mgr: | RITCH, R. F. |
| File: 3595 | Discipline Letter Mailed: | | Waiver: | N | Prepared By: | |

you failed to tie handbrakes on cars when left unattended

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| Incident Date | First Knowledge: | 11/14/2000 | Incident Type: | OTest Failure | Job/Payroll No: | Q60914 |
|---|---|---|---|---|---|---|
| 11/14/2000 | Notice Mailed: | | Doc. Type: | | Service Category: | 2-5 yrs |
| | Hearing Date: | | Disp. Result: | ICI | Ref. Mgr: | BACON, W. M. |
| File: 3516 | Discipline Letter Mailed: | | Waiver: | N | Prepared By: | |

at 1730 hours, you reportedly failed to inspect train while stopped

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| Incident Date | First Knowledge: | 02/21/2000 | Incident Type: | OTest Failure | Job/Payroll No: | NONE |
|---|---|---|---|---|---|---|
| 02/21/2000 | Notice Mailed: | | Doc. Type: | | Service Category: | 0-2 yrs |
| | Hearing Date: | 02/21/2000 | Disp. Result: | IRC | Ref. Mgr: | HW HAGA |
| File: 567 | Discipline Letter Mailed: | | Waiver: | N | Prepared By: | |

no bulletin

## Decertifications

View Legacy Decertifications

| | Incident Date: | 01/03/2014 | Cert Status: | EN | Incident Group: | Overspeed | Incident Type: | Speed - 10 MPH Over (40) |
|---|---|---|---|---|---|---|---|---|
| | | | Decertification, if found guilty: | 30 Days | Date Surrendered: | 01/05/2014 | | |
| | | | Discipline Period: | | Discipline Start: | | Date Returned: | 02/04/2014 |
| | Investigation Date: | 01/23/2014 | Division: | Jacksonville | | | Discipline End: | |
| | | | | | | | Employee Details | Incident Details |

## Absenteeism

| Incident Date | First Knowledge: | 05/21/2013 | Incident Type: | Absenteeism/Availability | Job/Payroll No: | None |
|---|---|---|---|---|---|---|
| 05/19/2013 | Notice Mailed: | 05/28/2013 | Doc. Type: | Absenteeism Step2 | Service Category: | 15-20 yrs |
| | Hearing Date: | 06/04/2013 | Disp. Result: | 3 Days AS | Ref. Mgr: | R. W. Coyle |
| File: 254723 | Discipline Letter Mailed: | 06/03/2013 | Waiver: | Y | Prepared By: | HML |

MINIMUM AVAILABILITY 2 SICK (Step 2), Timeframe: 04/22/13 - 05/19/13

| Incident Date | First Knowledge: | 11/29/2012 | Incident Type: | Absenteeism/Availability | Job/Payroll No: | None |
|---|---|---|---|---|---|---|
| 11/25/2012 | Notice Mailed: | 12/03/2012 | Doc. Type: | Absenteeism Step1 | Service Category: | 10-15 yrs |
| | Hearing Date: | 12/11/2012 | Disp. Result: | 2 Days Overhead | Ref. Mgr: | D. B. Toth |
| File: 245506 | Discipline Letter Mailed: | | Waiver: | Y | Prepared By: | ALE |

MINIMUM AVAILABILITY 2 SICK (Step 1), Timeframe: 10/29/12 - 11/25/12

**Removed - 06/29/2012 - Removed from consideration due to Crew Policy removal provisions**

| Incident Date | First Knowledge: | 11/11/2011 | Incident Type: | Absenteeism/Availability | Job/Payroll No: | None |
|---|---|---|---|---|---|---|
| 11/06/2011 | Notice Mailed: | 11/15/2011 | Doc. Type: | Absenteeism Step1 | Service Category: | 10-15 yrs |
| | Hearing Date: | 12/06/2011 | Disp. Result: | 2 Days Overhead | Ref. Mgr: | D. B. Toth |
| File: 220480 | Discipline Letter Mailed: | 11/30/2011 | Waiver: | Y | Prepared By: | BLH |

