IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| John P. Bennett,<br><br>       Petitioner,<br><br>    v.<br><br>Public Law Board No. 7694, CSX Transportation, Inc., and Brotherhood of Locomotive Engineers and Trainmen,<br><br>       Respondents. | Civil Action No. 4:17-cv-00130-JRH-GRS |

## **RESPONDENT CSXT'S MOTION FOR A PROTECTIVE ORDER**

Petitioner John Bennett has requested judicial review of an arbitration award upholding his termination from Respondent CSX Transportation, Inc. ("CSXT"). Review of such awards is "among the narrowest known to the law." *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978). Indeed, these awards can only be overturned on three narrow grounds: (1) if the arbitration board failed to comply with the requirements of the Railway Labor Act, (2) if its order failed "to conform, or confine itself, to matters within the scope of the [arbitration board's] jurisdiction," or (3) if a member of the arbitration board engaged in fraud or corruption. 45 U.S.C. § 153, First (q) (the "RLA"). Given the extremely limited nature of this Court's jurisdiction, discovery would not provide any information relevant to the resolution of this matter, and therefore any discovery is inappropriate. Mr. Bennett, proceeding *pro se*, has nonetheless served interrogatories and requests for production on CSXT. Therefore, CSXT now moves for a protective order prohibiting any discovery. Fed. R. Civ. P. 26(c)(1).[1]

---

[1] Pursuant to LR 26.5, CSXT certifies that it has made a good faith effort to resolve this dispute with Mr. Bennett before filing this motion with the Court.

I.     PROCEDURAL AND FACTUAL BACKGROUND

In 2014, CSXT dismissed Mr. Bennett, a locomotive engineer, for speeding while operating a train from Jacksonville to Savannah. Compl., Dkt. No. 1, ¶ 8. CSXT deemed the offense a major infraction under its disciplinary policy. *Id*. As the collective bargaining agreement that governed his employment permitted, Mr. Bennett appealed his termination to a Public Law Board, which is an arbitration board established pursuant to the RLA. *Miller v. Norfolk & W. Ry. Co.*, No. 89-4101, 1990 U.S. App. LEXIS 19129, at *3 n.3 (6th Cir. Oct. 25, 1990). As required by Section 3, Second of the RLA, 45 U.S.C. § 153, Second, the Board had three members: one designated by CSXT, one designated by the union representing Mr. Bennett, and a neutral member agreed upon by the parties. *Dement v. Richmond, F. & P. R.R. Co.*, 845 F.2d 451, 455 n.6 (4th Cir. 1988). In 2015, Public Law Board No. 7694 (the "Board") upheld Mr. Bennett's termination. Compl. ¶ 11; Board Award No. 23, Dkt. No. 10-3 at 3. Mr. Bennett now seeks judicial review of the Board's award, alleging that it is "unreasonable, arbitrary and capricious," that the Board "failed to confine its investigation and order to matters within the scope of its jurisdiction," and that review of certain evidence was "tantamount[] to fraud and/or corruption by the CSX member of the Board." Compl. ¶¶ 12-16.

On December 27, 2017, CSXT, Respondent Brotherhood of Locomotive Engineers and Trainmen ("BLET"), and Mr. Bennett jointly filed a Fed. R. Civ. P. 26(f) Report. Dkt. No. 13 (the "Report").[2] In that Report, CSXT and BLET objected to discovery, based on the limited nature of this Court's jurisdiction, and requested prior briefing should the Court be inclined to grant any discovery. *Id*. at 2. Mr. Bennett, on the other hand, requested discovery to

---

[2] Respondent PLB No. 7694 had not been served and thus was not a party to the Report. *See* Notice of Filing Administrative Record, Dkt. No. 10; Dkt. No. 13.

"supplement[] the Administrative Record." *Id*. at Ex. B.  According to Mr. Bennett, the Board's award should be overturned because other conductors and engineers who committed the same offense were treated more favorably than he was, the Board impermissibly considered prior discipline against him, and the Board impermissibly considered evidence about his FMLA leave. *Id*. at 2-3.

Without waiting for the Court to address the parties' Report, Mr. Bennett served interrogatories and requests for production on CSXT.[3]  His broad requests seek potentially unlimited documents regarding the topics he identified in the Report (e.g., Request for Production No. 2 requests "all internal CSX Transportation emails in which the Family Medical Leave Act was a topic of conversation, even if the Family Medical Leave Act was not specifically referenced in the email or even if that email includes additional topics of conversation.").  He also requests documents about the temporary speed zone related to his infraction, documents in which he was a topic of conversation, recorded material that would prove or disprove any of CSXT's claims, and any downloads from the locomotives he engineered on the date of his speeding infraction (e.g., Request for Production No. 3 requests "all internal CSX Transportation emails in which the [sic] John Bennett was a topic of conversation, even if John Bennett was not specifically referenced in the email or even if that email includes additional topics of conversation.").  A true and correct copy of Mr. Bennett's discovery requests is attached hereto as Exhibit A.  Counsel for CSXT received Mr. Bennett's requests by mail on January 12, 2018, and CSXT now timely moves for a protective order.[4]  *See* Fed. R. Civ. P.