MINIMUM AVAILABILITY 2 SICK (Step 1), Timeframe: 10/10/11 - 11/06/11

**Removed - 09/28/2011 - Removed from consideration due to Crew Policy removal provisions**

| Incident Date | First Knowledge: | 12/10/2010 | Incident Type: | Absenteeism/Missed | Job/Payroll No: | Q10204 |
|---|---|---|---|---|---|---|
| 12/04/2010 | Notice Mailed: | 12/10/2010 | Doc. Type: | Absenteeism Step1 | Service Category: | 10-15 yrs |
| | Hearing Date: | 01/05/2011 | Disp. Result: | 2 Days Overhead | Ref. Mgr: | R. W. Coyle |
| File: 201017 | Discipline Letter Mailed: | 01/04/2011 | Waiver: | Y | Prepared By: | FHS |

MarkOff on Call (Step 1), Avg Hrs: 0

CARRIER'S EXHIBIT D

2

| Incident Date | First Knowledge: | 09/15/2010 | Incident Type: | Absenteeism/Availability | Job/Payroll No: | NONE |
| 09/12/2010 | Notice Mailed: | | Doc. Type: | Coaching and Counseling 2 | Service Category: | 10-15 yrs |
| | Hearing Date: | | Disp. Result: | Coach and Counseling | Ref. Mgr: | R. W. Coyle |
| File: 195973 | Discipline Letter Mailed: | | Waiver: | | Prepared By: | |
| | MINIMUM AVAILABILITY, Timeframe: 08/16/10 - 09/12/10 | | | | | |

| Incident Date | First Knowledge: | 12/05/2009 | Incident Type: | Late to Report (LTR) | Job/Payroll No: | Y25002 |
| 12/02/2009 | Notice Mailed: | | Doc. Type: | Coaching and Counseling 1 | Service Category: | 10-15 yrs |
| | Hearing Date: | | Disp. Result: | Coach and Counseling | Ref. Mgr: | R. W. Coyle |
| File: 181674 | Discipline Letter Mailed: | | Waiver: | | Prepared By: | |
| | LATE TO REPORT | | | | | |

| Incident Date | First Knowledge: | 11/24/2009 | Incident Type: | Absenteeism/Missed | Job/Payroll No: | K96920R |
| 11/21/2009 | Notice Mailed: | | Doc. Type: | Coaching and Counseling 1 | Service Category: | 10-15 yrs |
| | Hearing Date: | | Disp. Result: | Coach and Counseling | Ref. Mgr: | R. W. Coyle |
| File: 181223 | Discipline Letter Mailed: | | Waiver: | | Prepared By: | |
| | Miss Call, Avg Hrs: 0 | | | | | |

| Incident Date | First Knowledge: | 08/29/2004 | Incident Type: | Absenteeism/Availability | Job/Payroll No: | NONE |
| 08/29/2004 | Notice Mailed: | | Doc. Type: | Coaching and Counseling 2 | Service Category: | 5-10 yrs |
| | Hearing Date: | | Disp. Result: | Coach and Counseling | Ref. Mgr: | L. A. Ballentine |
| File: 81865 | Discipline Letter Mailed: | | Waiver: | | Prepared By: | |
| | Pattern Layoff, Timeframe: 7/10/04-8/29/04, Avg Hrs: 30, Total Days: 4 | | | | | |

| Incident Date | First Knowledge: | 08/08/2004 | Incident Type: | Absenteeism/Availability | Job/Payroll No: | NONE |
| 08/08/2004 | Notice Mailed: | | Doc. Type: | Coaching and Counseling 1 | Service Category: | 5-10 yrs |
| | Hearing Date: | | Disp. Result: | Coach and Counseling | Ref. Mgr: | L. A. Ballentine |
| File: 81523 | Discipline Letter Mailed: | | Waiver: | | Prepared By: | |
| | Pattern Layoff, Timeframe: 6/19/04-8/8/04, Avg Hrs: 35, Total Days: 6 | | | | | |

| Incident Date | First Knowledge: | 11/02/2003 | Incident Type: | Absenteeism/Availability | Job/Payroll No: | NONE |
| 11/02/2003 | Notice Mailed: | | Doc. Type: | Coaching and Counseling 2 | Service Category: | 5-10 yrs |
| | Hearing Date: | | Disp. Result: | Coach and Counseling | Ref. Mgr: | L. A. Ballentine |
| File: 64630 | Discipline Letter Mailed: | | Waiver: | | Prepared By: | |
| | Pattern Layoff, Timeframe: 9/8/03 - 11/2/03, Avg Hrs: 40, Total Days: 5 out 16 | | | | | |