---

[3] Because he did not wait for the Court to enter a Scheduling Order governing written discovery, as contemplated by LR 26.1(c), (d), Mr. Bennett's requests are also premature.

[4] CSXT is cognizant of LR 26.5, which requires a party objecting to discovery requests to quote each interrogatory and request for production to which it objects.  As explained in Sections II.A. and B., CSXT objects to any discovery whatsoever in this case because the limited grounds available for reviewing arbitration awards under the RLA make any such discovery irrelevant as a matter of law; thus, its objections apply to all of Petitioner's

3

Case 4:17-cv-00130-JRH-GRS   Document 14   Filed 02/09/18   Page 4 of 11

33(b)(2), 34(b)(2) (requiring a party served with interrogatories and document requests to respond within 30 days of service).

## II.  ARGUMENT

Under the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  However, upon a showing of "good cause," the court may enter a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (A) forbidding the disclosure or discovery; . . . [and] (D) forbidding inquiry into certain matters."  Fed. R. Civ. P. 26(c)(1).  Courts have "broad discretion" to enter such orders.  *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 357 (11th Cir. 1987).  And, "whether good cause exists . . . is a factual matter to be decided by the nature and character of the information in question," *Ojeda-Sanchez v. Bland Farms, LLC*, No. CV608-096, 2009 U.S. Dist. LEXIS 66238, at *3-4 (S.D. Ga. July 31, 2009), after balancing the interests of the party requesting the protective order.  *Ekokotu v. Fed. Exp. Corp.*, 408 F. App'x 331, 335-36 (11th Cir. 2011).

### A.   Discovery Is Not Appropriate Because Judicial Review of the Board's Award Is Not a Merits Assessment

CSXT has "good cause" for prohibiting any discovery in this case, entitling it to a protective order.  RLA Section 153, First (q) very narrowly circumscribes this Court's jurisdiction to review the Board's award, permitting an award to be overturned only "for failure of the division to comply with the requirements [of the RLA], for failure of the order to conform, or confine itself, to matters within the scope of the [Board's] jurisdiction, or for fraud or

---

discovery requests.  Therefore, in order to file a more condensed motion, CSXT has not repeated each request here, nor provided an itemized accounting of all objections.  Should such a listing be useful to the Court, CSXT will promptly provide it.

4

corruption by a member of the [Board] making the order." 45 U.S.C. § 153, First (q). "[O]n such review, *the findings and order of the division [of the Board] shall be conclusive on the parties.*" *Id*. (emphasis added); *see also Henry v. Delta Airlines*, 759 F.2d 870, 871-72 (11th Cir. 1985). In other words, the Board's factual findings are binding on the parties and the Court, and cannot be second-guessed. The Court has no jurisdiction to review the correctness or sufficiency of the Board's factual findings, nor does it have jurisdiction to make new factual findings or supplement the record upon which the Board based its decision. *See, e.g.*, *NetJets Aviation, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 486 F.3d 935, 937 (6th Cir. 2007) ("reviewing courts are bound by the facts as found by the arbitrator"); *United Transp. Union v. Union Pac. R.R. Co.*, 116 F.3d 430, 434 (9th Cir. 1997) ("a court reviewing an arbitration award under § 153 First is not permitted to make factual determinations that the Board failed to make"); *Laday v. Chi., M., St. Paul & Pac. R.R. Co.*, 422 F.2d 1168, 1171 (7th Cir. 1970) (the RLA does not contemplate court resolution of factual issues by hearing evidence). For these reasons, among others, judicial review of an arbitration award under Section 3, First (q) is "among the narrowest known to the law." *Sheehan*, 439 U.S. at 91. Given this limited review, there is no basis or need for discovery. The Court is not acting as a trier of fact.

This limited scope of review is consistent with the overarching purposes of arbitration. "[A]rbitration law wisely relies upon the experience, perspective, understanding of industrial practice, and knowledge of logistics and economics, of the officer chosen as arbitrator." *Bhd. of Locomotive Eng'rs & Trainmen v. CSX Transp., Inc*., 455 F.3d 1313, 1316 (11th Cir. 2006). And, courts recognize that their "power is circumscribed sharply by the clear congressional plan, under which NRAB decisions may not easily be set aside by the courts. Thus, even if [the court] thought the NRAB had erred in this case . . . , [it] could not overturn its decision." *Skidmore v.*

*Consol. Rail Corp.*, 619 F.2d 157, 159 (2d Cir. 1979); *see also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987) (explaining in the analogous context of the NLRA that "[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator . . ."). As a result, "[t]he federal courts do not sit as super arbitration tribunals in suits brought to enforce awards of the Adjustment Board. They may not substitute their judgments for those of the Board divisions. They need not inquire whether substantial evidence supports the Board's awards." *Diamond v. Terminal Ry. Al. State Docks*, 421 F.2d 228, 233 (5th Cir. 1970). *See also Henry*, 759 F.2d at 872 ("[A]n award must be enforced, without judicial review of the evidence, if it draws its essence from the collective bargaining agreement.") (internal quotation omitted).