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| Incident Date | First Knowledge: | 11/02/2003 | Incident Type: | Absenteeism/Availability | Job/Payroll No: | NONE |
| 11/02/2003 | Notice Mailed: | 11/06/2003 | Doc. Type: | Coaching and Counseling 2 | Service Category: | 5-10 yrs |
| | Hearing Date: | | Disp. Result: | Coach and Counseling | Ref. Mgr: | B. L. Hradil |
| File: 19523 | Discipline Letter Mailed: | | Waiver: | N | Prepared By: | BLH |
| | Employee Bennett was marked off sick on 5 of the past 16 weekend days - Saturdays & Sundays between September 8 and November 2, 2003. In this 8 week period employee Bennett worked an average of 40 hrs per week (did not count the Critical Incident marko | | | | | |

**Removed - 01/01/2012 - Removed from consideration due to Policy 3 year rolling period**

| Incident Date | First Knowledge: | 06/12/2000 | Incident Type: | Absenteeism | Job/Payroll No: | N/A |
| 06/12/2000 | Notice Mailed: | | Doc. Type: | | Service Category: | 0-2 yrs |
| | Hearing Date: | 06/22/2000 | Disp. Result: | 10 DAYS OH | Ref. Mgr: | DE BENTON |
| File: 1124 | Discipline Letter Mailed: | | Waiver: | N | Prepared By: | |
| | excessive absenteeism | | | | | |

CARRIER'S EXHIBIT D

3

PUBLIC LAW BOARD NO. 4643

Award No. 42

Docket No. 42
CSX File No. 1-(90449)
(26-13085)

Parties    Brotherhood of Locomotive Engineers
to         and
Dispute    CSX Transportation, Inc.
           (Formerly the Chesapeake and Ohio Railway Company)

Statement
of Claim: Claim of Engineer N. R. Brandon, ID No. 402728, Peninsula
          Seniority District who was assessed sixty (60) days actual
          suspension as a result of the conclusions and discipline
          assessed in Board of Inquiry No. 14095, held at Richmond,
          Virginia, on March 16, 1990, wherein the Claimant was
          charged with responsibility in connection with
          responsibility in connection with Train E62907 passing a
          signal displaying stop indication at the west end of double
          track, MP 49.1, Diano, VA, on March 8, 1990, at or about
          0525 in violation of Operating Rules 234 and 348.

Findings:       The Board has jurisdiction of this case by reason of
                the parties Agreement establishing this Board therefor.

                Claimant, the Engineer in this case, arrived at Newport
          News with a light engine from Richmond, VA. After taking an
          hour's rest he returned therefrom with a train load of empty
          coal cars on a trip to Richmond.

                Prior to arriving at     Diano, the train received a
          signal indication at Mile Post 42, Light foot, which changed
          from stop to clear. At Mile Post 46, the next signal, they
          received an approach signal which indication meant that they
          must approach the next signal prepared to stop. The next
          signal was located at Diano (MP 49.1), the end of the double
          track territory. The signal indication at Diano Mile Post
          49.1 was red (stop). The train drifted slowly up to the
          signal, about 2 to 3 miles MPH, when about 15 car lengths
          away, the Engineer dozed off. The engine went through the
          switch onto the single track about two car lengths. The
          Claimant stopped the train.

                As a result of this incident, Board of Inquiry No.
          14095 was created. The Claimant was notified to attend a
          formal investigation on the charge of:

CARRIER'S EXHIBIT E

"Passing a signal which was displaying stop indication on No. 2 track, west end double track, Mile Post 49.1 Diano, Virginia."