Not surprisingly, then, other courts have entered protective orders in cases similar to this one. For example, in *Ruck v. Atchison, Topeka & Santa Fe Railroad*, the petitioner requested judicial review of a Public Law Board award. No. EP-92-CA-193-B, 1993 WL 330664 (W.D. Tex. Mar. 31, 1993). He served interrogatories and requests for production on the carrier, and he also sought to depose several witnesses. *Id.* at *1. The carrier objected, arguing that discovery should be limited "to obtaining and authenticating the documents that form the record of the dispute before the Public Law Board and serving written interrogatories to determine the factual bases for the parties' contentions that the award should or should not be set aside or remanded." *Id.* The court agreed and denied the discovery requests. "Since the court is prohibited from reviewing the merits underlying the arbitration award, it follows that discovery on those merits would serve no legitimate purpose and should not be allowed in this case." *Id.* at *2. *See also*

6

*McClendon v. Union Pac. R.R. Co.*, 640 F.3d 800, 805 (8th Cir. 2011) (affirming the district court's refusal to permit discovery because "Plaintiffs completely fail to explain how the requested discovery would have affected judicial review of the NRAB's procedural dismissal"); *Bhd. of Ry. Carmen v. Kan. City S. Ry.*, No. 05-00385, 2005 BL 79490, at *2 (W.D. Mo. July 13, 2005) (explaining that "petitions for enforcement of arbitration awards [must] be based entirely on the arbitral record below").

In this case, Mr. Bennett has alleged that the Board failed to confine itself to matters within the scope of its jurisdiction. Compl. ¶¶ 13-15. In evaluating this kind of claim, courts consider "whether the award is irrational,[5] whether it fails to draw its essence from the collective bargaining agreement, or whether it exceeds the scope of the arbitrator's contractual authority." *Bhd. of Locomotive Eng'rs & Trainmen*, 455 F.3d at 1316. The focus of this inquiry is the contract itself: an award is "irrational" if the Board's reasoning is "wholly baseless and completely without reason;" it "fails to draw its essence from the collective bargaining agreement" only where the arbitrator does not even purport to apply the contract; and an arbitrator exceeds his authority only if he "modifies the contract's clear and unambiguous terms." *See Wiregrass Metal Trades Council AFL-CIO v. Shawn Envtl. & Infrastructure, Inc.*,

---

[5] Mr. Bennett also alleges that the Board's ruling was "unreasonable, arbitrary and capricious," which is not one of the statutory grounds for overturning an arbitration award under the RLA. Compl. ¶ 12; 45 U.S.C. § 153, First (q).

In addition, he alleges that the Board viewed video evidence of a train that was not operated by Mr. Bennett, and that such viewing constitutes "fraud or corruption." Compl. ¶ 16. As a preliminary matter, this allegation fails to state a claim for fraud or corruption; rather, it simply challenges the sufficiency of the evidence considered by the Board. *United Transp. Union v. Birmingham S. R.R. Co*., No. 2:11-cv-4128, 2014 U.S. Dist. LEXIS 44498, at *45 (N.D. Ala. Mar. 31, 2014) (explaining that "fraud or corruption under the RLA . . . encompasses only an extremely high degree of improper conduct and requires a greater evidentiary showing than that under common law") (internal quotation omitted); *see also Woodrum v. S. Ry. Co.*, 750 F.2d 876, 882 (11th Cir. 1985) (discussing "fraud or corruption by a member," and explaining that even if the carrier's own fraud could be imputed to the Board, there must be evidence "that the member knew or should have known of the misconduct" of the carrier.). Moreover, none of Mr. Bennett's requested discovery goes to any alleged "fraud or corruption" on the part of the Board, and thus, it is not relevant to the Court's review of the award. *See* Ex. A.