The Carrier concluded therefrom that the Claimant was culpable. He received a discipline of 60 days suspension which is here appealed.

Claimant was accorded the due process to which entitled under Rule 71 - Discipline.

There was sufficient evidence adduced, including the admissions of the Claimant, to support the conclusions of culpability. Once an admission of guilt is made the need for further review is not necessitated.

The discipline assessed, in the circumstances, was reasonable. This claim will be denied.

Award:    Claim denied.


W. C. Keppen, Employee Member          Patricia A. Madden, Carrier Member


Arthur T. Van Wart, Chairman
and Neutral Member


Issued   October 28, 1992.

CARRIER'S EXHIBIT E

2

Form 1          NATIONAL RAILROAD ADJUSTMENT BOARD
                          FIRST DIVISION

Award No. 26753
Docket No. 46858
09-1-NRAB-00001-080179

     The First Division consisted of the regular members and in addition Referee Jacalyn J. Zimmerman when award was rendered.

(Brotherhood of Locomotive Engineers and Trainmen
PARTIES TO DISPUTE:   (
(Union Pacific Railroad Company/Western Lines

STATEMENT OF CLAIM:

     "The claim of Engineer E. A. Fairley for reinstatement to the service of the company with full reinstatement and all other employment rights restored, and that she be compensated for all time lost in connection with Claimant's assessment of Upgrade Level 5, Permanent Dismissal on December 18, 2006.  Further, Claimant's annual vacation rights should be restored, and she should be compensated accordingly."

FINDINGS:

     The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

     The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

     This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

     Parties to said dispute were given due notice of hearing thereon.

     The facts of this case are not in dispute.  On November 20, 2006, Claimant E. A. Fairley was working as an Instructor Engineer, supervising a Student Engineer who was operating the locomotive.  The crew was notified of an unforeseen speed restriction to 10 miles per hour at Milepost 528.6.  The Student Engineer, not

CARRIER'S EXHIBIT E

3

Form 1                                                    Award No. 26753
Page 2                                                    Docket No.  46858
                                                          09-1-NRAB-00001-080179

familiar with the territory, questioned where that milepost was located, and the
Claimant replied that it was at Kaiser, which was correct.  However, the Conductor
contradicted her and stated, incorrectly, that it was at Millikan Avenue, and the
Claimant allowed the Student Engineer to proceed.   At the Investigation, the
Claimant acknowledged that she had acquiesced in the Conductor's instruction and
the train entered the restricted area at 31 miles per hour.    Following the
Investigation, the Carrier found the Claimant guilty of violating General Code of
Operating Rule 6.31, which provides that Conductors and Engineers are jointly
responsible for knowing and not exceeding the maximum authorized speed for the
train, and dismissed her from service.  The Claimant's Engineer Certificate was also
revoked for a period of six months.

       We carefully reviewed the record in its entirety, and find that substantial
evidence supports the Carrier's determination that discipline should be imposed.
The Claimant admitted that she was supervising the Student Engineer's operation
of the train, and that the train entered a speed restriction at an excessive speed.  She
also acknowledged that she was aware that the Conductor was in error as to the
location of the restriction, but she did not take the necessary steps to correct the
error.  It is well established that such an admission satisfies the Carrier's burden of
proof.  Therefore, the Claimant's guilt has been proven.

       However, without minimizing the serious nature of the Claimant's conduct,
and recognizing the Carrier's need to enforce the critical Safety Rules at issue
herein, we find, under the particular circumstances of this case and in light of the
mitigating factors pointed out by the Organization, that the penalty of dismissal is
too harsh.  We therefore order the Claimant reinstated without backpay on a last
chance basis.

## AWARD

       Claim sustained in accordance with the Findings.

## ORDER

       This Board, after consideration of the dispute identified above, hereby orders
that an award favorable to the Claimant(s) be made.  The Carrier is ordered to make

CARRIER'S EXHIBIT E

4

Form 1                                                    Award No. 26753
Page 3                                                    Docket No.  46858
                                                    09-1-NRAB-00001-080179

the Award effective on or before 30 days following the postmark date the Award is
transmitted to the parties.