837 F.3d 1083, 1087 (11th Cir. 2016); *Bhd. of Locomotive Eng'rs & Trainmen*, 455 F.3d at 1315-16; *Loveless v. E. Air Lines, Inc.*, 681 F.2d 1272, 1275 (11th Cir. 1982).  Critically, none of these grounds requires, or even allows, the Court to re-examine the facts underpinning the Board's decision, especially given the statutory mandate that the arbitration board's factual findings are binding.  Nor do they allow the Court to consider additional facts that were not before the Board.  Rather, if the Board reached its decision by arguably interpreting the parties' collective bargaining agreement, then its decision must stand.  *See Barnes v. CSX Transp., Inc.*, No. 3:02-cv-738-J-21-HTS, 2003 U.S. Dist. LEXIS 26717, at *15-17, *22 (M.D. Fla. Dec. 12, 2003) (this review "ultimately focus[es] on the award's consonance with the relevant collective bargaining agreement and other documents;" "judicial review of arbitration decisions is not a review of the merits of those decisions").  All that this Court needs to make that determination is the administrative record.  *Bhd. of Ry. Carmen*, 2005 BL 79490, at *2.

Here, the Board has already filed the administrative record on the Court's docket, as required by the RLA.  *See* Dkt. No. 10; 45 U.S.C. § 153, First (q).  Thus, the parties and the Court have access to all of the materials that were before the Board when it rendered its decision.  By Mr. Bennett's own admission, he seeks discovery to "supplement" that record.  Dkt. No. 13 at Ex. B.  And, his discovery requests make clear that he wants to supplement that record with information that he alleges will undermine the Board's decision to uphold his termination.  *See generally* Ex. A.  But that is just what the RLA does not allow; it does not permit the Court to consider extra-record materials in a challenge to an arbitration award.  Mr. Bennett already had the opportunity to present his case to the Board.  The facts he now seeks in discovery have no bearing on whether the Board exceeded the scope of its jurisdiction, so his requested discovery does nothing to aid this Court's review.  Because it is not "relevant to any party's claim or

defense," allowing it would subject CSXT to "annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1), while giving Mr. Bennett an impermissible second chance to litigate his claim.  Thus, CSXT has shown good cause for a protective order prohibiting any discovery in this case.

   B. <u>Prohibiting Discovery Is Consistent With the Overarching Purpose of the RLA</u>

   Prohibiting discovery here is also consistent with the overall purpose of the RLA.  The RLA is designed to promote stability in labor relations by ensuring the "prompt and orderly settlement" of claims outside of the courts.  *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (quoting 45 U.S.C. § 151a); *see also Sheehan*, 439 U.S. at 94 (noting that "[t]he effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations."); *Stewart v. Spirit Airlines*, 503 F. App'x 814, 817 (11th Cir. 2013) (explaining that "[t]he RLA was designed to avoid interruptions to [interstate] commerce or to the operation of the railway or airline industries caused by labor management disputes" by setting up a comprehensive system of arbitration boards).  Thus, courts routinely prohibit discovery in other kinds of cases that are subject to arbitration under the RLA.  *See*, *e.g.*, *Pac. Fruit Express & Union Pac. Fruit Express Joint Protective Bd. v. Union Pac.*, 826 F.2d 920, 923 (9th Cir. 1987) ("the extensive judicial intervention that court-ordered disclosure would require is inconsistent with the history and principles of the Railway Labor Act"); *see also Bhd. Ry. Carmen v. Mo. Pac. R.R. Co.*, 944 F.2d 1422, 1430 (8th Cir. 1991); *Bhd. of Ry. Carmen v. Pac. Fruit Express Co.*, 651 F.2d 651, 653 (9th Cir. 1981).  Here, the parties have taken advantage of the RLA's mandatory dispute resolution process, including any discovery allowed under the parties' collective bargaining agreement.  Mr. Bennett should not be allowed to use this federal court litigation to disrupt the finality of that arbitration process, or to end run the negotiated limitations on discovery contained in the parties' collective bargaining agreement.

### III. CONCLUSION

For the foregoing reasons, CSXT respectfully requests that this Court enter a protective order prohibiting any discovery from CSXT in this case.

Dated: February 9, 2018

Respectfully submitted,

                                                                                           */s/ Amanda Rodman Smith*
Amanda Rodman Smith
Georgia Bar No.: 727735
Hall, Bloch, Garland & Meyer, LLP
Post Office Box 5088
Macon, Georgia 31208-5088
(478) 745-1625
(478) 741-8822 facsimile
amandasmith@hbgm.com

Jacqueline M. Holmes*
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
jholmes@jonesday.com
*admitted *pro hac vice*

Attorneys for Respondent
CSX Transportation, Inc.

## **CERTIFICATE OF SERVICE**

     I hereby certify that, on February 9, 2018, I electronically filed a copy of Respondent CSX Transportation, Inc.'s Motion for a Protective Order, which will send notifications of such filing to all attorneys of record.  In addition, on this day I served via Federal Express the following:

>John P. Bennett
>44 Belle Grove Circle
>Richmond Hill, GA 31324

                                            /s/ *Amanda Rodman Smith*
                                            Amanda Rodman Smith