<div align="center">

NATIONAL RAILROAD ADJUSTMENT BOARD
By Order of First Division

</div>

Dated at Chicago, Illinois, this 5th day of February 2009.

CARRIER'S EXHIBIT E

5

## Individual Development & Personal Accountability Policy for Operating Craft Teammates including Train, Engine and Yardmaster Employees - Revised 7/7/08

### Purpose

The professional development and well being of all contract employees is a critical element in CSXT's continued success. The vast majority of employees do their jobs in a professional manner, day in and day out. All contract employees are valued members of the CSXT team and must be treated with respect and fairness in accordance with labor agreements.

This policy is designed to provide everyone an opportunity to improve and grow through a measured, open, and just process. The Company's rules must be adhered to by all employees if we are to avoid injuries, deaths, and substantial financial losses. Violations of Company rules must therefore be addressed in an appropriate and effective manner.

### Responsibilities

All CSXT employees are expected to be safe, conscientious, and dependable; to comply with rules; and display a positive attitude toward teamwork and Company objectives.

CSXT intends to continue to provide a safe work environment in which all employees can experience meaningful work and contribute to the success of the team. Managers must provide fair and consistent treatment to all employees under their charge, using alternatives to formal discipline wherever appropriate.

### General Guidelines

Incidents that are considered minor deviations will be subject to handling in accordance with procedures described in Part I of this policy.

Incidents of a more serious nature will be subject to handling prescribed in Parts II and III of this policy. Examples listed in Parts II and III are illustrative only, and not intended to limit appropriate handling for other serious offenses that may warrant corrective or disciplinary action, including dismissal.

### Part I: Minor Offenses

Minor offenses are defined as rule violations that do not result in derailment or damages to equipment and that are not otherwise identified as "Serious" or "Major" in Part II or III of this policy.

Managers are encouraged to utilize informal corrective instruction based upon individual circumstances. At minimum, the first two minor offenses committed by an employee in a three-year period will be handled with informal corrective instruction.

The main concern is with repetitive behavior. Repeated violations of the rules may require more focused intervention with each succeeding offense.

For the third minor offense committed in a three-year period, an employee will elect between the following two options:

- **Option A**: The employee will be offered the opportunity to participate in the "Incident review Committee" (IRC) process. The IRC is comprised of fellow craft employees selected by the appropriate Local Chairman. Corrective intervention will be determined solely by the IRC. The IRC will develop the root cause for the problem and prescribe appropriate corrective follow up. The only record maintained will be a note that the individual was referred to IRC.
- **Option B**: Customary handling under the Railway Labor Act and applicable collective bargaining agreement.

For the fourth minor offense in a three-year period, a formal hearing will be conducted under the appropriate collective bargaining agreement and discipline of up to ten days suspension will be assessed if the employee is found responsible. The fifth minor offense will result in up to 30 days discipline if the employee is found responsible in a hearing and the sixth minor offense could result in dismissal.

Employees that work one hundred eighty days (180) without a minor offense will have one minor offense removed from consideration when determining the application of the policy.

CARRIER'S EXHIBIT F
1

**Part II: Serious Offenses**

This part of the policy describes the corrective action prescribed for a serious offense. A single serious offense will not be considered sufficient to warrant dismissal. However, suspension and/or retraining may be appropriate depending upon circumstances. Subsequent serious offenses within a three year period will be handled progressively.

If an employee commits three serious offenses within a period of three years, the employee may be subject to dismissal. The employee's entire record will be taken into consideration when assessing discipline.

Serious Offenses include all rule violations resulting in a derailment or damages to equipment. Examples of Serious Offenses are: 3-step protection; coordination between crews working in the same and adjacent tracks; radio rules while shoving or backing; mounting and dismounting moving equipment; crossing over or riding the end of a car being shoved as defined in Safe Way Rule for Riding Equipment; engineer or remote control decertification events not considered Major offenses; shoving moves over crossings; protecting shoves; leaving cars in the foul; failure to have a proper job briefing; securing cars; securing locomotives; speeding; and switch and derail operation. Other incidents may also be considered Serious depending on the circumstances.

Progressive handling of serious offenses will be pursuant to the following:

For the first serious offense in a three year period, discipline of 5-15 days actual suspension will be assessed. For the second serious offense in a three year period, discipline up to 30 days actual suspension will be assessed.

This assumes that a fair and impartial hearing under the terms of the applicable labor agreement has been conducted and the employee is found to be at fault; or, a waiver was exercised under the applicable labor agreement and the employee accepted responsibility. The actual length of suspension will be based upon the nature of the violation, the employee's record, and taking into consideration the employee's willingness to accept responsibility. At the discretion of the Division Manager, or designee, the employee may be offered the opportunity for additional training for up to one-half of the time actually suspended.

An employee with no formal handling under the IDPAP (including no IRC and no Time Out) and no serious or major offense within the previous three years may be offered an opportunity to participate in the "Time Out" process conducted by the Division Manager or his designee. This process will include voluntary and full participation by the involved parties to develop the root cause and corrective solution. The applicable local chairman is encouraged to attend. The only recorded information will be a note that the individual was referred to a "Time Out." There will be a list of action items retained to ensure follow-up is accomplished.

The third serious incident within three years may result in dismissal. This assumes that a fair and impartial hearing under the terms of the applicable labor agreement has been conducted and the employee is found to be at fault.

**Part III: Major Offenses Warranting Removal from Service Prior to Hearing**

Major Offenses are those that warrant removal from service pending a formal hearing and possible dismissal from service for a single occurrence if proven responsible. Examples of such offenses include: altercation, dishonesty, concealing material information or providing false material information about matters under investigation, theft, insubordination, Rule G, weapons on the property, excessive speeding (speed at or above FRA levels for decertification under 49 CFR Part 240), passing stop signals without authority, failure of stop tests using simulated obstruction devices or other similar operational tests, occupying track without authority, blue flag violations, major accidents, other acts of blatant disregard for the rights of employees or the company, and acts that cause harm to other persons or recklessly endanger the safety of employees or the public.

**Part IV: FRA Decertification Event**

Notwithstanding anything else in this policy, if an incident is covered by the FRA certification regulations, the involved employee is subject to those regulations and must satisfy the federally mandated revocation time period. Based upon the employee's record, acceptance of responsibility, and the employee's work

CARRIER'S EXHIBIT F

2

history, the Division Manager, may elect with the employee's consent to provide additional training for up to one-half of the time the certification is revoked consistent with the requirements of 49 C. F. R., Part 240.

## Part V: Administration of Policy

Responsibility for administration of the policy rests with Division Managers. A joint labor-management oversight committee will be established to review major discipline cases to ensure consistency and fairness in policy administration. The oversight committee will meet as necessary and will be chaired by the Vice President-Labor Relations. Other members of the committee will include the Vice President and Chief Safety Officer; the Assistant Vice President-Labor Relations; the two Regional Vice Presidents; and two each General Chairmen from BLE and UTU, designated by the involved labor organization.

## Part VI: Personal Injury Handling

There will be no formal hearings solely to investigate an individual's personal injury. Formal hearings may be held to address rule violations resulting in harm to persons. The Individual Development and Personal Accountability Policy outlined herein sets forth the manner in which rules violations are to be addressed. An employee shall not be disciplined for an injury and an employee's injury record will not be considered in addressing the appropriate discipline for a rule violation.

All personal injuries must be reported to the appropriate supervisor at the time of occurrence prior to leaving the property on the day of occurrence so that prompt medical treatment may be provided and unsafe conditions can be promptly addressed.

(Exception: An employee departing the property to obtain urgent medical attention for a serious injury must report the injury to a supervisor as soon as practicable.)

Failure to adhere to these reporting procedures will subject the employee to appropriate handling under the IDPAP, up to the level of a Major Offense.

No provision of this policy shall be applied or interpreted inconsistent with federal or state law.

### IDPAP - Minor Offenses

| | |
|---|---|
| Definition | Minor offenses include all rule violations that do not result in derailment or damages to equipment, and that are not otherwise identified as "Serious" or "Major" in Parts II or III of this policy. |
| Progression | 1 & 2 - ICI |
| | 3 - IRC or customary handling under applicable collective bargaining agreement |
| | 4 - Up to 10 days suspension |
| | 5 - Up to 30 days suspension |
| | 6 - Up to dismissal |
| Time Frames | Three (3) year rolling period |
| | Six (6) months without minor offense will remove last minor offense from consideration in application of the policy |

### IDPAP - Serious Offenses

| | |
|---|---|
| Definition | Serious Offenses include rule violations that result in derailment or damages to equipment, and any rule violations or other incidents noted in Part II of the IDPAP policy. |
| Progression | 1 - 5-15 days actual suspension or time out at the discretion of management as provided in Part II of the policy. |
| | 2 - Up to 30 days actual suspension |
| | 3 - Up to dismissal |
| Time Frames | Three (3) year rolling period |

### IDPAP - Major Offenses

| | |
|---|---|
| Definition | - Major Accidents |
| | - Excessive speeding |

CARRIER'S EXHIBIT F

3

- Stop signal violations
- Main track authority
- Stop test violations
- Blue Flag violations
- Dishonesty
- Other severe offenses

Progression                 Removal from service - up to dismissal

CARRIER'S EXHIBIT F
4

Form 1             NATIONAL RAILROAD ADJUSTMENT BOARD     Award No. 6715
                               SECOND DIVISION                 Docket No. 6617
                                                       2-PCT-SM-'74

The Second Division consisted of the regular members and in
addition Referee Irving R. Shapiro when award was rendered.

                          (    Sheet Metal Workers' International
                          (       Association
Parties to Dispute:    (
                          (
                          (    Penn Central Transportation Company

Dispute:   Claim of Employes:

1.    Certainly discipline was proper for claimant's conduct but in
view of the claimant's long record of good conduct, dismissal
from the service was unjustified (harsh). The time he has now
been held out of service is ample punishment.

2.    We therefor request reinstatement with full seniority rights
but without compensation for wage loss.

Findings:

The Second Division of the Adjustment Board, upon the whole record
and all the evidence, finds that:

The carrier or carriers and the employe or employes involved in this
dispute are respectively carrier and employe within the meaning of the
Railway Labor Act as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute
involved herein.

Parties to said dispute were given due notice of hearing thereon.

Claimant was discharged from employment with Carrier following being
found guilty of serious malfeasance. There is no denial by Petitioner that
Claimant was guilty as charged. Petitioner's application is to grant
leniency to Claimant, an employee with many years of service, and overrule
Carrier's refusal to afford same.

This Board has consistently adhered to the principles cogently and
succinctly set forth in Award 2787 (Ferguson) to the effect that:

> "... We are not the triers of the facts. Our duty is
> to establish only that a fair hearing required by the
> rules has been given and not to substitute our
> judgement for those who have had a direct and immediate
> opportunity to evaluate the witnesses and their evidence.
> Thus leniency is a prerogative which is not available
> to this Division, much as we might desire to recognize the
> personal qualities, family problems, veteran status or
> union affiliation of any grievant." (See also Awards
> 3828, 3894, 5345.)

CARRIER'S EXHIBIT G

1

Form 1
Page 2

Award No. 6715
Docket No. 6617
2-PCT-SM-'74

    Petitioner's submission fails to put in issue any of the factors which would afford us the authority to act contrary to the above well established standards guiding us in such matters.

### A W A R D

    Claim denied.

NATIONAL RAILROAD ADJUSTMENT BOARD
By Order of Second Division

Attest:   Executive Secretary
          National Railroad Adjustment Board

By _____
    Rosemarie Brasch – Administrative Assistant

Dated at Chicago, Illinois, this 25th day of June, 1974.

CARRIER'S EXHIBIT G
2